Name Mr Anthony Kennth Anderson
Southern Desert C.T.N   P.o. Box 208
Indain Springs nev. 89070
Prison Number 1082999

ENTERED
COUNSEL/PARTIES OF RECORD

MAY - 7 2021

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:                           DEPUTY

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
### ***

Anthony Kennth Anderson,
                                    Plaintiff

vs.

State of Nevada, Department
of corrections' Dir: James Dzurenda et al
(said) Dr Henry Landsgan et al,
Warden Jerry Howell et al, Southern
Deset executive staff, S.O-CC,
Medical Department et al   Defendant(s).

Case No. 2:21-cv-00514-APG-EJy
(Supplied by Clerk of Court)

**CIVIL RIGHTS COMPLAINT
PURSUANT TO
42 U.S.C. § 1983**
Amended Complaint
N.R.S. 41.0322. Tort Action showing
Imminent Danger under Americans with
Disabiltys Act 42 usc || 12101-12213 ADA
Alr 658 Title II Pursuant To usc
1983 : Amended Complaint

## A.   JURISDICTION

1)   This complaint alleges that the civil rights of Plaintiff, Anthony Kennth Anderson,
                                                              (print plaintiff's name)

who presently resides at Southern Desert C.T.N                , were violated by
State Employee's Acting under Color of Law
the   actions   of   the   below-named   individuals   that   were   directed   against   Plaintiff   at

Southern Desert C.T.N, Indain Springs on   the   following   dates:
(institution/city where violation occurred) From "October 13 2013 until Present Date"
A.D.A. Fraud "MEO" malpratice and   Impaqs Calcution ot Time. A.D.A
     (Claim 1)              (Claim 2)                    (Claim 3)

Covid-19 Deliberate Exposure
     (Claim 4)

Revised 7/8/19

2:21-CV-00514-APG-EJY

UNITED STATES District
Court DISTRICT OF NEVADA

AnThony Kennth AndeRson
                    Plaintiff

vs

STATE of NEVADA, Nevada
Department of Corrections
Director: James Dzurendaetal
WORDEN: Jerry Howell et al
Dr Henry landsyan et al
Medical Dept S.D.C.C. etal
Charge Nurse Sonya CoRRito
Medical Director catMPest
Medical Director Tores aranas
CCS II Carl sutteRly
CCS I L. ANDERSON
CCS II Mr Crumbwell
CCS III Kimberly McCoy et
B. Gutizre et Al
Grievence coOrdinator
M. MiNEv et al
Grievence coOrdinator
et al
        (1) DefenDant's

Case # 2:21-cv-00514-APG-EJY
AMENDED Complaint
NRS. 41.0322 TORT ACTION Showing
ImMienT Danger UNDER AMERICANS with
DisabilTys Act 42. USC 12101-12213 ADA
NR 658 PursuanT To 42. USC § 1983
  FRAuD, AGainst A.D.A ManDateD law
NR 658 Title. II Class of ONE
Bias PRe-JuDice Acts of DeliberAte
INDiFFeRence, with Deceptive PRactice
MEDical Mal-PRoctice Causing unrepair
able, Damage. Deliberate INDiFFeRence
To Covid 19 VIRus Protocal Causing
Exposure To Covid 19. (iieD)(NieD)
Violations: Civil RiGHTs Complaint
PuRsuANT To 42 U·S·C § 1983

2

The Following Defendant's where Acting
under the Color of law. And at
all times Relevant And Relevant at All Times
where and are The Employees of The
State of Nevada Department of Connection's
Acting under Color of law Controls And
Enforce's State And Federal [Laws]

#2 Defendant Director of prison's : James Dzurenda
Resides at unknown. This Defendant is Sued
In His ✓ Individual ✓ official Capacity

#3 Defendant Warden of Southern Desert C.T.N
Jerry Howell Reside's at unknown This Defenant
is Sued In His ✓ Individual ✓ Official Capacity
under The Color of law Never Trained His Staff
Correctly Nor offered any A.D.A Relief as stated
In Afr 658 Title II In Entirity

#4 Defendant Employee of S.D.C.C : Said Doctor
Henry landoyan Resides at unknown This
Defendant is Sued In His ✓ Individual ✓
Offical Capacity under The Color of law committed
Fraud and usurpation pretending To Be
legal Doctor Causing Plaintiff unRepairable Reproductive
organ Damage Plaintiff Did'nt Have Before The
Medical mal practice

3

#5  Defendant Charge Nurse Sonya Cfillo Employeed
as Charge Nurse For S.D.C.C. Medical Dept Resides
at unKnown. This Defendant is Sued IN HER ✓
Individual ✓ Offical Capacity under The Color of
law Created a Make-Shift A.D.A. Foum on
9-11-2019, After Plaintiff was Declaired 100% Disable
By Henrry lanosyan under Color of law Sonya Cfillo
NEVER Fowarded The said A.D.A Foum To The
proper A.D.A Cordinator as NR 658 05 and Subsection
#1 (A)(B)(C)(D) require,

#6 Defendant Medical Director Romeo Aranas And
The current Medical Director For S.D.C.C. N.D.O.C.
Resides at unKnown. These Defendants are Sued
IN THEIR ✓ Individual ✓ offical Capacity
For Fraud on A.D.A. Mandate Fraud On
The people of The state And Federal Goverment
means Romeo Signed a Fraudulent Act into effect
on 6-12-18 And The current Medical Director
NEVER expose's Fraud or Deceiptive. practice
Comitted By N.D.O.C. Medical Depertment
under Color of law, Comitted Fraud on
plaintiff.

#7 Defendant CCSI: L. Anderson Case Worker
For N.D.O.C as a Case Worker For plaintiff
This Defendant is Sued IN HER ✓ Individual ✓
offical Capacity For Fraud on A.D.A. Mandate
And Failure To Report Her Employer's To Federal
Authoritys Concerning Fraud on plaintiff [No A.D.A Staff
protocal]

4

#8 Defendant CCSII MR Crumwell. Employeed as Case worker CCSII For N.D.O.C. S.D.C.C., Resides unknown This Defendant is sued In His ✓ Individual And Offical Capacity ✓ For Fraud unconstitutionally Aids N.DOC In Removal of work Day 72 Days a year For Not working when Plaintiff Addressed MR Crumbwell Informing him That since 2017 N.D.O.C. S.D.C.C. Medical Department won't Allow Plaintiff To work Due To His Ill-Ness "CRUMBWELL" states not his problem you Don't work you loss Day's, under color of law

#9 Defendant CCSIII Kimberly McCoy: Employeed as Case worker Supervisor For N.D.O.C. S.D.C.C. Reside's unknown This Defendant is sued In HER ✓ Individual And offical Capacity ✓ For Fraud unconstitutionally Aids N.DOC In Removing 72 work Days a year For Not working when Plaintiff Addressed Ms Mc Coy Informing HER That since 2017 N.D.O.C. S.D.C.C. Medical Department won't Allow Plaintiff To work Due To His Ill-Ness "mc Coy" state's not Her problem you Don't work you loss Day's, under color of law

#10 Defendant CCSII Carl Sutterly Employeed as Case worker For N.D.O.C S.D.C.C unit 12 For year's of 2017/2018. Resides unknown This Defendant is sued In His ✓ Individual And offical Capacity ✓ For Fraud on A.D.A And Failing To Report His Employees To Federal Authority's For Fraud unconstitutionelly Increasing The lenght of a prison Due To prisoner Ill-Ness And [NO A.D.A Staff Protocal]

5

#11  Defendant  B. Gutirre  Grievence Cordinator
B. Gutirre is employed as an Grievence Cordinator
For N.D.O.C. S.D.C.C. This Defendant is sued in
    INDividual AND    Offical Capacity For Deceiptive
Practice Fraud with a Deliberate INDifference And
Manipulating The Grievence Process Changing The
Subject matter of Grievence # 20063069964 Concerning
A.D.A Manditory Cordinator, Never Answering The Stated
Issues in Above Mentioned Grievence (under color of law)

#12  Defendant  M. MINEV  Grievence Cordinator
M. MINEV is Employeed as a Grievence Cordinator
For N.D.O.C. S.D.C.C. This Defendant is sued in
    INDividual AND    Offical Capacity For Deceiptive
Practice Fraud with a Deliberate INDifference
AND Manipulating THE Grievence Process Changing
The Subject Matter of Grievence # 20063095454
Concerning Said Prison Doctor HENRY landsmans legal
Mal-practice Issues Never Answering The Original Subject
Matter of This Grievence And Changing The Subject
Matter of The Grievence Confusing The Process (under
Color of law)

6

Defendant _____ resides at _____,
(full name of first defendant)                    (address if first defendant)
and is employed as _____ . This defendant is sued in his/her
(defendant's position and title, if any)
____ individual ____ official capacity.  (Check one or both).  Explain how this defendant was
acting
under color of law: _____

3  Jurisdiction is invoked pursuant to 28 U.S.C. § 1343 (a)(3) and 42 U.S.C. § 1983.  If you wish
to assert jurisdiction under different or additional statutes, list them below.

Also ASSERT Jurisdiction uNDER THE AMERicaNS
with Disability Act 42.U.S.C. || 12101-12213 A.DA/ NR 658

- - - - - - - - - - - - - - - - - - - - -

## B. NATURE OF THE CASE

1)        Briefly state the background of your case.

FRAUD By AND Through DECEPTIVE PRactice
NEVADA Dept of Corrections, SouthERN DESERT C.T.N
DiRectoR OF PRisoNS (JaME's DzuReNda) SigNS This
[ADA] MaNDate N/R 658 Title I II III INto effect
5-15-18 "UNDER Color of law" But DosNt OffER "ANDERSON"
INMate; [ADA] coRDiNators NoR [ADA] AccomoDaTioN
FoR QuailfeD INMates, FRauO DeceiPtive PRactice NEVADA
Dept of Corrections S.D.C.C. MEDical DiRectoR
(ROMEO ARaNas) SigNs [A.DA] MaNDate N/R 658 Title I II III
INto effect 6-12-2018 uNDER Color of law
But DosNt OffER INMate ANDERSON, any [A.D.A] CoRoiNctoRs
NoR any [A.D.A] AccomoDatioNs FoR QuailfieD [ADA] INMate ANDERSON

- - - - - - - - - - - - - - - - - - - - -

## C. CAUSE OF ACTION

7

3. Nature of The Case

That Southern Desert C.T.N : Is Not In Compliance with A.D.A Mandatory Mandates as Required in A/R 658 and as of The Dates Dir. Zutenoa And Medical Dir. Aranas signs A/R 658 Title II Into Effect until Present Date (May 10, 2021) S.D.C.C. Doesn't comply with Mandated A.D.A Cordinator Stationed AT S.D.C.C. Theirs No Certified A.D.A Cordinator Available To S.D.C.C. Inmates as. A/R 658 title II Language Specks

A/R 658.04. Equal ACCESS

A/R 658.05 Subsections # 1 (A)(B)(C)(D)

A/R 658.06 .Orders Reasonable [A-DA] Accomodations Subsections 1, 2, 3. 3(A) 3(B) 3(C) 3(D) 3(E)

A/R 658.07 # 1. 1(A) 1(E) 1(F) 1(G)

A/R 658.09 In its Entirity "Not offered" at (s.occ)

A/R 658.10 # 123

Said Dr Henry landsman medical 'LICENSE" To Practice precribe And work In The Field of Medicine was Revolted (Sept 24th 2012) SEE us Dist Court # 2:15-cv-1470-JCM-NJK Landsyon Has No valld Medical lic# To Pratice Medicine How Did He Recome Plaintiffs Senior Doctor Placing Plaintiff on 20 MG Predisone Stationg A short Terry Drug From 2017 until Present Day Causing unRepairable Reproductive ORgan Damage To plaintiff with Massive, weight Gain

8

C.   CAUSE(S) OF ACTION

CLAIM 1

The following civil rights have been violated: 8th Amend Violation: Cruel And unusual Punishment with a Deliberate Indifference. 14th Amend Violation Due process /equal Protection a result of Fraud/deliberate Indifference

Supporting Facts: [Include all facts you consider important.  State the facts clearly, in your own words, and without citing legal authority or argument.  Be sure you describe exactly what each specific defendant (by name) did to violate your rights].

On (8-3-18) plaintiff Requested A.D.A. Accommodations while Housed at Southern Desert C.T.N. Due To plaintiffs Ill-ness "Kikuras Disease" a Rare Chronic Inflammation Disorder which weaken's And suppresses The Human Immune System. The "Noticable" Effects are Subdermal lesions in The Head And Neck unilateral Inflammation of Cervical lympnodes. In which in (Oct 18th 2013) Anderson Had Facial lympnode Surgery To Remove "Elephant Man Neck lympnode. By [N.D.O.C] Doctor: Karen Gedney. Surgen Philip S. Schlager Place Carson Tahoe Hopital Pt# 1328100318 Mr# 020379997. In which plaintiffs Ill-ness is Covered Under N/R 658 Title I II III Section 504 of The Rehabilitation Act Under N/R 658.01 Subsection (B) Immune System, Digestive Bowel, Bladder Neurological Brain And Reproductive System Functions. N/R 658 Title I II III is Signed Into effect By Director Of Nev. Prison's on (5-15-18)

9

Claim #1

AS MEDICAL Director of NEV. Prison's Doctor;
ROMEO ARANS Signs N/R 668 Title I II III Into Effect
- 6-12-2018 -. Plaintiffs Ill-Ness And The Effects
OF Plaintiffs Physical limitations cause By Plaintiffs
Diease. #1 Swelling of limbs And Joints #2 Joint Pain
#3 Migrain Head-Acks Daily #4 Balance Problems #5 Hearing loss
Right ear #6 INHERENTLY Difficult To Detect Bleeding
Inturnal Intestinal Bleeding #7 Swores That Don't Heal
as well as Carpotunal Drynage!#8 Finger And Toe Nail texture
change. Countinued Intuxnal swelling over Right ear Daily
Causing The Fill as if Somthing is Crawling in Plaintiffs
Right ear. Due To Plaintiffs Diease, plaintiffs Effects
From The Said Diease Plaintiff Qualifies For Purpose
OF [A.D.A] Accoumpdations For His Disabilitys.
Here James DZURENDA And Jerry Howell
Breachted This State And Federal Mandate EVEN
With Knowledge of Plaintiffs Diease Since
- Oct 13 2013 -

This 8th Amendment violation with a Deliberate
Indifference is a Decriptive Practice UNDER
The Color of law Fraud Against Plaintiff IN
Violation OF A.D.A Mandates [N.D.O.C] [S.D.C.C]
Instill's The Imposition of Cruel And Unusal
Punistment and "embodie's a Broad Idealst Concept

Claim # 1

That Goe's Totally against; Dignity, Civiled Standards of Humanity Found in Estella V Gamble 429 U.S. 97 102. (1976). Prison Officals Violate The 8th Amend when acting with a Diliberate INDIFFERENCE Dir Jane's Dzurenda AND warden Jery Howell, Actions Surrounding These Circumstance's Constitute Fraud Title II of The A.D.A 42. USC § 12132 Provides That No qualified Individual with a disability Shall By reason of Such disability Be Excluded From Participation in or Be Denied The Benifits of The Service Programs or Activities of a Public Entity or Be Subject To Discrimination. As The Plaintiff Here Has Been Discriminated against By The Above Mentioned Parties From 8-3-2018 until Present Date ! The entitys of [N.D.O.C] [S.D.CC] Concerning [A.D.A] .. "Americans with Disabilities Act "Title II Prohibits a "Public Entity From Discrimination against any Qualified Individual with a Disability. This Action Also Covers Individual Disabilitys On Account of That Individuals Disability In-cluding Inmate's In State Prisons. Pennsylvania Dept of Corr V Yeskey 524 U.S. 206 209 (1988). Here Plaintiff Has Full Knowlege That He is a Qualified Individual. But Dir Dzurenda AND warden Jery Howell Commited Fraud Never Allowing A.D.A Certified Staff To Review

11

Claim # 1

ANDERSON'S Request For A.D.A Accommodations
For plaintiffs "Fairly New Diease" which Theirs
No Cure For. But Results in Plaintiffs Disability

Statement of Facts
SEE: Attachment #1
Page # 1 A/R 658 Nothing NEVER was
Made Available under Responsibility

SEE: Attachment # 1
Page #2 A/R 658.01 Disablity'us 658.01 Sub-
Section B. Immune systey Disorders are covered
"Kinuras Diease" is an Immune systey Disorder
Hearing loss, Digestive Disorders Bowel Bladder
working cosuptic Disfiguration, Physcolgical Disorders
lymphotic skin And EDoctrin Now contagious
which ANDERSON Suffers. But N.D.O.C NEVER
Made Avialible.

SEE Attachment # 1
Page # 3 A/R 658.01. E. Subsection (2) Reasonable
Accommodations NEVER Made Available To ANDERSON
No' utilization Review Panle. was EVER Made
Available To ANDERSON

12

Claim # 1

SEE: Page #4 A/R 658.02
Policy objective #1 Subsection A. B. C. D. E
where NEVER made Available To ANDERSON

SEE: Page #4 A/R 658.03
INmate Programs were NEVER made Available
To ANDERSON   658-03  1, 2, 3  [N.D.O.C]
[S.D.C.C] Doesn't OFFER THESE Updated
INmate Programs

SEE: Page #5 A/R 658.04 Equal ACCESS To
Assignment, Assignments Programs Activities AND
SERVICE  THis was NEVER made Available
To ANDERSON

SEE. Page #5 A/R 658.05 Page #6 A/R 658.05
INtake Process .1 Subsection A. B. Found on
Page #5 was NEVER made Available To ANDERSON
Page #6 C. D. E. F. G. Subsection 1, 2, 3
Page #7 H. 1 2. 3  WERE NEVER made
Available To ANDERSON

SEE: Page #7 A/R 658.06 Reasonable Accomodations
#1, 2, 3 Subsection A. B. C.  where NEVER
Made Available To ANDERSON

13

Claim #1

SEE:- Page #8  A/R 658.06   D. E.
NEVER Made Availible To ANDERSON

SEE:- Page #8  A/R 658.07
#1  A. E. F. G.  Where NEVER Made
Availible To ANDERSON

SEE: Page #10  A/R 658.10
MEDical Director Romeo Aranas And Director OF
NEVADA Prisons Signs All Training Policy Into
effect on 6-12-18, 5-15-18 ReGaurDing procedures
And policy For And ReGaurDing A.D.A Inmates
But [N.D.O.C] [S.D.C.C]  NEVER PROVIDE Staff
ReGuarding A.D.A which Requires Equal Access To
state. And Federal Program And Training IN which
Southern Deport C.T.N  Dosnt OFFER By And
Through Freud with a Diliberate INDifference.

AS IN  Randolph v. ROGERS 980. FSupp 1051
The Courts HelD That Failure To PROVIDE An
INTERPERTER DiD Not Deny Due PROCESS But
Failure of The State TO MOVE FoRwaRD with
[A.D.A] PROVISIONS CauseD UNDO HaRD Ship
UNDER TuneR StanDaRDs!  Its Cleak That
CongkRess

14

Claim #1

Has Abrogated Laws That clearly State The
"Eleventh Amendment" Protection For Declaration
And Injuctive Relief under Title II OT [A.D.A].
Congress Has Also Abrogated it at least For Prisoners
[A.D.A] Damages And Damage claims That Involve
Actual Violations OT Constitutional law Petitioners
Complaint Asserts Conduct That Violates [A.D.A] A/k '658
IN its Entirity And us. Constitutional laws two mandates
as Follows    14th Amend Due Process two Equal Protection
8th Amend Cruel And unusal Punishment.  The 9th Amend
Rights Retained By The People.  The 11th Amend Protection
For "Declaration Relief Concerning A.D.A Damages
The Defendants are Held liable under Provisions
OT A.D.A  Violations For Prisoners as In
    us. vs Georgia 546. us. 151, 160 126, Sct
877 (2006) Concurring Opinion)
    Miller vs King  384. F3d. 1248  1263-67
11th Cir  2004. Vacted And Super Seded  on other
Grounds 449. F3d 1149 (11th Cir 2006
    Phiffer V Columbia River Correctional Insititute
384 F3d 791 (9th Cir 2004). As "Andersons" medical
Claims Require Expert Knowlege, Expert Testimony
which Require  Technical Knowlege OT The
Long two Short Term Effects of "Disability
Due To "Kimuras Diease"

15

Claim #1

CONCERNING   A.D.A.   SEE. Mc Corthy V Hawkins
381 Fed 407 (5th Cir 2004)
      Akit V. Missouri Dept of Corrections (11th Cir 2003)
Mc. Corthy V. Hawkins 381 Fed 407 (5th Cir 2004)

Plaintiff Here State's Even In light of The Complexitys
of A.D.A Issues Involved Anderson Has Demonstrated
The Needed Burden For The Existence Of Such
Exceptional Circumstances As In Wilburn 789 Fed
@ 1331. Plaintiff Has established Exceptional Fact
Concerning (A-D.A Fraud) Deliberate Indifference
Delay And Denial of Adquate And Timely [ADA]
Provisions And Accomodation's as In Turner v. Safley
The Supreme court Held That when a Prisoner or
a Prison Regulation is valid if it is Reasonable
Related To legitimate Penological Intrest Here
"Anderson" Presents Several Factors. That Determine
Air 658 Title I II III Americans with Disabilites
Act A-D.A Section 504 Rehabilitation Act. That
By And Through " Deceptive Practice " with a
Deliberate Indifference are Not Offered At.
      Southern Desert C.T.N. Causing "Anderson" The
Effects of physical Distress Due To Intensional Infliction
(i i E D) with Intensional Infliction of Emotional Distress
(N i E D) Causing Anderson To Suffer Both (Anxiety And
Dappression) Causing Blood in Stool two Migrain Headacks
16

Claim # 1

THEIRS No A.D.A Protocal, NoR any A.D.A Staff
NoR any A.D.A AGENTS Stationeo at S.D.C.C. NoR
any Employee's FREE Staff, Mental Health A.D.A
Doctors NoR any CirtiFied A.D.A CoRDiNators
Stationeo at S.D.C.C. as A/R 658 in its Entirity
Manoate's as is Manoated By Constitutional law

Page: 17 is The END oF Claim # 1
    See: Attachments Supporting Frame work
    # 1    A/R 658 Title I. II. III
    # 2   ANDERSON's Request For A.D.A Accommodations
    #3   Grievence No A.D.A Civil Rights
         Front AND Back
    Informal Grievence    1st Level   2nd Level
    #4  Request For Norgal Housing After
        Surguy with This Request Surquy was
        Declined on my Hands AND Knee
    #5  Request For A.D.A Records INFo
        Custodian of Record
    #6  Request A.D.A Forms Medical Dept

17

# NEVADA DEPARTMENT OF CORRECTIONS
## ADMINISTRATIVE REGULATION
### 658

## REASONABLE ACCOMMODATION FOR INMATES WITH DISABILITIES

**Supersedes:**   AR 658 (04/13/15, Temporary); 5/19/15; 1/14/16; (07/05/17, Temporary)
**Effective Date:**   05/15/18
**Change:**   *Expanded Policy Amended from Hearing Impaired Inmates*

## AUTHORITY:

Title I, II and III of the Americans with Disabilities Act

## PURPOSE:

To ensure the Nevada Department of Corrections (NDOC) is compliant with *Title I, II, and III* of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act (Rehab Act). The ADA gives federal civil rights protections to individuals with disabilities, similar to those provided to individuals on the basis of race, color, sex, national origin, age, and religion. It guarantees equal opportunity for individuals with disabilities in public accommodations, employment, transportation, State and local government services, and telecommunications.

## RESPONSIBILITY:

The Director is responsible to ensure the administration and development of regulations.

The Deputy Directors of each Division are responsible to ensure implementation in their respective areas.

The Warden, Facility Manager, and/or designee is responsible to ensure operational procedures are implemented at each facility or institution.

All employees shall recognize and take seriously any requests for disability accommodations, and any complaints or grievances alleging disability discrimination or accessibility.

The ADA Coordinator, as defined by the Warden at each institution or facility, is responsible to ensure efforts have been exhausted in ensuring the NDOC works to provide reasonable accommodations. A *"reasonable accommodation"* is any modification or adjustment to a assignment, assignment application process, or work environment that will enable a qualified applicant or inmate with a disability to participate in the eligibility process, perform the essential functions of the assignment, or enjoy the benefits and privileges of prison employment or programs.

Attachment #1
Front AND Back

The Director of Medical and the Director of Nursing at each of the institutions/facilities are responsible for the operational control and administration of this regulation. They are also responsible for ensuring its provisions are followed and that all inmates who have been identified as having a disability are assessed appropriately.

658.01    DEFINITIONS

A.    Disability

1.    A physical or mental impairment that substantially limits one or more of an individual's major life activities; or

2.    A record of such an impairment; and/or

3.    Perceived or regarded as having such impairment.

B.    Major Life Activities: Includes such functions as caring for oneself, activities of daily living, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, eating, sleeping, walking, lifting, bending, reading, communicating, working, the operation of a major bodily function, including but not limited to functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, and reproductive functions.

C.    Substantial Limitation of a Major Life Activity: A condition that renders an individual unable to perform a major life activity that the average person in the general population can perform, and the determination of which requires an individualized assessment.

D.    Physical or Mental Impairments

1.    Physical or mental impairments include any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs; respiratory, including speech organs; cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine.

2.    Any mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

3.    The phrase physical or mental impairment includes, but is not limited to, such contagious and non-contagious diseases and conditions as orthopedic, visual, speech, and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy,

Attachment #1

multiple sclerosis, cancer, heart disease, diabetes, mental retardation, specific learning disabilities, HIV disease (whether symptomatic or asymptomatic), or tuberculosis. The phrase physical or mental impairment does not include homosexuality or bisexuality.

E. **Reasonable Accommodation**

1. A modification or adjustment to the physical environment, procedures, or the manner in which tasks are carried out that enable a qualified inmate with a disability to perform all essential assignment functions or to participate in a program or service or to use a facility.

2. NDOC will make reasonable modifications or adjustments to physical environment, procedures, or the manner in which tasks are carried out that are consistent with legitimate penological interests in order to allow qualified inmates with disabilities the same opportunity of usability and access as non-disabled inmates, unless doing so would create an undue hardship for Prisons, cause a fundamental alteration to a program, or pose a direct threat of substantial harm to the health and safety of the individual or others.

F. **Qualified Inmate with a Disability**: An inmate with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

G. **Undue Burden on the Department**: An action causing either: fundamental alteration of a service, program, or activity; or financial and administrative burdens requiring significant difficulty or expense in the implementation of an accommodation, or threat to the safety and security of the facility, staff, inmates, volunteers or visitors.

H. **Facility ADA Coordinator**: A position designated to ensure compliance and implementation of this policy within a NDOC facility. For purposes of this policy and program, that position shall be the Associate Warden for Programs at each facility. In the absence of an Associate Warden of Programs, the Facility ADA Coordinator shall be the facility's highest ranking Program staff member under the Facility Head.

I. **Utilization Review Panel**: A panel consisting of institutional practioners, Medical Director, and the Utilization coordinator, who review requests for medical care provided by an outside provider.

Attachment #1

## 658.02  POLICY OBJECTIVE

It is the policy of NDOC to establish procedures that will provide an accommodation or allow inmates to request an accommodation for a qualified disability that affects a major life activity and to ensure that:

A. Every inmate, including those with a qualified disability, shall be housed in a manner that provides for his/her safety and security. Reasonable accommodations are made only if the accommodations pose no direct threat to the individual requesting the accommodation, or to others, or cause an undue hardship on facility security and orderly operations;

B. Reasonable accommodations shall be made to the physical structure of housing for an inmate with a qualified disability to accommodate for the physical limitations of the disabled inmate and facilitate the inmate's inclusion in facility life;

C. The Facility ADA Coordinator may authorize housing unit furnishings within the cell/dorm to be rearranged to best accommodate an inmate with a qualified disability and shall identify specific criteria for bottom bunk priority. A visually or mobility impaired inmate shall be given bottom bunk status;

D. Reasonable accommodations shall be made to facility assignment assignments, programs, activities, and services to permit participation by a qualified inmate with a disability;

E. No qualified individual with a disability shall, solely by reason of such disability, be excluded from participation in or be denied the benefits of assignments, programs, activities, or services offered by the NDOC.

## 658.03  INMATE PROGRAMS

1. No inmate shall be discriminated against in participating in a assignment, program, activity or service based on his/her disability. Consistent with this regulation, facilities are required to make reasonable accommodations to known inmates with qualifying disabilities.

2. NDOC staff will modify assignments, programs, activities or services to the extent that a qualified disabled inmate can participate unless doing so would fundamentally alter the program, adversely affect legitimate peneological interests, pose undue hardships for facility operations, or pose a threat to the safety and security of the facility staff, other inmates, volunteers and visitors.

3. An inmate will not be placed in a assignment, program, activity or service which clearly jeopardizes his/her safety or security.

4. Exclusion of offenders from available programs or services shall be based on the following criteria:

Attachment # 1

A.    In order to provide the modification ADA access, it would present an undue burden to the facility/NDOC if:

　　　1)    The offender is unable to perform basic or essential functions of the program, with or without reasonable accomodations; or

　　　2)    The offender is not qualified to enroll in the program.

## 658.04  EQUAL ACCESS TO ASSIGNMENTASSIGNMENTS, PROGRAMS, ACTIVITIES, AND SERVICES

Eligible otherwise qualified inmates with a disability shall have the same opportunity for access to assignments, programs, activity(s) or service options as eligible otherwise qualified inmates without disabilities and are able to request service for activities.

## 658.05  INITIAL INTAKE PROCESS

1.    The Department will make reasonable efforts to identify inmates during the intake process who may have a disability, to include but not limited to medical, mental health, sight, mobility, deaf or hearing impaired. Additional assessments may be done by healthcare staff who notice any perceived disability, receive a request by the inmate for review, and/or receive a referral from a NDOC staff person for an evaluation by healthcare staff. The determination of ADA requires medical to determine the disability and reasonable accommodations to be done by a team of medical, the ADA coordinator and classification (caseworker).

　　A.    Healthcare staff will engage in an interactive process with the inmate to assess conditions which may qualify as a disability and may require ADA accommodations. This interactive process may include interviews with the inmate, employee observations, offender reports, and/or documentation of an offender's disability. If it is determined that an identified inmate may require a level of service accommodation, the inmate will be scheduled to be evaluated by a practitioner (physician or mid-level provider) within three (3) working days. A determination must be made and documented in NOTIS.

　　B.    If the healthcare practitioner is unable to determine that an identified inmate qualifies under the ADA, the practitioner will be responsible to submit a request to the Utilization Review Panel for a consult by an outside specialist to determine the level of disability and/or hearing loss and appropriate care for the inmate. Once the disability or hearing deficit has been confirmed and a course of treatment ordered, the inmate will be seen by a committee consisting of the ADA coordinator, a representative of the medical staff and classification to determine the appropriate accommodations and services based on the treatment ordered. The list of Accommodation Categories may be used to assist this process as determined by healthcare professionals. A memorandum will be generated by the ADA coordinator indicating the services that will be provided and any other special

Attachment #1

handling instructions. Copies of the memo will be placed in the inmate's I-file and medical file.

(C)   Once the appropriate level of care and the inmate's needs have been determined, the inmate will be eligible to be reviewed by Classification staff to determine appropriate institutional placement. Classification staff shall consider security concerns and appropriate programming availability at various institutions. The Facility ADA Coordinator is responsible to record ADA determinations and recommended accommodations, modifications or denial and explanation of delay to accommodation.

(D)   An inmate who has a disability that he/she believes is not being reasonably accommodated will submit a grievance with a written request for accommodation, in compliance with AR 740. The grievance must be included along with the specific disability(s) being claimed as well as the specific accommodation or service the inmate seeks.

(E)   The Medical Director must notify the inmate in writing of the final determination. The notice must be received by the inmate within 45 working days of the inmate's initial request. In the event a determination cannot be made within 45 working days because of circumstances beyond the control of the facility, the Medical Director shall notify the inmate requesting the accommodation within the 45-day period of the reason for the delay and the expected date that a final determination will be made. In any event, the inmate will be notified of the final determination within 60-working days of the date the inmate makes the initial request.

(F)   During any part of the ADA process outlined in this section of the policy, if the inmate transfers to another prison facility, the facility ADA Coordinator is to ensure that all forms and supporting documentations are forwarded to the ADA Coordinator at the receiving facility. The appropriate information will be included in NOTIS.

(G)   Justification for Denial of Request for Accommodation - A request for accommodation may be denied for any of the following reasons:

1)   A request for accommodation shall be denied when it would pose a risk to the safety and security of the prison facility, staff, or the public, or when the request would adversely impact other penological interests, e.g., deterrence of crime, interference with rehabilitative efforts, and maintenance of inmate discipline.

2)   In making determinations for reasonable accommodation, public safety, health, safety, and security of all inmates and staff shall take priority over an accommodation decision.

3)   Facility staff need not take an action to provide accessibility to a assignment, program, or activity, or service if the action would impose

Attachment #1

or require an undue burden.

H.   An Undue Burden. An accommodation that does not meet the standard of reasonableness, as determined by the Facility ADA Coordinator and Deputy Director or designee.

1)   A fundamental alteration of the purpose of the assignment, program, activity or service.

2)   Direct Threat. The Facility ADA Coordinator should consult with the Warden, or his designee, before making a final determination on the potential risk to security posed by an inmate's requested accommodation.

3)   Equally Effective Means. A request for accommodation shall be modified if equally effective access to a assignment, program, activity or service can be afforded through an alternate method that is deemed to provide equally effective access and/or equally effective communication, and will meet the standard of reasonableness.

## 658.06 REQUESTS FOR REASONABLE ACCOMODATIONS

1.   An inmate seeking an accommodation for a possible qualifying disability which was was not evaluated or identified by medical practitioner during the Inmate Intake Process, as identified in Section 658.3 above, shall submit an Inmate Disability Accomodation Request Form (DOC 2668 (12/17) to the Health Service Administrator.

2.   The inmate completing the Disability Accomodation Request Form must describe his or her specific disability(ies), and the specific accommodation and/or action the inmate wishes to be taken to accommodate the alleged disability. The health care staff member handling any actions outside of the Department shall insure all HIPAA releases are documented.

3.   The Health Service Administrator/designee shall:

A.   Review the Inmate Disability Accomodation Request Form to determine its completeness. Illegible or incomplete forms shall be returned to the inmate.

B.   Evaluate whether the inmate is disabled as described by the inmate and whether the inmate is able to perform the activities described.

C.   Arrange for a clinical evaluation of the inmate's alleged disability and/or impairment by a medical practitioner in order to validate the disability/accommodation request. Any clinical evaluation should be an interactive process between the health care professional and the inmate. This evaluation may include a review of medical records, a medical examination and any other action deemed necessary by the medical practitioner.

Attachment #1

D.   Following the clinical evaluation, the medical practioner shall forward the Inmate Disability Accomodation Request Form along with the results of the evaluation to the ADA Coordinator.

E.   Upon the determination that the medical condition qualifies as a disability as defined by the ADA, the ADA Coordinator, with input provided by the health care staff, security staff and caseworkers, will determine what accommodation(s) would be effective and reasonable.  The NDOC will make the final determination of the reasonableness of an accommodation.

## 658.07   ACCESS TO AUXILIARY VISUAL, HEARING AIDS AND SERVICES

For those inmates identified with a visual impairment or hearing impairment, the ADA Coordinator , with the assistance of the medical staff, will ensure that visually-impaired and hearing-impaired inmates are provided  access to auxiliary aids and services when required for effective communication in accessing and   participating in department programs, services and activities.

1.   Such programs, services and activities  include but are not limited to the following:

A.   Intake assessments and classification;

B.   Institutional orientation;

C.   Medical and mental health services;

D.   Substance abuse and other treatment programs;

E.   Inmate work and education programs;

F.   Program, housing, classification, release and other status reviews;

G.   Disciplinary hearings, grievances, discrimination complaint, and other administrative processes for review of decisions and actions by department staff affecting inmates; and

H.   PREA reporting and/or follow-up with any PREA concerns

2.   Auxiliary aids and services for deaf and hearing-impaired inmates may include but are not  limited to the following:

A.   Handwritten or typed notes if the communication is short and simple;

B.   Qualified sign language interpreters, when available, if the communication is not short and simple (either in person or video interpretation) and for large meetings and events;

Attachment #1

C.  Real-time captioning of video materials, when available;

D.  Open or closed captioning of video materials, when available;

E.  Written transcripts or outlines;

F.  Visual notifications such as a flashing light or flashcard;

G.  A sign on a cell door or vest/shirt notifying staff of a hearing-impaired inmate; and

H.  Other methods of making aurally delivered materials accessible to people with hearing impairments.

3.  Aids for the Visually Impaired Include, but are not limited to:

A.  Safety Glasses;

B.  Magnifier in the computer in the law library;

C.  Writing guides, when available; and/or

D.  Reading books in braille, when available

4.  When an auxiliary aid or service is requested by a deaf or hearing-impaired inmate, the ADA Coordinator will consult with the inmate to determine what aid(s) will be effective. Staff will give primary consideration to the inmate's choice unless another equally effective means of communication is available and/or provision of the auxiliary aid or service requested by the inmate would result in an undue financial or administrative burden to the Department or a fundamental alteration of the program, services or activity.

5.  After documenting an inmate's need for auxiliary aids and services for effective communication, staff will continue to provide auxiliary aids and services to the inmate unless the inmate affirmatively indicates that he or she does not want such services, or the Department determines such services are no longer required under the ADA.

**658.08 MEDICAL AIDS**

1.  Medical staff will be responsible for keeping appropriate records regarding inmates identified with a disability including all medically necessary aids and services.

2.  Medical staff will be responsible for purchasing and keeping an appropriate stock of the most frequently used hearing aid batteries. Batteries for hearing aids not provided by the N D O C will be ordered upon written request by the inmate. Batteries that are in stock will be replaced. Batteries that are not stocked will need to be ordered. The ordering process will be initiated by the next business day of the received written

Page 9 of 11

Attachment #7

request. Inmates must turn in their old batteries to obtain new ones.

3. Medical staff must be notified in writing by the inmate if the inmate's visual or hearing aid is damaged or in need of repair. The hearing aid will be sent out by the Department to a repair company by the next business day with a request for estimate or quote of the estimated charges to repair or replace the hearing aid. The completed estimate or quote will be sent to the Utilization Review Panel for authorization. Any damages that are determined to have been caused by the inmate may be subject to NRS 209.246 charges, which require the inmate to pay 100% of the cost of repair or replacement. Medical shall inform the inmate when the hearing aid was sent to the repair company and when it is expected to be returned. Medical will maintain written documentation of all hearing aid repairs, including the vendor used, the date of the repair and the specific repairs performed in the inmate's medical file. While a hearing aid is out on repair, the inmate will be provided with an alternative means of reasonable accommodation.

4. Annual Evaluation of Eligibility under the ADA Inmates found to meet the criteria for inclusion under the ADA will be re-evaluated annually to assure the appropriateness of ongoing inclusion and provision of accommodations under the ADA.

**658.09 TELEPHONIC AIDS**

1. Telecommunications Typewriters (TTY) are also known as Telecommunications Device for the Deaf. The Warden shall ensure that written procedures are developed and implemented to provide TTY's for inmates who are deaf or hearing-impaired in a manner that ensures effective access to telephone services.

2. In light of the fact that telephone calls placed via a TTY unit take three to five times longer than telephone calls placed using standard voice equipment, NDOC shall not impose on TTY calls a time limit of less than four times the time allowed for voice telephone calls.

**658.10 TRAINING**

1. The Facility ADA Coordinator will receive training annually in the Americans with Disabilities Act, Title II, which requires equal access to state programs and facilities to those with qualifying disabilities and any other training as designated by the Director or his designee.

2. ADA Training will be provided to all staff on the policy and procedure regarding the ADA Process for inmates. New employees will be provided ADA Training as part of new employees' Orientation.

3. All appropriate identified Department staff will be trained through use of audio and visual methods and will be provided printed educational information on the ADA Policy and Procedures regarding the ADA and inmates.

Attachment #1

**APPLICABILITY**

1.    This administrative regulation requires operational procedures on equipment utilized for  visual and hearing accommodations.

2.    This administrative regulation requires an audit.

**REFERENCE:  ACA 4th Edition 4-4054, 4-4055**

_____          6/12/18
Medical Director, Romeo Aranas, M.D.           Date

_____          5-15-18
Director, James Dzurenda, J                       Date

Argument

THEIR is Good cause UNDER The color oT Law: Brought Pursuant: NRS 41.0322 ToRT Action AND Civil Rights Complaint Pursuant To 42 usc 1/1983 As Follows

Petitioner ANDERSON Has Established EXCeptional Circumstances concerning (A.D.A Fraud) Deliberate Indifference Delay AND Denial of Adequate AND Timely Health Care, Adequate AND Timely A.D.A Accommodations → As IN Turner v/Safley The Supreme court Held: That when a prisoner OR a Prison Regulation is valid if it is Reasonable Related To legitimate Penological INTEREst — while Here IN Case # A-19-795886-C ✗ Petitioner Presents SEVEral Factors That Determine NR 658 is Reasonable AND Related But Truly AND Through "Deceptive Practice" with A "Deliberate" Indifference, ✗ Are Not Followed OR Administered By "Southern Desert Correction" Centers DiR oT Prisons James DZurenda NoR WaRDen JERRY Howell NoR Any Agent Staff, Employee.) O FRee staff AND or Doctor Has "Attempted" Apply the [A.D.A] as it is Written Here O The Absence oT Ready Alternatives is The EviDence oT "Fraud" on INmate ANDERSON Causing Imminent Danger oT "limb AND libERTy"

9

658.10 # 2.3 { Review Atance 6-12-18 } Application reference
Direct- James December 5- 18 } A.C.A 4th Edition
4-4054, 4-4055

PRINT NAME: Anthony K Anderson    ID#: 1082999
(Also print name and ID# at bottom of form where indicated)    DOB: 9 11 164

Institution: S.D.C.C    Date submitted: 8.3.18    Signature: Anthony K Anderson

Medical ☑    Dental: ☐    Mental Health: ☐    Nursing: ☐    Other: ADA Review

Reason for request: (Describe below)
Request Accommodation For Inmate with Disabilities Act
Responsibility (Kummler Diease) =0 7658.01 Disabitic # A 1.
#B Function of The Immune System # C Head Ach Cause
Substantia limitation of Major Act #D 1 # E 2 # H (=0
ADA Coordinator Must Insure Compliance # I Review Level (=0
658.02 # 1 D#.1.f. 658.03 #1.2.3  658 04  658.05 #1
1.1.B-C D#H 1  DO NOT WRITE IN AREA BELOW 658.06 1.2.#3 D.# E

Response to request:
Medical does not have this
Form. please Contact your Careworker.

☐ Appointment Schedule for: __/__/__    Rescheduled for: __/__/__
☐ No visit necessary
☐ No Show for Appointment
☐ Refused to be seen. DOC 2523-Release of Liability signed    RECEIVED

PRESCRIPTIONS    AUG 03 2012
☐ KOP    ☐ NON-KOP
☐ Order Date: __/__/__    Initial:

PLAN
☐ Follow-up appointment __/__/__    ☐ Return if needed
☐ No follow-up required

Signature/Title of Provider    JPN    Date 8/3/18

NEVADA DEPARTMENT OF CORRECTIONS
**MEDICAL KITE and/or**    NAME: Anderson Anthony K
**SERVICE REPORT**    Last    First    M.I.
ID# 1082999
Unit/Cell#: 12-A-4-D

[A.D.A] 03/18 1st Request

Attachment # 2

Exhibit # 6



*Count #1*

*For Tracking Purposes only*

Log Number *2006206.9964*

*Medical Admin*

# NEVADA DEPARTMENT OF CORRECTIONS
## INFORMAL GRIEVANCE

NAME: *Anthony Anderson*   I.D. NUMBER: *1082999*

INSTITUTION: *Southern Desert Correct Center* UNIT: *12·A·4·D*

GRIEVANT'S STATEMENT: *Southern Desert Correctional (Sdcc), agents, employees,*
*and staff, have violated my right to the Americans with Disabilities Act Title*
*I,II, and III. (ADA) The ADA gives civil rights protection to Grievant, which has*
*been violated with a conscience and deliberate indifference, having or know-*
*ledge ADA requirements, standards since 04/13/15 (See Doc-309 attached)*

SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: *Anthony Anderson*   DATE: *8-8-18*   TIME: *1:23 : PM*

GRIEVANCE COORDINATOR SIGNATURE: _____   DATE: _____   TIME: *2P*

GRIEVANCE RESPONSE: _____

_____

_____

_____

_____

CASEWORKER SIGNATURE: _____   DATE: *9/24/18*

____ GRIEVANCE UPHELD   ____ GRIEVANCE DENIED   ____ ISSUE NOT GRIEVABLE PER AR 740

GRIEVANCE COORDINATOR APPROVAL: _____   DATE: _____

____ INMATE AGREES   ____ INMATE DISAGREES

INMATE SIGNATURE: *Anthony R. Anderson*   DATE: *9-24-2018*

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A FIRST LEVEL GRIEVANCE MAY
BE PURSUED IN THE EVENT THE INMATE DISAGREES.

| | |
|---|---|
| Original: | To inmate when complete, or attached to formal grievance |
| Canary: | To Grievance Coordinator |
| Pink: | Inmate's receipt when formal grievance filed |
| Gold: | Inmate's initial receipt |

RECEIVED

AUG 09 2018

S.D.C.C.
A.W.P.
DOC 3091 (12/01)

*Attachment #3*

**NEVADA DEPARTMENT OF CORRECTIONS**
**GRIEVANT'S STATEMENT CONTINUATION FORM**

NAME: Anthony Anderson          I.D. NUMBER: 1082999

INSTITUTION: Southern Desert Corect Center   UNIT #: 12·A·4·B

GRIEVANCE #: INFORMAL          GRIEVANCE LEVEL: INFORMAL

GRIEVANT'S STATEMENT CONTINUATION:   PG. 2   OF 3

all of the above mentioned acting under the color of law have failed to: 1. staff SDCC with an ADA coordinator; 2. to ensure that Nevada Department of Corrections (NDOC) provides reasonable accommodations or adjustment to assignment, assignment of the ADA application process. SDCC agents, employees, staff, have failed to follow the "mandates" applicable to Administrative Regulation (AR) 658, causing Grievant to continue to suffer emotionally, mentally, and physically. Thus, denying Grievant the privileges of the Fourteenth (14th) United States Constitutional Amendment the rights to Due Process and Equal Protection of Law. Grievant suffers from a disability of and affecting Major Life Activities, an immune system disorder (Kummel Disease), that Grievant has been affected with for over six (6) years. Thus, SDCC of the NDOC has failed to provide Grievant with adequate evaluation pursuant to the ADA. The Director of Medical And the Director of Nursing have failed to maintain the operation of the ADA at SDCC, as well as administrative agents, employees, and staff at SDCC of the

Original:   Attached to Grievance
Pink:       Inmate's Copy



DOC – 3097 (01/02)

Attachment   #3

# NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Anthony Anderson                    I.D. NUMBER: 1082999

INSTITUTION: Southern Desert Correct Center    UNIT #: 12: A: 4: D

GRIEVANCE #: INFORMAL          GRIEVANCE LEVEL: INFORMAL

GRIEVANT'S STATEMENT CONTINUATION:   PG. 3   OF 3

NDOC. These failures of adhereing to the mandates of the clearly delineated, well established mandates of the ADA, has caused Grievant extreem distress, etc.

Remedy Sought:

Grievant seeks that SDCC of the NDOC immediately comply with the mandates of the ADA applicable to his disability, providing appropriate care, evaluation etc.

That, since the ADA is a well established federal mandate, and Grievant has suffered for over six (6) years, he additionally seeks $500,000.00

Original:     Attached to Grievance
Pink:         Inmate's Copy

DOC – 3097 (01/02)

Attachment #3







# State of Nevada
## Department of Corrections

*INMATE GRIEVANCE REPORT*

**ISSUE ID#** 20063069964

**ISSUE DATE:** 08/09/2018

| INMATE NAME | NDOC ID | TRANSACTION TYPE | ASSIGNED TO |
|---|---|---|---|
| ANDERSON, ANTHONY KENNETH | 1082999 | RTRN_INF | SLCLARK |

| LEVEL | TRANSACTION DATE | DAYS LEFT | FINDING | USERID | STATUS |
|---|---|---|---|---|---|
| IF | 09/10/2018 | 5 | Denied | SCOOK | INACTIVE |

### INMATE COMPLAINT

### OFFICIAL RESPONSE

Denied

Denied $500,000

According to your medical chart you have had Kimura's Disease since 2013 and worked on yard labor prior to taking medication for inflammation.

We received a kite on 7/6/2018 requesting to see the doctor to return to work on light duty. On 8/15/2018 you saw the Doctor and only asked the Doctor about the ADA paperwork. You stated that you cannot work like you did before because of your headache and knee problem. You did not state that you think that you are disabled and need accommodations. All the times you have seen the provider you have not requested a reclassification change because of your complaints of having a medical problem and that you cannot function on this yard.

The orthopedic diagnosed osteoarthritis in your knee from your MRI and the Doctor for your Kimura's disease informed you before you started taking prednisone that weight gain was a possibility, this is documented in your record. The diet your were on to help decrease weight gain you actually requested it to be changed to a low sodium not the 2000 cal diet that the Medical doctor have prescribed. You have not requested medication for your headaches or taken the medication that is as needed to help the side effects of Kimura's since before June 2018. . You also have a specialist requested outside follow up which will be scheduled based on the offices availability for an appointment.

On 8/3/2018 it was brought to Medicals attention that there is a form to fill out that you are requesting disability accommodations. That information has been passed up my chain of command for what you are requesting. You will be scheduled again to see the doctor about medication and to document your current physical limitations.

*The response above was never relayed to Anderson I was told in Medical Request on 8-3-18. By two through medical kite Medical does not have this form ID Exhibit #2 found*

*Note all response in Blue are in Error of Fact ID Medical File Progressive Note*

GRIEVANCE RESPONDER   DClhoven (SlClark RN)

*Anthony R Anderson*  9-24 18

Report Name: NVRIGR
Reference Name: NOTIS-RPT-OR-0217.4
Run Date:   SEP-10-18 10:58 AM

Page 7 of 12
#1082999

*Attachment #3*



## NEVADA DEPARTMENT OF CORRECTIONS
## ADMINISTRATIVE CLAIM FORM

> **THIS FORM MUST BE COMPLETED PER NRS 41.036, 41.0322, 209.243 AND ADMINISTRATIVE REGULATION 740**

> **DO NOT SEND DIRECTLY TO ATTORNEY GENERAL'S OFFICE, BOARD OF EXAMINERS, OR DIRECTOR**

> This form is to be attached to your grievance form for any injuries or any other claim (except property) arising out of a tort alleged to have occurred during your incarceration as a result of an act or omission of the Department of Corrections or any of its agents, former officers, employees or contractors.

The following information is necessary to fairly evaluate your claim. Please provide complete information. If you need more space, attach a separate sheet of paper. You may submit additional evidence if available. Such additional evidence will be returned.

CLAIM IN THE AMOUNT OF $ 500,000.00 is hereby made against the Department of Corrections, based upon the following facts:

| 1. NAME OF CLAIMANT (Please print full name) | 2. I.D. # | 3. INSTITUTION |
|---|---|---|
| Anthony Anderson | 1082999 | Southern Desert Correction Center |
| 4. AMOUNT OF CLAIM | 5. DATE AND DAY OF OCCURRENCE | 6. TIME (a.m. or p.m.) |
| $500,000.00 | October 13th, 2013 THRU August 8 2018 (8-8-18) | 9:30 A.M. |
| 7. PLACE OF OCCURRENCE | Nevada Department of Correction facilities | |

DOC 3095 (12/01)

Attachment #3

8. Describe here, in complete detail, exactly how your claim loss or damage occurred and why you believe the institution is responsible or liable:

The details of this grievance are to extensive to state in the small space provided on this form. The full and complete details are provided in the attached Internal Grievance (DOC-3091, and attached DOC:3097

Dated  8-8-18   TME 123:64

9. Witnesses. Be sure to include any staff member who may have been involved in, or has any knowledge of, your alleged loss; also, list any inmate who has actual knowledge of facts pertinent to your claim:

Medical agents, employees, and staff of the Nevada Department of Corrections, as well as administrative agents, employees, and staff of Nevada Department of Corrections. A/R 658      A/R 658.01      A/R 658.02 A/R 658.03   A/R 658.04   A/R 658.05 A/R 658 Through A/R 658.10 And its entirity   Inmates with Disability Act A&A 4th Edition 4-4054 4-4055

10. Other pertinent information:

I Anthony Anderson, have additional civil litigation in process that is related to this matter, and upon further litigation will be incorporated to this matter case # A 761307 [SC # 78061

Inmate with Disability Act A/K 658 was signed into full effect By Medical Director (James Atkans) 6-12-18 As The Director of Nevada state Prison (James Dzurenda) 5-15-18 Also Signed, A/K 658 into Full effects without Much Needed staff two or Information

Attachment   #3

STATE OF NEVADA____  )
                     ) SS
COUNTY OF CLARK_____ )

I, _Anthony Anderson___, do hereby swear under penalty of perjury that I am the claimant named above, that I have read the foregoing claim and know the contents thereof, that the same is true of my own knowledge, except those matters stated upon information and belief, and as to those matters, I believe them to be true, and that THIS IS MY ENTIRE CLAIM AGAINST THE STATE OF NEVADA/DEPARTMENT OF CORRECTIONS.

I FULLY UNDERSTAND THAT I WILL HAVE TO SIGN A GENERAL RELEASE OF ALL CLAIMS IN THE PRESENCE OF A NOTARY PUBLIC FOR THE EXACT AMOUNT I AM CLAIMING BEFORE ANY PAYMENT WILL BE OFFERED TO ME.  THIS GENERAL RELEASE WILL BECOME EFFECTIVE ONLY UPON ACTUAL PAYMENT OF THE CLAIM BY THE STATE OF NEVADA.

DATED this _08_ day of _August_____, 2018

                                    Anthony K Anderson #1082999
                                    Signature of Claimant

**NOTICE**

NEVADA REVISED STATUTE 197.160 provides that every person who knowingly presents a false or fraudulent claim is guilty of a gross misdemeanor, and is subject to criminal penalties of imprisonment of up to one year, and a fine of up to $2,000.00.

DOC - 3095 (12/01)

Attachment # 3



*Memal*

Log Number 2006306.99.64

Count #2

## NEVADA DEPARTMENT OF CORRECTIONS
## FIRST LEVEL GRIEVANCE

NAME: Anthony K. Anderson   I.D. NUMBER: 1082999

INSTITUTION: Southern Desert C.T.N   UNIT: 12-A-4-D

I REQUEST THE REVIEW OF THE GRIEVANCE, LOG NUMBER 2006306.99.64 , IN A FORMAL MANNER. THE ORIGINAL COPY OF MY GRIEVANCE AND ALL SUPPORTING DOCUMENTATION IS ATTACHED FOR REVIEW.

SWORN DECLARATION UNDER PENALTY OF PERJURY          9-24-2018

INMATE SIGNATURE: Anthony K. Anderson #1082999   DATE:

WHY DISAGREE: REASON #(1) THIS Grievance Addresses Factual Violations OF A.D.A Requirements Not Being Met at Standards. By S.D.C.C I.D. Exhibit #1 Found in Informal level 8-378 Medical Request for Plaintiff Request meeting with A.D.A Cordinator in Compliance with Review Panel IO (658.02 #1: D #1 E)(658.03 #1.2.3)(658.04.)(658.05 #1)

GRIEVANCE COORDINATOR SIGNATURE: _____   DATE: 10-8-8

FIRST LEVEL RESPONSE: _____

_____ GRIEVANCE UPHELD   _____ GRIEVANCE DENIED   _____ ISSUE NOT GRIEVABLE PER AR 740

WARDEN'S SIGNATURE: _____ TITLE: _____ DATE: _____

GRIEVANCE COORDINATOR SIGNATURE: _____ DATE: _____

_____ INMATE AGREES   _____ INMATE DISAGREES

INMATE SIGNATURE: Anthony K. Anderson   DATE: 11-9-2018

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A SECOND LEVEL GRIEVANCE MAY BE PURSUED IN THE EVENT THE INMATE DISAGREES.

Original:   To Inmate when complete, or attached to formal grievance
Canary:   To Grievance Coordinator
Pink:   Inmate's receipt when formal grievance filed
Gold:   Inmate's initial receipt

Received SDCC
OCT 04 2018
AWP

DOC 3093 (12/01)

Attachment #3

**NEVADA DEPARTMENT OF CORRECTIONS**
**GRIEVANT'S STATEMENT CONTINUATION FORM**

NAME: Anthony K. Anderson          I.D. NUMBER: 1082999

INSTITUTION: Southern Desert CT.N          UNIT #: 12-A-4-D

GRIEVANCE #: 20063069964          GRIEVANCE LEVEL: First level

GRIEVANT'S STATEMENT CONTINUATION:   PG. **2**   OF   **3**

1 A.B.C. D # H 1) (458.06 #2 #3.D. # E) Signed into Effect
By (Medical Dir Romeo Aranas) on 6-12-18. #2 Dir of Prisons
(James DZurenda) of 5-15-18   in which state of New. B.D.co
is not in Compliance with. 10 Medical Requested ACTION response
Dated 8-3-18 (Medical Does not Have This Form Please
contact your Case worker) When also Informed Anderson
This Form Doe not exist [strikethrough] "Thats Non Compliance" with Federal law

Reason #2 why I D'sagree, upon seeing The
Doctor. I did not only Ask about A.D.A paperwork
I Informed The Doctor of The Reason why I could
Not walk! (The way I did Before; as stated in state's
response I Informed him of on going Headack's And Knee problems
as He States in Progressive notes. "When I Begin
To state 3d) The Issues concerning A.D.A Disabled
Needs And Accomodations The Doctor Leaves
(the examination room) stating you must Address That

Original:       Attached to Grievance
Pink:           Inmate's Copy

9-24-2018

DOC – 3097 (01/02)



Attachment #3

**NEVADA DEPARTMENT OF CORRECTIONS**
**GRIEVANT'S STATEMENT CONTINUATION FORM**

NAME: Anthony K. Anderson       I.D. NUMBER: 1082999

INSTITUTION: Southern Desert C.T.N    UNIT #: 12-A-4-D

GRIEVANCE #: 20063069964       GRIEVANCE LEVEL: First level

GRIEVANT'S STATEMENT CONTINUATION:  PG. 3  OF 3

with Provider. you Have an Appointment To See
The Hematologist Based on Availability. The Hematologist
is not a ADA Coordinator For ADA Requirents
two or A.D.A Standards. "is My Issues under The color of law"
#(3) why I disagree ID. IN My Progressive
Notes I Have Requested Medication For My
Headachs over and over again AND Have
only Been Pre-Skibed 800 MG IBU
As For Taken The Medication PreDnisone This stroid
was Beging To Cause #2 Noire Bleeding #3 Mouth Bleeding
#3 50 lb weight gain Now Placing me a Risk of Heat Disease
#5 High Blood Pressure #6 High Blood Sugar #7 As well As (Erectal
DisFunktions) And Also Reproduction Organs
Size ReDuctions. The Drug PreDnisone.
only Keeps The Facial Swelling at Bay And Doesn't
Address The Root of The Kikuches Diesese. I am again
Requesting a ClassiFication Change   (I hereby Sought
Original:   Attached to Grievance       Administrative Claim
Pink:      Inmate's Copy                Form -
                                        9-24-2018 Dated

DOC – 3097 (01/02)

Attachment #3



Exhibit # 10

*1st level*

# NEVADA DEPARTMENT OF CORRECTIONS
## ADMINISTRATIVE CLAIM FORM
*9-24-2018*

---

**THIS FORM MUST BE COMPLETED PER NRS 41.036, 41.0322, 209.243 AND ADMINISTRATIVE REGULATION 740**

---

**DO NOT SEND DIRECTLY TO ATTORNEY GENERAL'S OFFICE, BOARD OF EXAMINERS, OR DIRECTOR**

---

This form is to be attached to your grievance form for any injuries or any other claim (except property) arising out of a tort alleged to have occurred during your incarceration as a result of an act or omission of the Department of Corrections or any of its agents, former officers, employees or contractors.

---

*Remedy Sought*

The following information is necessary to fairly evaluate your claim. Please provide complete information. If you need more space, attach a separate sheet of paper. You may submit additional evidence if available. Such additional evidence will be returned.

CLAIM IN THE AMOUNT OF $ *500,000 ⁰⁰* _____ is hereby made against the Department of Corrections, based upon the following facts:

| 1. NAME OF CLAIMANT (Please print full name) | 2. I.D. # | 3. INSTITUTION |
|---|---|---|
| *Anthony K. Anderson* | *108 2999* | *Southern Desert Correctional Center* |

| 4. AMOUNT OF CLAIM | 5. DATE AND DAY OF OCCURRENCE | 6. TIME (a.m. or p.m.) |
|---|---|---|
| *Five Hundred Thousand $500,000 ⁰⁰* | *October 18ᵗʰ 2013 - Thru (Sept 28ᵗʰ 2018) 9-24-18* | *1:45 PM* |

| 7. PLACE OF OCCURRENCE |
|---|
| *Nevada Department of Corrections Facilities* |

DOC 3095 (12/01)

*Attachment #3*

8. Describe here, in complete detail, exactly how your claim loss or damage occurred and why you believe the institution is responsible or liable:

The details of This Grievance are To Extensive To state in The Small Space provided on This Form The Full and Complete Details cant Even Be provided Through DOC-Form 3097 (in Accordance To The Administrative Policy of only 2 Continuation Forms In effect The Issues are provided at least in Attached 1st level Grievance DOC-3091 And Attached DOC-3097 Dated 9-25-2018

9. Witnesses. Be sure to include any staff member who may have been involved in, or has any knowledge of, your alleged loss; also, list any inmate who has actual knowledge of facts pertinent to your claim:

Medical Agents, Employees, And Staff of The NEVADA Department of Corrections, as well as Administrative Agents, Employees And Staff of Nevada Department of Corrections AR 658, 658.01 658.02 658.03 658.04 658.05 658 Through AR 658.10 And its entirety Inmates with Disability Act A.C.A 4th Edition Signed into Effect 4-4054 4-4055 Dated 6-15-18 Director Dzurenda

10. Other pertinent information:

I Anthony Anderson # 1082999 Have Addictional Civil litigation in Process Thats is Related To This Matter, AND 28.U.S.C 7806| upon Further litigation will Be incorporated To This Matter, Inmate with ADA Act AR 658 was Signed into effect By Said Medical Dir Romeo Arons on (10-12-18) AND The Director of Prisons places ADA in Full Effect on 6-15-18 Signed By DIR of Prisons James DZURENDA AR 658

Attachment #3

STATE OF _NEVADA_____ )
                       ) SS
COUNTY OF _Clark___   )

I, _Anthony K. Anderson_, do hereby swear under penalty of perjury that I am the claimant named above, that I have read the foregoing claim and know the contents thereof, that the same is true of my own knowledge, except those matters stated upon information and belief, and as to those maters, I believe them to be true, and that THIS IS MY ENTIRE CLAIM AGAINST THE STATE OF NEVADA/DEPARTMENT OF CORRECTIONS.

I FULLY UNDERSTAND THAT I WILL HAVE TO SIGN A GENERAL RELEASE OF ALL CLAIMS IN THE PRESENCE OF A NOTARY PUBLIC FOR THE EXACT AMOUNT I AM CLAIMING BEFORE ANY PAYMENT WILL BE OFFERED TO ME. THIS GENERAL RELEASE WILL BECOME EFFECTIVE ONLY UPON ACTUAL PAYMENT OF THE CLAIM BY THE STATE OF NEVADA.

DATED this _24th_ day of _Sept_____, 20 _18_

                              Anthony K. Anderson
                    Signature of Claimant  # 1082999

## NOTICE

NEVADA REVISED STATUTE 197.160 provides that every person who knowingly presents a false or fraudulent claim is guilty of a gross misdemeanor, and is subject to criminal penalties of imprisonment of up to one year, and a fine of up to $2,000.00.

DOC - 3095 (12/01)

Attachment # 3



Exhibit #11



**State of Nevada**
**Department of Corrections**

*INMATE GRIEVANCE REPORT*

**ISSUE ID#**   20063069964                    **ISSUE DATE:**   08/09/2018

| ANDERSON, ANTHONY KENNETH | 1082999 | RTRN_L1 | BGUTIERREZ |
|---|---|---|---|

| 1 | 10/24/2018 | 5 | Denied | SCOOK | INACTIVE |
|---|---|---|---|---|---|

Denied.

I reviewed your Medical records in detail and noticed that you have seen our Provider more than 6 x for the last 5 months, you also saw a Las Vegas Specialist because our Provider referred your concerns to a Specialist. This type of care are better than the National standard of practice but you are still claiming that you were somehow neglected and no proper care were given. We have highly educated, skilful, experienced Providers that knows what they are doing and they always do what is needed and not what the patient wants. All are documented in your records. They will classify you as needed but not to the point that you WANT them to write that you are disabled for your own request.

THIS is NOT an A.D.A Cordinator
SEEING a Medical PROVIDER is NOT
The Issues Addressed in This
GRIEVANCE This Response is
Null & Void I NEVER SEEN
a Specialist That works in
the Field of SSI NOT
Disability CONCERNING A.D.A
Certifications

GRIEVANCE RESPONDER      10/31/18
Report Name: NVRIGR

Anthony K Anderson   11-9-2018
                     Page 13 of 18
#1082999

Attachment #3



*Medical*

LOG NUMBER: 20063069964

*Count #3*

# NEVADA DEPARTMENT OF CORRECTIONS
## SECOND LEVEL GRIEVANCE

NAME: _Mr Anthony K. Anderson_   I.D. NUMBER: _1082999_

INSTITUTION: _Southern Desort C.T.N_   UNIT: _12-A-4-D_

I REQUEST THE REVIEW OF THE GRIEVANCE, LOG NUMBER _20063069964_ , ON THE SECOND LEVEL. THE ORIGINAL COPY OF MY GRIEVANCE AND ALL SUPPORTING DOCUMENTATION IS ATTACHED FOR REVIEW.

SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: _Anthony K. Anderson_   DATE: _1-9-19_

WHY DISAGREE: _SEE Informal Grievance : EXHibit #1 Date 8-3-18_
_"Plaintiff only Request" ADA Accommodations, To SEE ADA_
_Cordinator That In compliance with A.D.A Review Panel_
_"quote Medical Dept at S.D.C.C States plain two Clear_
_Medical doesn't Have any ADA Forms Please contact your Case worker_

GRIEVANCE COORDINATOR SIGNATURE: _[scribbled]_   DATE: _[scribbled]_

_____

SECOND LEVEL RESPONSE: _____

_____

_____

_____

_____

____ GRIEVANCE UPHELD ____ / ____ GRIEVANCE DENIED ____   ISSUE NOT GRIEVABLE PER AR 740

SIGNATURE: _[signature]_   TITLE: _MD_   DATE: _3/27/19_

GRIEVANCE COORDINATOR SIGNATURE: _[scribbled]_   DATE: _[scribbled]_

INMATE SIGNATURE: _____   DATE: _____

## THIS ENDS THE FORMAL GRIEVANCE PROCESS

| | |
|---|---|
| Original: | To inmate when complete, or attached to formal grievance |
| Canary: | To Grievance Coordinator |
| Pink: | Inmate's receipt when formal grievance filed |
| Gold: | Inmate's initial receipt |

Received
SDCC

JAN 2 5 2019

AWP

DOC 3094 (12/01)

_Attachment #3_

**NEVADA DEPARTMENT OF CORRECTIONS**
**GRIEVANT'S STATEMENT CONTINUATION FORM**

NAME: Anthony R. Anderson          I.D. NUMBER: 1082999

INSTITUTION: Southern Desert CTN    UNIT #: 12-A-4-D

GRIEVANCE #: 20063069924      GRIEVANCE LEVEL: 2nd

GRIEVANT'S STATEMENT CONTINUATION:    PG. 1    OF 2

#3 In which The Assigned Case worker For unit 12. states He dosnt Have a clue. What (A.D.A Paper work looks like) #3) IN Response To level #1 Grievance Report Assigned To "B.GUTiERREZ" 8-9-18 N.D.O.C Grievant Cordinator DOES NOT ADDRESS The A.D.A Issues Presented For 1 level Review Here plaintiff NEVER ADDRessed SEEiNG a HeDical Provider NOR Has plaintiff Addressed Hedical NEGLect "IN This Grievance" as stated By Grievant Cordinator B.GUTiERREZ IN N.D.O.C Response on 8-9-2018 NEVADA Dept of correction Response is not what ANDERSON (Grieved) ANDERSON Clearly Addressed N.D.O.C IS NOT IN Complaince with A.D.A Requirements AND Standards Found in AR 658.02 #1; D# 1E, 658.03 #123 658.04, 658.05 #1; ABCD # H 1, 658.06 # 1 #3.0 #2 IN Compliance with A.D.A Review Pruvel Signed INTo Efect By Dir James Dzurenda 5-15-18

Original:    Attached to Grievance
Pink:        Inmate's Copy

DOC – 3097 (01/02)

Attachment # 3

# NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Anthony Anderson   I.D. NUMBER: 1082999

INSTITUTION: Southern Desert CTN   UNIT #: 12-A-4-D

GRIEVANCE #: 20063099464   GRIEVANCE LEVEL: 2nd

GRIEVANT'S STATEMENT CONTINUATION: PG. 2 OF 2

As, Anderson Has spoken with Dr. Pena R.M.D,
Dr. landsman H.M.D, and Dr. G Timothy Kelly MD
During visits with Them Quote, as all above. Has stated
The All confirm The Same answer (we ARE Not OK
Should I say Each Doctor, states) I am Not an
A.D.A Cordinator Nor Iam I In Compliance
with A.D.A Rules or FeDeral laws THat GOVERN
A.D.A Claims And Each Dr State They Cannot
And Will-Not Cross THat line. The Fact Remain
THat N.D.O.C ERRORS IN 1st level Response
as Stated By: B.Gutierrez Has Placed Anderson
In Imment Danger of Future SSI placement And
Deprived Anderson of Due Process Concerning A.D.A
Classifcation Quote B.Gutierrez Response They Will
Classify you as Needed But Not To The point You want For
your own Request. Fact. NDoc Doesn't Have an ADA Cordinator

Original:   Attached to Grievance
Pink:   Inmate's Copy

DOC-3097 (01/02)

Attachment # 3



2nd level

# NEVADA DEPARTMENT OF CORRECTIONS
## ADMINISTRATIVE CLAIM FORM

> **THIS FORM MUST BE COMPLETED PER NRS 41.036, 41.0322,
> 209.243 AND ADMINISTRATIVE REGULATION 740**

> **DO NOT SEND DIRECTLY TO ATTORNEY GENERAL'S OFFICE,
> BOARD OF EXAMINERS, OR DIRECTOR**

> This form is to be attached to your grievance form for any injuries or any other
> claim (except property) arising out of a tort alleged to have occurred during your
> incarceration as a result of an act or omission of the Department of Corrections or
> any of its agents, former officers, employees or contractors.

✗ ReMeDy SougHT ✗

The following information is necessary to fairly evaluate your claim. Please provide complete
information. If you need more space, attach a separate sheet of paper. You may submit
additional evidence if available. Such additional evidence will be returned.

CLAIM IN THE AMOUNT OF $500,000.00 is hereby made against the Department of
Corrections, based upon the following facts:

| 1. NAME OF CLAIMANT (Please print full name) | 2. I.D. # | 3. INSTITUTION |
|---|---|---|
| Anthony K Anderson | 1082999 | S. D. C C |
| 4. AMOUNT OF CLAIM | 5. DATE AND DAY OF OCCURRENCE | 6. TIME (a.m. or p.m.) |
| Five Hundred Thousand us Dollars | From Date of effective 5-15-18 until present | 200 P. M |
| 7. PLACE OF OCCURRENCE | Southern Desert Correction Center | |
| | Nevada Dept of Corrections | |

1-9-2019



Attachment # 3

8. Describe here, in complete detail, exactly how your claim loss or damage occurred and why you believe the institution is responsible or liable:

The Details of This Grievance art To EXTensive To State in The Small Space Provided on This Form SEE all levels of Grievance Informal 1st level 2nd level

9. Witnesses. Be sure to include any staff member who may have been involved in, or has any knowledge of, your alleged loss; also, list any inmate who has actual knowledge of facts pertinent to your claim:

Medical agents Employees And staff of The Nevada Department of Corrections as well as Administrative Agent Employees And staff of Nevada Department of Corrections AR 658, 658.01 658.02 658.03 658.04 658.05 658 Through AR 658.16 And Its Entirety INmates with Disability Act A.C.A 4th Edition Signed INTo Effect 5-15-18   4.4054 4-4055

10. Other pertinent information:

I Anthony d Anderson #1082979 Have Addictional Civil litigation IN process (that Related) To This xmatter And upon Further litigation will Be Incorporated To This matter Inmate' with A.D.A Act' AR 658



Attachment #3

STATE OF NEVADA )
) SS
COUNTY OF Clark )

I, Anthony Anderson do hereby swear under penalty of perjury that I am the claimant named above, that I have read the foregoing claim and know the contents thereof, that the same is true of my own knowledge, except those matters stated upon information and belief, and as to those matters, I believe them to be true, and that THIS IS MY ENTIRE CLAIM AGAINST THE STATE OF NEVADA/DEPARTMENT OF CORRECTIONS.

I FULLY UNDERSTAND THAT I WILL HAVE TO SIGN A GENERAL RELEASE OF ALL CLAIMS IN THE PRESENCE OF A NOTARY PUBLIC FOR THE EXACT AMOUNT I AM CLAIMING BEFORE ANY PAYMENT WILL BE OFFERED TO ME. THIS GENERAL RELEASE WILL BECOME EFFECTIVE ONLY UPON ACTUAL PAYMENT OF THE CLAIM BY THE STATE OF NEVADA.

DATED this 9th day of June, 2019

Signature of Claimant

**NOTICE**

NEVADA REVISED STATUTE 197.160 provides that every person who knowingly presents a false or fraudulent claim is guilty of a gross misdemeanor, and is subject to criminal penalties of imprisonment of up to one year, and a fine of up to $2,000.00.

DOC – 3095 (12/01)



Attachment #3





**State of Nevada**
**Department of Corrections**

*INMATE GRIEVANCE REPORT*

ISSUE ID#   20063069964                    ISSUE DATE:   08/09/2018

| INMATE NAME | NDOC # | TRANSACTION TYPE | ASSIGNED TO |
|---|---|---|---|
| ANDERSON, ANTHONY KENNETH | 1082999 | RTRN_L2 | MMINEV |

| LEVEL | TRANSACTION DATE | DAYS LEFT | FINDING | USER ID | STATUS |
|---|---|---|---|---|---|
| 2 | 03/18/2019 | | Denied | VAUSTIN | INACTIVE |

**INMATE COMPLAINT**

**OFFICIAL RESPONSE**

Denied
You were seen 9/28/2018 for your grievance request of ADA accommodations, and  again on 10/16/2018 by a Doctor. No changes were made to your medical classification and no documentation that it was determined that you have a disability.
You were seen again on 1/23/2019 by the Nurse practitioner who renewed pain medication IBU 800MG for your complaints of headache, knee pain / facial pain . Last kites submitted by you after these medica visits  are for dental and renewal of IBU. You have not stated what you think are your functional limitations are or what accommodations medically you need. You will be seen by a provider and be evaluated /examined . If it is determined your classification is incorrect then it will be changed and a reclassification of your medical restrictions will be completed.

Again N.D.O.C Avoids
Addressing A.D.A Federal
Accommodation under AR 658
This Response is again Not
What Grievance 20063069964
Addresses

SEE Andersons
Medical Files And
Progressive Notes
Vol #1 Vol #2 Vol #3 Vol #4

GRIEVANCE RESPONDER

Report Name: NVRIGR                                                      Page 1 of 5
Reference Name: NOTIS-RPT-OR-0217.4

Attachment #3



Exhibit # 15

A.S.A.P
Please. Respond

PRINT NAME _Anthony K Anderson_
(Also print name and ID# at bottom of form where indicated)

ID#: 1082999
DOB: 9 11 164

Institution: _Southern Dist WTN_ Date submitted: 2 22 1 2019

Signature: _K A. Anderson_

Medical: ☑   Dental: ☐   Mental Health: ☐   Nursing: ☐   Other: Wave have To H.D.S.P

Reason for request: (Describe below)

To whom it May Concern as of 2-19-19 I was Made Aware.
That my Needed Surgery For (Carpal Tunnel Syndrome.) In the
Right Hand was Approved at the Specalist level. I am Informing
N.D.O.C. S.D.C.C. That After This Surgery. I am Requesting To
Return To my assigned Unit #12 at S.D.C.C. which is Not a Hostile
Environment And I can Recover Safely I Wave any Recovery at H.D.S.P
And will Sign Waver,   DO NOT WRITE IN AREA BELOW   To Recover I S.D.C.

Response to request:

The schedule is based on priority of
needs & current waiting time. You are
on the reclassification list. Please wait
up to 6-8 Wks. Thank you.

☐ Appointment Schedule for: ___ / ___ / ___     Rescheduled for: ___ / ___ / ___
☐ No visit necessary
☐ No Show for Appointment
☐ Refused to be seen. DOC 2523-Release of Liability signed

**PRESCRIPTIONS**

☐ KOP     ☐ NON-KOP
☐ Order Date: ___ / ___ / ___

**PLAN**

☐ Follow-up appointment ___ / ___ / ___     ☐ Return if needed
☑ No follow-up required

Signature/Title of Provider _____     2 22 19
                                         Date

NEVADA DEPARTMENT OF CORRECTIONS

**MEDICAL KITE and/or
SERVICE REPORT**

NAME: _Anderson Anthony K_
      Last      First      MI

ID#: 1082999

Unit/Cell#: 12-1-4-D

_____ (3/18)

Attachment   # 4



Exhibit # 16

MOVED EXHibit
TO
CaVEal

---

## ITEMS TO BE PRODUCED

#1 NEVADA DEPT OF CORRECTION SOUTHERN DESERT C.T.N OFFICE AND location INFORMATION CONCERNING [A.D.A] MANDATED CERTIFIED [A.DA] CORDINATORS RECLASSIFICATIONS PROTOCOL CONCERNING NK 658 IN its ENTICITY

#2 [A.D.A.] FORMS MAINTAINED IN Anthony K ANDERSON #1082999 MEDICAL FILE STORED IN [S.D.C.C] MEDICAL DEPT RECORDS ROOM SIGNED AND FILLED OUT (9-11-2019) AND SIGNED BY A ONE EMPLOYEE DR HENRY-lands yon PREPARED BY A ONE EMPLOYEE "SONYA CARRILLO CHARGE NURSE" S.D.C.C

#3 "DR HENRY LANDSYAN" CERTIFIED NOTORIZED COPY OF "CURRICULUM VITAE" AND RESIDENCES WITH CERTIFICATION IN "INJURIOS DECORONOR" AND TREATMENT PROTOCOL ISSUED BY NEVADA MEDICAL BOARD PHYSICAINS AND SURGEONS DEPT.

#4 A "legal STAMP Filed" NOTORIZED COPY OF DR landsyans RE-APPLICATION OF ANY REMEDY CONCERNING RE-APPLICATION OF PHYSICIANS AND SURGEONS CERTIFICATE PURSUANT TO PROFESSIONS AND PROFESSIONS BUSINESS CODE SECTIONS 141 AND 2305 FOR THE SAME INCIDENT

#5 COPY OF landsyans NEVADA CERTIFICATE OF PHYSICAINS AND SURGEON CERT VALID FROM DATE OF HIRE UNTIL PRESENT

#6 A WRITTEN COPY OF N.D.O.C S.D.C.C. CLASSIFIED REASON OF "EMPLOYMENT TERMINATION" FROM [N.D.O.C] "2-19-2020" TERMINATED EMPLOYEE (HENRY K. LANDSYAN)

#7 A Full COMPLETE COPY OF ANDERSON #1082999 N.D.O.C MEDICAL FILE. Vol#1 Vol#2 Vol#3 Vol#4 IN ENTRITY MEDICAL AND MENTAL

Attachment # 5

EXHIBIT "A"
## NEVADA RULES OF CIVIL PROCEDURE

Rule 45

(c)   **Protection of Persons Subject to Subpoena.**

(1)   A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)   fails to allow reasonable time for compliance;

(ii)   requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)   subjects a person to undue burden.

(B) If a subpoena

(i)   requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)   requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party,

the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)   **Duties in Responding to Subpoena.**

(1)   A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)   When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

EXHIBIT "B"

## CERTIFICATE OF CUSTODIAN OF RECORDS

STATE OF NEVADA                )                    Case No.: _____
                                              ) ss.
COUNTY OF _____ )

      NOW COMES _____ *(name of custodian of records)*, who after first being duly sworn deposes and says:

      1.   That the deponent is the _____ *(position or title)* of _____ _____ *(name of employer)* and in his or her capacity as _____ _____ *(position or title)* is a custodian of the records of _____ _____ *(name of employer)*.

      2.   That _____ *(name of employer)* is licensed to do business as a _____ in the State of _____.

      3.   That on the _____ day of the month of _____ of the year _____, the deponent was served with a subpoena in connection with the above-entitled cause, calling for the production of records pertaining to _____ _____ _____

      4.   That the deponent has examined the original of those records and has made or caused to be made a true and exact copy of them and that the reproduction of them attached hereto is true and complete.

      5.   That the original of those records was made at or near the time of the act, event, condition, opinion or diagnosis recited therein by or from information transmitted by a person with knowledge, in the course of a regularly conducted activity of the deponent or _____ _____ *(name of employer)*.

Executed on: _____
             *(Date)*                 _____
                                             *(Signature of Custodian of Records)*

**SUBSCRIBED AND SWORN** to before me this
_____ day of _____, 20_____.

_____

**NOTARY PUBLIC** in and for the
County of _____, State of _____.

*Attachment #5*

AFFIRMATION
Pursuant to NRS 239B.030

The undersigned does hereby affirm that the preceding _____

_Notice of Subpoena_
(Title of Document)

filed in District Court Case number  A-19-795566-C

☑   Does not contain the social security number of any person.

-OR-

☐   Contains the social security number of a person as required by:

A.  A specific state or federal law, to wit:

_____
(State specific law)

-or-

B.  For the administration of a public program or for an application
for a federal or state grant.  O'Ren

Signature  _Anthony K. Anderson_          Date  12-21-2020

Print Name  _Anthony K. ANDERSON_

Title  _Pro SE_

PRINT NAME: _Anthony K Anderson_   ID#: _1082999_
(Also print name and ID# at bottom of form where indicated)   DOB: _4/1/64_

Institution: _SDCC_   Date submitted: _4/17_ RECEIVED   Signature: _AK Anderson_

Medical: ☑   Dental: ☐   Mental Health: ☐   Nursing: ☐ APR 17 2019 Other: ___

Reason for request: (Describe below)

To whom it may concern I was Informed 4-17-19
By SDCC Medical Dept. That I must be Able
To fill out the requested A.D.A
forms at this time. Friday is the requested
day with-out an A.D.A Coordinator

### DO NOT WRITE IN AREA BELOW

Response to request:

You have been placed on nursing sick call.
Please wait, as schedule is permitted by
priority of request/situation and order.
Thank you.

☐ Appointment Schedule for: ___/___/___   Rescheduled for: ___/___/___
☐ No visit necessary
☐ No Show for Appointment
☐ Refused to be seen. DOC 2523-Release of Liability signed

### PRESCRIPTIONS

☐ KOP   ☐ NON-KOP
☐ Order Date: ___/___/___

### PLAN

☐ Follow-up appointment ___/___/___   ☐ Return if needed
☐ No follow-up required

Signature/Title of Provider   Date _4/17/19_

NEVADA DEPARTMENT OF CORRECTIONS

## MEDICAL KITE and/or
## SERVICE REPORT

NAME: _Anderson_ _Anthony_ _K_
        Last    First    MI
ID#: _1082999_
#: _12-A-4-D_

DOC 2500 (03/19)

Attachment #6

Exhibit # 25



# Cover Sheet

# Begin Claim # 2

**CLAIM 2**

The following civil rights have been violated: 8th Amendment Cruke and unusal Punishment UNDO Pain AND suffering as a result of Medical Mal-Practice From 2013 until Present Day

Supporting Facts: [Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be sure you describe exactly what each specific defendant (by name) did to violate your rights].

Starting Date was (October 13th 2013) NEVADA Dept. of Corrections Southern Desert C.T.N. Medical Department under The control of Then Warden Brain williams And Then Medical Doctor Romeo Aranas. Which DR Aranas was The Senoir Doctor IN Charge of Plaintiffs Illness During Medical Discovery of Plaintiffs Ill-Ness as DR Aranas was also IN control of Plaintiff's Medications And Diagnostical Engine Concerning Plaintiffs Problems And serving To Distinquish or Identify yielding a Diagnossis ON Precription Treat Medicinally To Impregnate with a MEDICINal Substance To Prevent Alleviation, ON Cure of Disease. Anderson state's under The Color of law, with Good cause Shown [N.D.O.C.] [S.D.C.C] Had Complete Knowlege of His Ill-Ness / Condiction After Surgery in 2013 And From Oct 13, 2013 until The Summer of 2017 THEir where No Medications Precribed

18

Claim #2

N.D.O.C was Already In violation of Neglect And Delay with a Denial. Of Adquet And Timly Health Care with Dr Romeo Aranas Decisions Not To Prescribe any Medications To Banish, cure or Hold Andersons Ill-Ness at Bay Totally In opposition of The Surgen whom performed Andersons Surgery Dr Philp S. Schlager. Yes From . . . . October 13th 2013 until Mid Summer 2017 Anderson Recieved Nothing To stop The Tumor Return Causing Anderson To lose "Consciousness" Not once But Twice as Anderson Medical Records Reflect. when The knot Returned Dr Romeo Aranas Stated its Nothing only Scare Tissue. Which was "Error" THis Said Scare Tissue, Now Caused a Propley Anderson Didn't Have, Before Hearing Damage To His Right Ear Due To Internal Ear canal Damage THats Unrepairable which again Dr Aranas states This Damage is Due To Constant swelling of The Ear Canal. THis Undo Pain And Suffering was caused By 4½ years of Delay And Denial of any Medications

Now (5) Five Years later In The year of On or About "2017" Mid Summer under Color of law [N.D.O.C] [S.D.C.C] Assigned a ONE To wit said Doctor Mr Henry landsyan Assigned under Color of law By (Dir Dzurenda) And Worden (Jerry Howell). 19

Claim # 2

as Senior Doctor over Anderson's Medical Case,
with [S.D.C.C] Medical unit as Mr Landsman operative
office for Contact with Anderson In which Mr landsman
Is two was a "Medical usurper" Not Having
A valid Medical Physician and surgens Certificate
To Pursue, Pursuant To Businee and Profession
Code Sections 141 and 2305 See: Henry landsman
Vs. Medical Board of Colifornia, United states District
Court For District of Nevada 2016 us Dist lexus
86074 Case No 2:15-cv-1490-JCM (NJK) on
- September 24th 2013 - The Medical Board Prohibited
Henry landsman Trom Practicing Medicine. and
revolted Surgeons certificate on - July 29th 2013 -
See: Also Board of Medical examiners, State of
Nevada Case # 11-5951-1 A Seperate Issue Not
relayted To The Above Case But a Pattern of
Mal-Practice -- The record reflects on 2-19-2020
Mr landsman was Terminated By N.D.O.C. After
Andersons Discover and Grievence For Medical Mal-practice
Concerning landsman. With-out landsman stisfying
His earlier License revolktation In The State
of California use's The State of Nevada as
"Trash Can" with Anderson as His "Dump site"
with-out Knowlege That Nevada is an Improper
Venue. So landsman Attempts To Defy His
revolktion By using [N.D.O.C]

Claim #2

As an, Sheild To Protect landsman From
exposure, of a Revolked license as Landsman
Find's a loop-Hole in The [N.D.O.C. Hiring
Backgraund Check For Doctors. [N.D.O.C] Must
understan Theres No Immunity Concerning
"Fraud" By And Through Medical Mal-practice, And
or usurpation - Landsman Must Frist satisfiy
California's Revolkation Before Appling or working
In Nevada with "BAD PaPER work" - Here
[N.D.O.C] [S.D.C.C] Placed Anderson In
Imment Danger of life And limb as They DiD
Not Follow any license Re-Issue Protocal As landsman
cannot Acqure a medical lic IN california. ANO Theres
No eviDence That Landsman HaD Possion of
any valiD Medical lic Nor DiD landsman Defect
The Revocation of His MeDical Certificate.
IN California But with More Than 3 Medical Mal practice
Separate Issues even in Nevada a Re-Issue is
Imposable.

Here Anderson Also Complaints of Medical
Mal-practice Concerning His Landsman Upon
Landsmens Medical Order 2017 PreDisone
IN which PreDison is a Short Term
Steroids (R) Not Recommended For long Term
Use. Here landsman Ups Anderson Dose

21

Claim #2

From 5mg To 20 mg after long Tery use
Anderson's Ill-ness No longer reacts - which This
Stronger Dose Caused UNRepairable Reproductive
System Damage For life  #1 Massive Size loss
#2 No excitement or stormaletion IN Reproductive Organ
IN - which Plaintiff DiD Not suffer until The
(3) Third year of steroids  of The (5) Five years
Plaintiff Has Been Prescribed Predison, Plaintiff Also
Informed [NDOC] That Predison No longer works
which N.D.O.C. Medical Staff That Predison no
longer works; still N.O.O.C won't offer Anderson
any other Drug, May The Records Reflect The Drug
Predison only Holds The EFFects of The Ill-ness
at Bay NEVER Addressing THE Root of The
Cause!!

Anderson Now Suffers MEDica Issue's
He DiDnt suffer Before as a Result of Mr landsyan
MEDical Mal Practice  Due To Continued long
Tery use of a Short TERM Drug. The Record
reflects Mr Henry landsmans un-Authorized Increed
Predison Dosage From 5MG To 20 MG
Without DR Kellys Authorization. DR Kelly
Was Totally against Mr Landsmans Increeded
Dosage.

22

Claim # 2

Dr Kelly The Specalist In My Ill-Ness Explained During my last Visit That 20 MG of Predison is Not Recommended And Orders Landsyan To Reduce The Dosage Back To 5MG

The Following Shows Mr landsyan Medical Mal-Practice Caused Anderson, To Be Placed in Imment Danger of life And limb Wonton Infliction of endo pain Mental Injury Further Phsical Injury usurpation with a Delibrate Indifference

FinDings of Fact

Landsyan placed Anderson In Imment Danger of Internal Body Parts And Perminate External Organ Damages To Anderson Reperductive System With Delay And Denial of any other Drug To Banish or Attack Andersons Kimuras Diesease N.D.O.C. Waited 4½ years Before Administrating any Medication Forcing Anderson To Under-Go endo pain And Suffering After The Biospy of October 13 2013 O Found Kimuras Diesabe Andersons Neck Swelling was so Advanced as a Result of N.D.O.C. Bias And Pre Judiced Negligence To Andersons Diesase

23

Claim # 2

"DRUG INFORMATION" Corticosteroids Prednison Is The Strongest Drugs Availble For ONLY Reducing Inflammat in The "Body" They are use-Ful IN convictions in condidiction which inflammation occurs Including Rheumatroo Arthritis

Predison is only used To clear Inflammation Not To Banish The Root of The cause Nor as a life Time Treatment For The Cause of The Illness ANDERSON was placed on Predison (June OF 2017) Thats 4½ years OF Steroid Usage with Very Harmful Irreversable Damages That ANDERSON was Not Effected By Before long Term Predison use was ordered which Predison Is Best effective Short Term THIS DRUG is Very Harmful with continued use ...!

long Term use OF Prednison Tend To Become less effective over-Time which long Term use Has lead To Dangerus Side Effects in And ON ANDERSONS Body Involving Every Orgen in-cluding The largest organ ANDERSON Skin which Has Been Strected And Inlarged To Suit a 87 pound Growth Consequently Doctors Reserve Predison (corticosteroids) For Short Term Last Resort use (5) years is Not Short Term Argues ANDERSON

Claim #2

Continued Predison use   Has Caused ANDERSON
To Suffer

#1  Reproductive System Disorders
No Stem Massive Size loss
#2  Diabetes Medication
METFORMIN
#3  Damage To The Adrenal Glands

#4  THINNING SKIN
#5  Snores That Don't Heal
#6  Blood in Stool
#7  MOON Face
#8  Knee Joint Damage
#9  Heart Damage Right EEF
#10  Poor Wound Healing
#11  loss of Calcium From Bones
#12  Ninty Pound Wieght Gain
#13  Serious Mental Disorder

Predison long Term use Has Immuno suppressive
Serious Life long Side effects ANDERSON
Now Suffers The Above Mentioned IN
which ANDERSON Did Not Suffer any
Of The Above Before Continued predison
use Due To Medical Mal-practice

25

Claim #2

Page #25 Is The END OF Claim #2
SEE Attachment Supporting Frame work

Attachment # A
Dr Kelly Concern incress Dosage (By landsyan
Side effects
Attachment # B
Prescription labels Landsyan Incress Dosage
20 MG
Attachment # C
Request Slip Informing N.O.O.C predison
No longer works
Attachment # D
Request Informing N.O.O.C Yabe problem
And Continued Knee Swelling
Attachment # E
Request Report Headacks Numbness
low testerone level
Attachment # F
Request Report Informing N.O.O.C
Predison is not as Effective right Ear
problems
Attachment # G
Request Report
Request New Drug

26

Claim # 2

Attachment # H
    Henry landsmans Revolcation OF
    Medical lic Case# 2:15-CV-1470 JCM (NJK)
    HarD Copy
Attachment # I
    Henry landsman charges Complaint NEVADA
    Medical Board  HarD Copy  # 11-5951-1
Attachment # J
    HarD Copy  Henry lands Man V
    Medical Bond OF California
Attachment # K
    Grievence Concerning  Landsmans Determination
Attachment # L
    Grievence Harmful Side Effect OF Predison
Attachment # M
    Grievence Explaining I Never
Refused To see a Doctor
Attachment # N
    Request Report Requesting Conformation
Attachment # O
    Request Report Predison No longer works
NEED New Prescription
Attachment # P
    Medical Examiners Report And Complaint
3RD Issue with Henry landsman

27

**G. TIMOTHY KELLY, M.D**
Board Certified Rheumatology
Fellow, American College of Rheumatology

7200 Cathedral Rock Drive, Suite 110
Las Vegas, NV 89128
(702) 341-5444
(702) 341-5445

June 29, 2020

Mr Anthony Anderson,
#1082999
Southern Desert GTN

Dear Mr Anderson,

I am in receipt of your letter dated June 17, 2020 concerning Your Kimura disease diagnosis. You certainly may be having side effects from the steroids used to treat your disorder.  In particular you mention urinating 12 times a nite.
As we have discussed in the past, the prednisone is best minimized.  If a person takes more than 5 mg day of prednisone, undesirable side effects can occur.
Due in particular to your frequent night time urination, I believe you need to be evaluated for possibly having diabetes.

I  am sending a copy of your June 17 letter to medical. They also are being a copy of this letter. Your prednisone dose should be no more than 5 mg day. I strongly suggest you see medical for a diabetes evaluation.  I will be pleased to see you in the future at my office as circumstances allow.

Thank you.

GT Kelly, MD
cc:  Department of corrections SD  infirmary GTN

Claim#e
Attachment A

## Certified Mail Return Receipt

**COMPLETE THIS SECTION**

te items 1, 2, and 3.
ur name and address on the reverse
we can return the card to you.
this card to the back of the mailpiece,
or on the front if space permits.

1. Article Addressed to:

DR Timothy Kelli
7200 CATHEDRAL Driue SouN
Suite #110
Las Vegas NEV

9590 9402 3483 7275 7826

2. Article Number *(Transfer from service label)*

7019 0700 0001 6423 7427

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Sheri Ammeo    ☐ Agent
☐ Addressee
B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from Item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail
☐ Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

### STATE OF NEVADA
### DEPARTMENT OF CORRECTIONS
### INMATE ACCOUNT TRANSACTION
### REQUEST

Date: June 11, 2020          No. 2468105

To: Inmate services

I hereby authorize my account to be charged in the amount
of $ 9.50    Nine and 50/100    Dollars).

Please pay to:    NVDOC

Signature: Anthony D Anderson

Print name: Anthony D. Anderson

ID No. 1032799    Institution: SDCC

Approved by...............................................

| Transfer | Purchase Order | Postage | Other |
|----------|----------------|---------|-------|
|          |                | 3       |       |

White — Inmate Services
Canary — Institution Copy
Pink — Inmate

DOC 509 (Rev.2/06)

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®

**OFFICIAL USE**

Certified Mail Fee  6.40
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)      $
☐ Return Receipt (electronic)    $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required       $
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage  .70
$
Total Postage and Fees  7.10
$
Sent To  DR Timothy Kellin
Street and Apt. No., or PO Box No. 7200 Cathedral Rock Drive
City, State, ZIP+4® Las Vegas NV 89128

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

Claim #2
mail
Attachment A



G. TIMOTHY KELLY, M.D.
7200 Cathedral Rock Dr #110
Las Vegas, NV 89128

VII-B-3-E

LAS VEGAS NV 890

02 JUL 2020 PM 4 L

Mr Anthony Anderson #1082999
Southern Desert Correctional Center
PO Box 208
Indian Springs NV 89078

-89070

SOUTHERN DESERT
CORRECTIONAL CENTER

JUL 06 2020

INCOMING MAIL

claim #2

Attachment # A

36

CAUTION: Federal law PROHIBITS the transfer of this drug to any person other than the patient for whom it was prescribed.

NEVADA DEPT OF CORRECTIONS
3955 W. RUSSELL RD
LAS VEGAS , NV 89118                         **KOP**

Rx #: 325186              AUGUSTINE, T MD   4/8/2020

**ANDERSON, ANTHONY**
SDCC U12 A 4 D 0001082999              RPh/Tech: KLC/KLC
TAKE 2 TABLET(S) EVERY
DAY AS NEEDED FOR
HEADACHE

**QTY: 40 ACETAMIN/ASA/CAFFEINE PLU**
THIS MEDICATION IS A WHITE, ROUND, TABLET, FILM-COATED IMPRINTED WITH
                                    Mfg: MAJOR PHARMACEUTICALS
NDC:00904-5135-59         Exp: 04/08/21
1 Refills by: 06/08/20    This RX may not be transferred.

---

CAUTION: Federal law PROHIBITS the transfer of this drug to any person other than the patient for whom it was prescribed.

NEVADA DEPT OF CORRECTIONS
3955 W. RUSSELL RD
LAS VEGAS , NV 89118                         **KOP**

Rx #: 325186              AUGUSTINE, T MD   3/12/2020

**ANDERSON, ANTHONY**
SDCC U12 A 4 D 0001082999              RPh/Tech: KK/KK
TAKE 2 TABLET(S) EVERY
DAY AS NEEDED FOR
HEADACHE

**QTY: 40 ACETAMIN/ASA/CAFFEINE PLU**
THIS MEDICATION IS A WHITE, ROUND, TABLET, FILM-COATED IMPRINTED WITH
                                    Mfg: MAJOR PHARMACEUTICALS
NDC:00904-5135-59         Exp: 03/12/21
2 Refills by: 05/08/20    This RX may not be transferred.

---

CAUTION: Federal law PROHIBITS the transfer of this drug to any person other than the patient for whom it was prescribed.

NEVADA DEPT OF CORRECTIONS
3955 W. RUSSELL RD
LAS VEGAS , NV 89118                         **KOP**

Rx #: 325188              AUGUSTINE, T MD   5/6/2020

**ANDERSON, ANTHONY**
SDCC U11 B 2 E 0001082999              RPh/Tech: LF
TAKE 2 TABLET(S) EVERY
DAY AS NEEDED FOR
HEADACHE

**QTY: 40 ACETAMIN/ASA/CAFFEINE PLU**
THIS MEDICATION IS A WHITE, ROUND, TABLET, FILM-COATED IMPRINTED WITH
                                    Mfg: MAJOR PHARMACEUTICALS
NDC:00904-5135-59         Exp: 05/06/21
5 Refills by: 08/08/20    This RX may not be transferred.

---

CAUTION: Federal law PROHIBITS the transfer of this drug to any person other than the patient for whom it was prescribed.

NEVADA DEPT OF CORRECTIONS
3955 W. RUSSELL RD
LAS VEGAS , NV 89118                         **KOP**

Rx #: 342853              AUGUSTINE, T MD   6/8/2020

**ANDERSON, ANTHONY**
SDCC U11 B 2 E 0001082999              RPh/Tech: LF/LF
TAKE 2 TABLET(S) EVERY
DAY AS NEEDED FOR
HEADACHE

**QTY: 40 ACETAMIN/ASA/CAFFEINE PLU**
THIS MEDICATION IS A WHITE, ROUND, TABLET, FILM-COATED IMPRINTED WITH
                                    Mfg: MAJOR PHARMACEUTICALS
NDC:00904-5135-59         Exp: 06/08/21
2 Refills by: 08/19/20    This RX may not be transferred.

---

Take This Medicine Before A Meal Or
As Directed By Your Doctor.

Rx #: 291582

---

LANDSMAN, H MD   2/4/2020              RPh/Tech: KLC/KLC

**ANDERSON, ANTHONY**
SDCC U12 A 4 D 0001082999
LAS VEGAS , NV 89118
TAKE 2 CAPSULE(S)
(40MG) EVERY DAY

**QTY: 60 OMEPRAZOLE 20MGCAP**
                        Mfg: GLENMARK PHARMACEUTIC
NDC:68462-0396-10
2 Refills by: 04/12/20   This RX may not be transferred.

---

LANDSMAN, H MD   4/8/2020              **KOP**

**ANDERSON, ANTHONY**
SDCC U12 A 4 D 0001082999
LAS VEGAS , NV 89118
TAKE ONE
TABLET(S) EVERY
DAY

**QTY:130 PREDNISONE 20MGTAB**
                        Mfg: CADISTA
NDC:59746-0175-09
4 Refills by: 07/28/20   This RX may not be transferred.

---

*Handwritten annotations:*

Pain Med

Dr Landsman
Illegally
upped
steroid
Dozage
By 15% Precent
4-8-2020 - How landsman?

Was Terminated (2-19-2020)
He was no longer Employed
By N.D.O.C on 4-8-2020

Fraud
Medical Prescription
Attachment #B





15% Increase Against Dr Kellys
Prescription of 5mg Kelly Is The
Rheumatogist

[Dr. Landsman]
Incress Dosage
10-1-19
from 5mg To 20 Mg
Causing Reproductive Organ Damage
Illegally
upped Steroid
Dosage
against Rheumatogist Prescription
(Dr. Kelly)

Attachment # B
front AND Back



COPY

SIGNATURE: _Mr. Anthony K Anderson_                       ID# _1082999_
(Also print name and ID# at bottom of form where indicated)

Institution: _S.D.C.C._   Date submitted: _5 / 20 / 2020_   Unit/House: _11-B-2-E._

Medical: [✓]   Dental: [ ]   Mental Health: [ ]   Nursing: [ ]   Other: _____

Reason for request: (Describe below)

#1 I Need a New DRUG Prednison No longer works at keeping swelling Down And Inflourmation at Bay. Also. 0 joint Pain And Swores that Don't Heel

---

### DO NOT WRITE IN AREA BELOW

Response to request:

---

| | |
|---|---|
| [ ] Appointment Schedule for: ___ / ___ / ___ | Rescheduled for: ___ / ___ |
| [ ] No visit necessary | |
| [ ] No Show for Appointment | RECEIVED May 21 2020 |
| [ ] Refused to be seen. DOC 2523-Release of Liability signed | By |

### PRESCRIPTIONS

[ ] KOP     [ ] NON-KOP

[ ] Order Date: ___ / ___ / ___

### PLAN

[ ] Follow-up appointment ___ / ___        [ ] Return if needed

[ ] No follow-up required

_Signature/Title of Provider_                       _5 / 21 / 2020_
                                                     Date

---

NEVADA DEPARTMENT OF CORRECTIONS

**MEDICAL KITE and/or
SERVICE REPORT**

NAME: _Anderson Anthony K_
        Last        First        MI

ID# _1082999_

DOC 2500 (06/11)

Attachment # C

NAME _Anthony R Anderson_   ID# _1082999_   Unit/Cell#: _11-B-2-B_

FACILITY _S.D.C.C_   DATE _5-20-2020_   SIGNATURE _Anthony R Anderson_

**Request**

#2 Knee Swollen more Than Normal
Need prescription For Pain
Test. 11.20

Need Doctor Exam Male Problem
12 Time a Night Restroom

---

## INMATES - DO NOT WRITE IN AREA BELOW

### ASSIGNED TO:

☐ Medical    ☐ Dental    ☐ Psychiatry    ☐ Nursing    ☐ Other _____

**Response to request**

You have been placed on nursing sick call. Please wait, as schedule is permitted by priority of request/situation and order. Thank you.

☐ Appointment scheduled/rescheduled for: _____
☐ No visit necessary
☐ No show for appointment
☐ Refused to be seen. DOC 2523 Release of Liability signed

RECEIVED
MAY 2 1 2020
BY: _____

### PRESCRIPTIONS

☐ KOP    ☐ NON-KOP
☐ Order date _____

### PLAN

☐ Follow-up appointment _____    ☐ Return if needed
☐ No follow-up required

Signature of practitioner/responder _____    Date _5/21/2020_

---

### NEVADA DEPARTMENT OF CORRECTIONS
## MEDICAL KITE and SERVICE REPORT

DOC 2600 (03/20)

1082999                                        Attachment #D

(Page #1

PRINT NAME: _Anthony K. Anderson_          ID#: _1082999_
(Also print name and ID# at bottom of form where indicated)          DOB: _9   11   164_

Institution: _S.D.C.C_          Date submitted: _12 | 16 | 2019_          Signature: _A Anderson_

Medical: ☑   Dental: ☐   Mental Health: ☐   Nursing: ☐   Other: _Expert Opinion_
_A.S.A.P_

Reason for request: (Describe below)

_For the last 3 weeks its Been To cold To with-out out Side or in_
_The Gym. Additionally I No longER Play Drums For The Chaple, These_
_Activities deal with The Release of "TestosTerone" in The Body_
_I Have Noticed The Return of Intense headAches And x10 Frequent_
_Numbness To The Right Side of My Face Including Swelling Much_
_Greater Then BeFore. Noticing These Facts I am Requesting_
_My Tolbalizy And TestosTerone levels To [illegible]_

— DO NOT WRITE IN AREA BELOW —

Response to request:

The medical schedule is based on priority of
needs & current waiting time. You will be
seen in approximately 6-9 wks. If your
condition worsens, please submit a kite for
nursing sick call. Thank you.

☐ Appointment Schedule for: ___/___/___          Rescheduled for: ___/___/___
☐ No visit necessary
☐ No Show for Appointment
☐ Refused to be seen.  DOC 2523-Release of Liability signed

**PRESCRIPTIONS**

☐ KOP    ☐ NON-KOP
☐ Order Date: ___/___/___

RECEIVED
DEC 1 3 2019
BY [illegible]

**PLAN**

☐ Follow-up appointment ___/___/___          ☐ Return if needed
☐ No follow-up required

_12, 16 19_

Signature/Title of Provider          Date

NEVADA DEPARTMENT OF CORRECTIONS

**MEDICAL KITE and/or**
[redacted]

NAME: _Anderson Anthony K._
      Last      First      MI
ID#: _1082999_
Unit/Cell#: _12-A-4-D_

DOC 2500 (03/18)

Attachment #E

*Predisone Not Working any More*

**PRINT NAME:** MZ Anthony K Anderson
(Also print name and ID# at bottom of form where indicated)

**ID#:** 1082999
**DOB:** 9/1/64

**Institution:** SDCC    **Date submitted:** / /    **Signature:** q Anders

**Medical:** [✓]    **Dental:** [ ]    **Mental Health:** [ ]    **Nursing:** [ ]    **Other:** Prescription

**Reason for request:** (Describe below)

To Dr. & kelli Prednisone use Not as effective as it once was. 5Mg Dosage Not Accurate. lotally Pain in Ear and right side of face. His Treatment Greater. Then Before 10 Mg Dose Has Been More effective. Note Constite Facial Irritation And Numbness started last month Prednisone Not working. Prednisone Not working

**DO NOT WRITE IN AREA BELOW**

**Response to request:**

The medical schedule is based on priority of needs & current waiting time. You will be seen in approximately 6-9 wks. If your condition worsens, please submit a kite for nursing sick call. Thank you.

[ ] Appointment Schedule for: / /    Rescheduled for: / /
[ ] No visit necessary
[ ] No Show for Appointment
[ ] Refused to be seen. DOC 2523-Release of Liability signed

**PRESCRIPTIONS**

[ ] KOP    [ ] NON-KOP
[ ] Order Date: / /

**PLAN**

[ ] Follow-up appointment / /    [ ] Return if needed
[ ] No follow-up required

**Signature/Title of Provider**    **Date** 4/4/19

**NEVADA DEPARTMENT OF CORRECTIONS**

**MEDICAL KITE and/or SERVICE REPORT**

**NAME:** Anderson Anthony K
Last    First    MI
**ID#:** 1082999
**Unit/Cell#:** 12-A-4-D

DOC 2500 (03/18)

*Atachment # F*

(left margin: A.S.A.P No Time To wait weeg "To see Dr)

③

N.D.O.C. Refuse To Follow
Doctors ORDERS And Prescriptions
For Supplement

NAME Anthony K Anderson   ID# 1082999   Unit/Cell#: 11-B-2-N
FACILITY S.D.C.C.   DATE 9-23-2020   SIGNATURE AK Anderson

**Request**

3) He also Prescribed a New Drug To Keep Down
Sugar level And Help speed up Metabolism To
stop/slow Down weight Gain #4) He Renewed My Pain
Medication For Body Pain (ACEtaylin) #5) Renewed
DHE Plaizole 200 mg. Please Confirey when will
These New Meds Start   I await Your Response.

**INMATES - DO NOT WRITE IN AREA BELOW**

**ASSIGNED TO**

☐ Medical   ☐ Dental   ☐ Psychiatry   ☐ Nursing   ☐ Other _____

**Response to request**

This New DRug was
Never allowed Nor
Discussed The Reason For
Denial And I NEVER Seen
a Doctor For These Issues
After Denial By N.D.O.C   RECEIVED

☐ Appointment scheduled/rescheduled for: _____
☐ No visit necessary
☐ No show for appointment   BY: ___
☐ Refused to be seen. DOC 2523 Release of Liability signed

**PRESCRIPTIONS**

☑ KOP   ☐ NON-KOP
☑ Order date 9/29/2020

**PLAN**

☐ Follow-up appointment _____   ☐ Return if needed
☐ No follow-up required

_____ RN                    9/29/2020
Signature of practitioner/responder          Date

NEVADA DEPARTMENT OF CORRECTIONS
**MEDICAL KITE and SERVICE REPORT**        Attachment # G

↑
Delayed until
12-10-2020

ID# 1082999

DOC 2500 (03/20)

**HENRY LANDSMAN, Plaintiff(s), v. MEDICAL BOARD OF CALIFORNIA, Defendant(s).**
**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA**
**2016 U.S. Dist. LEXIS 86074**
**Case No. 2:15-CV-1470 JCM (NJK)**
**July 1, 2016, Decided**
**July 1, 2016, Filed**

**Editorial Information: Prior History**

Landsman v. Medical Bd. of Cal., 2015 U.S. Dist. LEXIS 162895 (D. Nev., Dec. 3, 2015)

**Counsel**          {2016 U.S. Dist. LEXIS 1}Henry Landsman, Plaintiff, Pro se, Las Vegas, NV.

For Medical Board of California, Defendant: Greg Chambers, LEAD ATTORNEY, PRO HAC VICE, California Attorney General's Office, San Francisco, CA; Peter Kevin Keegan, Nevada Attorney General's Office, Carson City, NV.

**Judges:** James C. Mahan, UNITED STATES DISTRICT JUDGE.

**Opinion**

**Opinion by:**          James C. Mahan

**Opinion**

ORDER

Presently before the court is defendant Medical Board of California's motion to dismiss for lack of personal jurisdiction. (ECF No. 12). *Pro se* plaintiff Henry Landsman filed a response. (ECF No. 19). Defendant filed a reply. (ECF No. 20).

**I. Background**

Plaintiff is a doctor who received his physician's and surgeon's certificates by the medical board on or about April 13, 1981. On January 8, 2008, the United States Army restricted plaintiff's clinical privileges at Weed Army Community Hospital located in Fort Irwin, California, because he failed to call immediately an on-call specialist for a patient with a broken wrist. (ECF No. 1, 13 at 4-5). Plaintiff requested an appeal on or about March 6, 2008. A hearing was conducted in front of seven physicians, one nurse, and one psychologist. Plaintiff's appeal was denied after the hearing. (ECF No. 13).

On December 2, 2011, {2016 U.S. Dist. LEXIS 2} the medical board attempted to revoke plaintiff's California physician's and surgeon's certificates, pursuant to Business and Professions Code sections 141 and 2305, for the same incident. (ECF No. 13) (ECF No. 1 at 4-5). However, the revocation was stayed, and plaintiff was placed on five years probation. (ECF No. 13). On September 24, 2012, the medical board prohibited plaintiff from practicing medicine in the state of California due to a violation

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Attachment # H

Furthermore, {2016 U.S. Dist. LEXIS 5} plaintiff cannot demonstrate specific jurisdiction over defendant because none of plaintiff's allegations arise from actions committed in the forum state nor is there any evidence that it ever purposefully availed itself of the laws of Nevada. (ECF No. 12).

Defendant notes that there are numerous other reasons as to why plaintiff is not entitled to the relief sought, including (1) Nevada is an improper venue; (2) the defendant has sovereign immunity; and (3) the court may not grant the requested relief because under the *Burford* doctrine licensing of medical professionals falls within the police power of the state.

Plaintiff argues that jurisdiction in Nevada is appropriate because, "[c]ountless individuals have gone to Federal Court to seek redress of grievances against improper loss of property by a state since 1868." (ECF No. 19). Plaintiff asserts that the "Supremacy Clause" is controlling on federal courts. Plaintiff also states the revocation of his certificates will make it very difficult for him to obtain a job in Nevada. Finally, plaintiff argues that jurisdiction is appropriate in this case because he resides in Nevada, and he has acquired a Nevada medical license.

"[P]ersonal jurisdiction . . . is an essential element{2016 U.S. Dist. LEXIS 6} of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999) (citations omitted). Thus, the court will first decide whether plaintiff satisfied his burden of proving that personal jurisdiction is warranted in this case.

*a. General Jurisdiction*

Plaintiff has not alleged any facts that demonstrate minimum contacts between the defendant and the state of Nevada. In order for the court to assert general jurisdiction over a defendant, the defendant must engage in "continuous and systematic general business contacts that approximate physical presence in the forum state." *Schwarzenegger*, 374 F.3d at 801. "This is an exacting standard . . . because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Id.*

In this case, defendant is a California agency that was authorized, by the California legislature, to exercise disciplinary authority against actions substantially related to the regulatory practice of California medical licenses. Plaintiff does not dispute the fact that defendant is an agency of the state of California, nor does he put forth any allegations that defendant{2016 U.S. Dist. LEXIS 7} exercised its authority outside the borders of the state of California. Therefore, the plaintiff failed to demonstrate that this court has general jurisdiction over the defendant.

*b. Specific Jurisdiction*

If a court lacks general jurisdiction over a defendant, it can still hear the case if specific jurisdiction is applicable. In order for specific jurisdiction to exist, the defendant must (1) purposefully direct its activities at the forum state or resident thereof; (2) the claim must arise out the forum; and (3) the exercise of jurisdiction must not violate notions of fair play and substantial justice. *Schwarzenegger*, 374 F.3d at 802. The burden is on the plaintiff to satisfy the first two prongs of the test. *Id.* Thereafter, the burden shifts to the defendant to prove that exercising jurisdiction would violate notions of fair play and substantial justice. *Id.*

To establish purposeful availment, plaintiff must allege that defendant purposefully conducted activities in the forum state or purposefully directed its activities at the forum state. Plaintiff's alleges that the California Superior Court and the California Appellate Court's decisions rejecting plaintiff's claims were wrongly decided. However, none of these{2016 U.S. Dist. LEXIS 8} allegations have any nexus with the forum state. Plaintiff does not allege that defendant performed any activity in Nevada or

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*3*



Attachment # H

## BEFORE THE BOARD OF MEDICAL EXAMINERS
## OF THE STATE OF NEVADA
### * * * *

| | |
|---|---|
| In the Matter of Charges and | )     Case No. 11-5951-1 |
| Complaint Against | ) |
| | )     **FILED** |
| HENRY LANDSMAN, M.D., | ) |
| | )     DEC 3 0 2011 |
| Respondent. | )     NEVADA STATE BOARD OF |
| | )     MEDICAL EXAMINERS |
| |      By: _____ |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

The above-entitled matter came on regularly for decision before the Nevada State Board of Medical Examiners, hereinafter "Board," on Friday, December 2, 2011, at the Board's offices located at 1105 Terminal Way, Suite 301, Reno, Nevada, and by video conference at the offices of the Nevada State Board of Medical Examiners/Dental Examiners located at 6010 S. Rainbow Boulevard, Building A, Suite 1, Las Vegas, Nevada, on the Complaint filed herein against, Respondent Henry Landsman, M.D., hereinafter "Respondent."

The members of the Board participating in the decision were: Benjamin J. Rodriguez, M.D., Beverly A. Neyland, M.D., Michael J. Fischer, M.D., Ms. Donna A. Ruthe, and Mrs. Sue Lowden. Harry B. Ward, Esq., Deputy Attorney General, acted as legal counsel to the Board.

The Board, having received and read the Complaint and exhibits admitted in the matter, as well as the Synopsis of Record prepared by the Hearing Officer who presided over the hearing and the transcript of the hearing, proceeded to make a decision pursuant to the provisions of NRS chapters 233B and 630.

///

///

1

Attachment I

## VI.

If any of the foregoing Findings of Fact is more properly deemed a Conclusion of Law, it may be so construed.

## CONCLUSIONS OF LAW

### I.

The Board has jurisdiction over Respondent.

### II.

Respondent was properly served with notice of the hearing via certified mail at the address on file with the Board pursuant to NRS and NAC chapters 630 and NRS chapter 233B.

### III.

The Board concludes that Respondent has violated NRS 630.301(4) as described above, and accordingly is subject to discipline pursuant to NRS 630.352.

### IV.

If any of the foregoing Conclusions of Law is more properly deemed a Finding of Fact, it may be so construed.

## ORDER

Based upon the foregoing Findings of Fact and Conclusions of Law, and good cause appearing therefore,

IT IS HEREBY ORDERED that:

1.      Respondent shall be issued a public reprimand.

2.      Respondent shall complete six (6) hours of AMA Category I continuing education credits on the subject of medical record keeping, more specifically, documentation at the time of a patient's discharge against medical advice, within six (6) months of the entry of this Order. These credits are to be in addition to the regularly required continuing medical education requirements for medical licensure in the state of Nevada.

3.      Respondent is to pay a fine of $200.00 and shall reimburse the Board the reasonable costs and expenses incurred in the investigation and prosecution of this case in the amount of

3

1

**CERTIFICATION**

2      I certify that the foregoing is the full and true original FINDINGS OF FACT,

3    CONCLUSIONS OF LAW AND ORDER on file in the office of the Board of Medical Examiners

4    in the matter of Henry Landsman, M.D., Case No. 11-5951-1.

5      I further certify that BENJAMIN J. RODRIGUEZ, M.D., is the President of the Nevada

6    State Board of Medical Examiners and that full force and credit is due to his official acts as such;

7    and that the signature to the foregoing ORDER is the signature of said

8    BENJAMIN J. RODRIGUEZ, M.D.

9      IN WITNESS THEREOF, I have hereunto set my hand in my official capacity as

10   Secretary-Treasurer of the Nevada State Board of Medical Examiners.

11

12

13   VALERIE J. CLARK, BSN, RHU, LUTCF
      Secretary-Treasurer

14   Nevada State Board of Medical Examiners

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

Attachment # I

HENRY LANDSMAN, Plaintiff(s), v. MEDICAL BOARD OF CALIFORNIA, Defendant(s).

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA

2016 U.S. Dist. LEXIS 85074

Case No. 2:15-CV-1470-JCM (NJK)

July 1, 2016, Decided
July 1, 2016, Filed

Editorial Information: Prior History
Landsman v. Medical Bd. of Cal., 2015 U.S. Dist. LEXIS 162895 (D. Nev., Dec. 3, 2015)

Counsel

For Medical Board of California, Defendant: Greg Chambers, NV.

LEAD ATTORNEY, PRO HAC VICE, California Attorney Generals Office, San Francisco, CA; Peter Kevin Keegan, Nevada Attorney General's Office, Carson City, NV.

Judges: James C. Mahan, UNITED STATES DISTRICT JUDGE.

Opinion by: James C. Mahan

Opinion

ORDER

Presently before the court is defendant Medical Board of California's motion to dismiss for lack of personal jurisdiction. (ECF No. 12). Pro se plaintiff Henry Landsman filed a response, (ECF No. 19). Defendant filed a reply. (ECF No. 20).

I. Background

Plaintiff is a doctor who received this physician's and surgeon's certificates by the medical board on or about April 13, 1981. On January 8, 2008, the United States Army restricted plaintiff's clinical privileges at Weed Army Community Hospital located in Fort Irwin, California because he failed to call immediately an on-call specialist for a patient with a burst wrist. (ECF No. 1, Id at 4-5). Plaintiff requested an appeal on or about March 6, 2008. A hearing was conducted in front of seven physicians, one nurse, and one psychologist. Plaintiffs appeal was denied after the hearing. (ECF No. 19).

On December 2, 2011 2016 U.S. Dist. LEXIS 21 the medical board attempted to revoke plaintiff's California physician's and surgeon's certificates pursuant to Business and Professions Code sections 141 and 2305, for the same reason (ECF No. 19). However, this revocation was served and plaintiff was served on December 2, 2011 2016 U.S. Dist. LEXIS 19). On December 2, 2012, the medical board prohibited plaintiff from practicing medicine in the state of California due to a violation (ECF No. 19).

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

II. Legal Standard

To avoid dismissal for lack of personal jurisdiction, a plaintiff bears the burden of demonstrating that his or her allegations would establish a prima facie case for personal jurisdiction. See Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008). Allegations in the complaint must be taken as true and factual disputes should be construed in the plaintiff's favor. Rio Props., Inc. V. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002).

When no federal statute governs personal jurisdiction, the district court applies the law of the forum state. See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir.1998). Nevada has authorized its courts to exercise jurisdiction over persons "on any basis not inconsistent[2016 U.S. Dist. LEXIS 4] with . . . the Constitution of the United States." N.R.S. § 14.065. An assertion of personal jurisdiction must comport with due process. See Wash. Shoe Co. v. A-Z Sporting Goods, Inc., 704 F.3d 668, 672 (9th Cir. 2012). To satisfy due process, a court may exercise personal jurisdiction over a defendant only where the defendant has certain minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). These minimum contacts may present in the form of either general or specific jurisdiction. LSI Indus., Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000).

General jurisdiction arises where the defendant has continuous and systematic ties with the forum, even if those ties are unrelated to the litigation. Hubbell Lighting, 232 F.3d at 1375 (citing Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 414-16, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). "[T]he plaintiff must demonstrate the defendant has sufficient contacts to 'constitute the kind of continuous and systematic general business contacts that approximate physical presence.' In re W. States Wholesale Natural Gas Litig., 605 F. Supp. 2d 1118, 1131 (D. Nev. 2009) (citations omitted). In making this determination, courts consider "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." In re W. States Wholesale Natural Gas Litig., 605 F. Supp. 2d at 1131.

The Ninth Circuit has established a three-prong test for analyzing an assertion of specific[2016 U.S. Dist. LEXIS 4] personal jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. Id. (internal citations omitted).

III. Discussion

Defendant argues that the court does not have personal jurisdiction because plaintiff provides no facts to support a claim that defendant had any contacts with the forum state. (ECF No. 12). Defendant states that there is no evidence the court has general jurisdiction because defendant does not have "substantial, continuous, and systematic" contacts with the state of Nevada. (ECF No. 12).

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

of the terms of this probation and formally revoked the physician's and surgeon's certificates on July 29, 2013. (ECF No. 19). As a result, plaintiff filed this petition for injunctive and declarative relief.

Attachment # J

DR Landstrom MED Ike Revoked
- 9-24-2012 - How is His Practicing
MeDicine?

In [NDOC]



# State of Nevada
# Department of Corrections

## INMATE GRIEVANCE REPORT

**ISSUE ID#**  20063095454                                      **ISSUE DATE:**  01/15/2020

| INMATE NAME | NDOC ID | TRANSACTION TYPE | ASSIGNED TO |
|---|---|---|---|
| ANDERSON, ANTHONY KENNETH | 1082999 | RTRN_INF | SLCLARK |

| LEVEL | TRANSACTION DATE | DAYS LEFT | FINDING | USER ID | STATUS |
|---|---|---|---|---|---|
| IF | 03/16/2020 | 5 | Denied | SCOOK | INACTIVE |

| INMATE COMPLAINT |
|---|

| OFFICIAL RESPONSE |
|---|

Denied

Medical cannot give you back your days. Medical determines your medical needs. You have had a 5 restriction since 9/11/2019 . Dr. Landsman is a medical professional , he determines treatment and care. You have seen the new provider which has referred you back to see the provider who has been seeing you previously for your condition. Once approved you will be scheduled based on the offices availability.

"Medical Dept" Dosn't Forward To [A.D.A]   X   Cordinator under AR658
Title I II III
N.D.O.C wardens Medical Director
And Prison Director Refuse to Follow
(Dr Landshens) Medical Determinations
again N.D.O.C states you
Have Had a #5 restriction since 9-11-2019 And That
DR Landsman is a Medical Professional And He Determines
My care And Treatment ! when will AR 658 kick IN ?

S Carllow (SClarker) 3/25/2020        Shreks 4/2/2020

GRIEVANCE RESPONDER



Attachment #K

medical

#20063095454

Log Number _For Tracking 2/9/10 only_

## NEVADA DEPARTMENT OF CORRECTIONS
### INFORMAL GRIEVANCE

NAME: _Anthony K. Anderson_    I.D. NUMBER: _1082177_

INSTITUTION: _Southern Desert C.T.W._    UNIT: _12-1-4-D_

GRIEVANT'S STATEMENT: _On 6-26-2011 at appox 2:30 PM Inty-the_
_tunitional were called to computation Tony Lauted in southern Desert C.T.W_
_Medical unit: To Address how Tommy N.D.O.C. Medical providers_
_of the Medical Concerns Regarding His kidney "Disease"_
_"Progression" And Hurtful side effects when taking_

SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: _Anthony K Anderson_    DATE: _12-26-11_    TIME: _3:30 PM_

GRIEVANCE COORDINATOR SIGNATURE: _____    DATE: _____    TIME: _____

GRIEVANCE RESPONSE: _____

_____

_____

_____

_____

CASEWORKER SIGNATURE: _____    DATE: _____

____ GRIEVANCE UPHELD ____ GRIEVANCE DENIED ____ ISSUE NOT GRIEVABLE PER AR 740

GRIEVANCE COORDINATOR APPROVAL: _____    DATE: _____

____ INMATE AGREES ____ INMATE DISAGREES

INMATE SIGNATURE: _____    DATE: _____

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A FIRST LEVEL GRIEVANCE MAY
BE PURSUED IN THE EVENT THE INMATE DISAGREES.

| | |
|---|---|
| Original: | To inmate when complete, or attached to formal g' |
| Canary: | To Grievance Coordinator |
| Pink: | Inmate's receipt when formal grievance filed |
| Gold: | Inmate's initial receipt |

DOC 3091 (12 / 01)

Attachment # L

**NEVADA DEPARTMENT OF CORRECTIONS**
**GRIEVANT'S STATEMENT CONTINUATION FORM**

NAME: Anthony K. Anderson  I.D. NUMBER: 1082991

INSTITUTION: Southern Desert C.T.N  UNIT #: 12-A-4-D

GRIEVANCE #: Info  GRIEVANCE LEVEL: Info Lvl 0

GRIEVANT'S STATEMENT CONTINUATION:  PG. 2  OF 2

AND "NURSE Stacy" Has Applied Their Attention AND Stacy Stands out Side The Door Where Hears it All. But landsyen Forgate Hes The ONE on 9-11-19 at 10:37 Declared ANDERSON 100% Disable 75% Due To Kimura, 20% Due Bowles Disease 5% Due To Obesity Now placing ANDERSON in Further Imminent Danger Due To Landsyen's Certification Being IN Question. ID: Medical Board Case # Henera Reinstold landsyen ✓ California Medical Board # 01-2007-199740 ID: NEVADA Medical Board # 14-5951-1

Remedy Sought

#1 Nurse Stacy Come Forward with Retaliction Information he Guarding what she Heard

#2 Hr landsyen Be Refounded off Ostracized Floor N.O.O.C

#3 $20,000 US Dollars For Retaliction/Imminent Danger

Original:   Attached to Grievance
Pink:       Inmate's Copy

#L

DOC-3097 (01/02)

*Medical Admin - State*
*2006709 6464 issue*
Log Number *For the King Grand ___*

# NEVADA DEPARTMENT OF CORRECTIONS
## INFORMAL GRIEVANCE

NAME: AnThonyK Anderson   I.D. NUMBER: 1082999

INSTITUTION: Southern Desert C.T.N   UNIT: 12-1-4-D

GRIEVANT'S STATEMENT: On 6-26-2019 at Aprox 2:10 PH Inmate, AnDersoN was called To Examination Room Located in Southern Desert C.T.N's Medical unit: To Address And InForm N.D.O.C. Medical ProVider's of His Medical Concerns ReGaRDing His Kikura Disease' - PROGRession "And HaRmful Side EFFects when AnDeRson

## SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: AnThony K Anderson   DATE: 12-26-19   TIME: 3:30 PM

GRIEVANCE COORDINATOR SIGNATURE: _____   DATE: _____   TIME: _____

GRIEVANCE RESPONSE: See attached

_____

_____

_____

_____

CASEWORKER SIGNATURE: _____   DATE: 4/2/2020

___ GRIEVANCE UPHELD   ___ GRIEVANCE DENIED   ___ ISSUE NOT GRIEVABLE PER AR 740

GRIEVANCE COORDINATOR APPROVAL: _____   DATE: _____

___ INMATE AGREES   ___ INMATE DISAGREES

INMATE SIGNATURE: AnThony Ander   DATE: 4-2-2020

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A FIRST LEVEL GRIEVANCE MAY
BE PURSUED IN THE EVENT THE INMATE DISAGREES.

| | |
|---|---|
| Original: | To inmate when complete, or attached to formal grievance |
| Canary: | To Grievance Coordinator |
| Pink: | Inmate's receipt when formal grievance filed |
| Gold: | Inmate's initial receipt |

Received SDCC
JAN 1 5 2020
AWP

Attachment #2

DOC 3091 (12/01)

# NEVADA DEPARTMENT OF CORRECTIONS
## ADMINISTRATIVE CLAIM FORM

**THIS FORM MUST BE COMPLETED PER NRS 41.036, 41.0322, 209.243 AND ADMINISTRATIVE REGULATION 740**

**DO NOT SEND DIRECTLY TO ATTORNEY GENERAL'S OFFICE, BOARD OF EXAMINERS, OR DIRECTOR**

This form is to be attached to your grievance form for any injuries or any other claim (except property) arising out of a tort alleged to have occurred during your incarceration as a result of an act or omission of the Department of Corrections or any of its agents, former officers, employees or contractors.

The following information is necessary to fairly evaluate your claim. Please provide complete information. If you need more space, attach a separate sheet of paper. You may submit additional evidence if available. Such additional evidence will be returned.

CLAIM IN THE AMOUNT OF $ ~~Twenty Thousand~~ $20,000.00 is hereby made against the Department of Corrections, based upon the following facts:

| 1. NAME OF CLAIMANT (Please print full name) | 2. I.D. # | 3. INSTITUTION |
|---|---|---|
| Anthony K. Anderson | 1082999 | Southern Desert |

| 4. AMOUNT OF CLAIM | 5. DATE AND DAY OF OCCURRENCE | 6. TIME (a.m. or p.m.) |
|---|---|---|
| Twenty Thousand $20,000.00 | 12-26-2019 | 2:10 PM |

**7. PLACE OF OCCURRENCE**

Southern Desert Correctional Center Medical Dept

12-26-2019

DOC 3095 (12/01)

Attachment #2

Page 1 of 3

8. Describe here, in complete detail, exactly how your claim loss or damage occurred and why you believe the institution is responsible or liable:

#1) SEE MEDICAL BOARD CASE - HENRY Reinhold landsyan V. California Medical Board. (# D1-2009-199740

#2) NEVADA BOARD OF Medical # 11-5951-1

#3 Retaliation on 12-26-19 landsyan NEVER Fully Gather's The Reason For ANDERSONS Visit I didn't Know landsyan was an Attorney of law)

9. Witnesses. Be sure to include any staff member who may have been involved in, or has any knowledge of, your alleged loss; also, list any inmate who has actual knowledge of facts pertinent to your claim:

#1 Staff Member With Nees (NURSE Stacy) Heard The Entire Act of Retaliation

#2 "Beni" Also Heard And Entered The Exam Room During Landsyans out Burst of Retaliation

10. Other pertinent information:

Landsyan Admits Harmful Information TO INVade ANDERSON which should only Come up During Discovery Stating Event Though you are, Right! (your Will Never Win This Case I know you wan't Giving Any Medication From 2013 until 2017 So what That's Not Caught!

#L



Log Number _2006308171_

## NEVADA DEPARTMENT OF CORRECTIONS
## FIRST LEVEL GRIEVANCE

NAME: _Anthony K. Anderson_    I.D. NUMBER: _1062077_

INSTITUTION: _S.D.C.C._    UNIT: _12-A-4-D_

I REQUEST THE REVIEW OF THE GRIEVANCE, LOG NUMBER _2006308171_ , IN A FORMAL MANNER. THE ORIGINAL COPY OF MY GRIEVANCE AND ALL SUPPORTING DOCUMENTATION IS ATTACHED FOR REVIEW.

SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: _Anthony K. Anderson_    DATE: _8-10-2011_

WHY DISAGREE: _While I disagreed with the office response I say "not refusing to see the Doctor. Because I have one medical issues that need attention at this time related to this matter. That are very hard to explain." And need "expert attention and wholeness"_

GRIEVANCE COORDINATOR SIGNATURE: _____ DATE: _____

FIRST LEVEL RESPONSE: _____

_____

_____

_____

_____

_____ GRIEVANCE UPHELD _____ GRIEVANCE DENIED _____ ISSUE NOT GRIEVABLE PER AR 740

WARDEN'S SIGNATURE: _____ TITLE: _____ DATE: _____

GRIEVANCE COORDINATOR SIGNATURE: _____ DATE: _____

_____ INMATE AGREES _____ INMATE DISAGREES

INMATE SIGNATURE: _____ DATE: _____

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A SECOND LEVEL GRIEVANCE MAY BE PURSUED IN THE EVENT THE INMATE DISAGREES.

| Original: | To inmate when complete, or attached to formal grievance |
| Canary: | To Grievance Coordinator |
| Pink: | Inmate's receipt when formal grievance filed |
| Gold: | Inmate's initial receipt |

Also → See Page #11-A

DOC 3093 (12/01)

① N.D.O.C refuse
To Follow Doctors Prescriptions
For Supplements

NAME Anthony K Anderson   ID# 1082999   Unit/Cell#: LL-B-2-N

FACILITY S.D.C.C.   DATE 9-23-2020   SIGNATURE K Anderson

**Request**

Please Refill
9-28-2020

ACETAMINA/SA.CAFFENE PM# 30

Refil 4 Days Before

Iay Also Requesting Confirmation In Regards To My
Last Visit with ... Dr Kelly  9-22-2020
The Prescriptions Proscibed  New Medications
And Supplements  "SEE NEXT 2 Pages" For details

INMATES - DO NOT WRITE IN AREA BELOW

## ASSIGNED TO

- [ ] Medical   - [ ] Dental   - [ ] Psychiatry   - [ ] Nursing   - [ ] Other _____

**Response to request**

To be scheduled to see MD

Due to COVID-19 guideline, fewer patients are seen during
sick call, making the list and wait time longer. As always, the
medical schedule is based on priority of needs. You will be
seen in approximately 6-9 weeks. If your condition worsens,
please submit a kite for nursing sick call. Thank you

← I NEVER SEEN
The Doctor
For This said appointment

RECEIVED
[?] 2 [?]
BY: [signature]

- [ ] Appointment scheduled/rescheduled for: _____
- [ ] No visit necessary
- [ ] No show for appointment
- [ ] Refused to be seen. DOC 2523 Release of Liability signed

## PRESCRIPTIONS

- [ ] KOP   - [ ] NON-KOP
- [ ] Order date _____

## PLAN

- [ ] Follow-up appointment _____   - [ ] Return if needed
- [ ] No follow-up required

Signature of practitioner/responder [signature] RN   Date 9/29/2020

Attachment #N

NEVADA DEPARTMENT OF CORRECTIONS
**MEDICAL KITE and SERVICE REPORT**

DOC 2500 (03/20)

NEVER Filled until
12-10-2020

Delay And Denial
Medical And Supplements

N.D.O.C Refuse To Follow Doctors Precription For Supplements

②

NAME Anthony K Anderson  ID# 1082999  Unit/Cell#: 11-B-2-N

FACILITY SDCC  DATE 9-13-2020  SIGNATURE /s/ Anthony Anderson

**Request**

DR Kelly and I Discussed as Follows: Prescriptions #1 Predisone No longer working among Many things a New Precription For Inflamation a supplement "OMEGA XL" #2 we Also Discussed a supplement To Address "Testosteron level" Distroyed By Predisone long term use a Supplement Prescription ("NEW GENEX") For Free Testosterone AND 6 Total Testosterone

INMATES - DO NOT WRITE IN AREA BELOW Booster

AND

**ASSIGNED TO**

[ ] Medical  [ ] Dental  [ ] Psychiatry  [ ] Nursing  [ ] Other

**Response to request**

Due to COVID-19 guideline, fewer patients are seen during sick call, making the list and wait time longer. As always, the medical schedule is based on priority of needs. You will be seen in approximately 6-9 weeks. If your condition worsens, please submit a kite for nursing sick call. Thank you

I Never Seen one ← Doctor at all CONCERNING This Said Appointment N.D.o.c still Precrib Predisone

After I Informed N.Doc it No longer RECEIVED works

[ ] Appointment scheduled/rescheduled for: _____
[ ] No visit necessary  No Doctor visit as of 12-15-2020
[ ] No show for appointment  Last DR visit was (sept)
[ ] Refused to be seen. DOC 2523 Release of Liability signed

**PRESCRIPTIONS**

[ ] KOP  [ ] NON-KOP
[ ] Order date

**PLAN**

[ ] Follow-up appointment _____  [ ] Return If needed
[ ] No follow-up required

Signature of practitioner/responder _____  Date 9/29/2020

Attachment #0
omega delayed until 12-10-2020

NEVER Retiled or Precribed any Medication For Testostron

1082999

Damage Caused By Predisone Prolonged use

# Complaints warrant checkups on doctors



Three surgeons in operating room, mid section

By Jane Ann Morrison Las Vegas Review–Journal      

February 24, 2016 - 9:44 pm

Don't miss the big stories. Like us on Facebook.    Like 239K

The Nevada Board of Medical Examiners had a backlog of 525 complaints at the start of 2015. An additional 1,078 complaints were filed last year — about three per day. By the end of the year, 570 complaints were pending.

But only 19 medical doctors and physician assistants were publicly disciplined last year.

How can a board that's falling behind ever erase that backlog and fulfill its duty to discipline bad medical doctors?

Attachment # D

Executive Director Edward Cousineau said Wednesday that the office is making headway and that the situation not as bleak as the numbers suggest.

Since taking over the board's top job in January, Cousineau has added investigators. But there are so many cases, the investigative committees of three board members have trouble handling all the complaints — the committees meet just four times a year.

Despite that, he said most cases are resolved within six to nine months. "The oldest might be 18 months," said Cousineau, an attorney who has worked for the board in various capacities since 2000.

Sixteen medical doctors were disciplined last year: Cesar Estela, Peter Philander, Arlyn Valencia, Emmanuel Acosta, Steven Holper, Arnold Klein, Michelle Stacey, Irina Volkova, Timothy Beckett, Susan Boyd, Ara Keshishian, Henry Landsman, Rita Starritt, Jan Thompson, Binh Chung and Ascar Egtedar. Three physician assistants were disciplined: David Armitage, Douglas Lynch and Heather Rohrer.

The Nevada Board of Osteopathic Medicine disciplined three doctors last year: Daniel Royal, David Moon and Jacqueline Leventhal. The DO board oversees fewer physicians, about 1,000 compared with 7,210 active MDs. Only 19 complaints were pending before the DO board at the end of 2015; 85 complaints were dismissed and 23 were dismissed with a letter of caution last year.

The DO board is able to stay on top of complaints because it gets far fewer complaints than the Board of Medical Examiners.

If any of these people are your medical providers, I want to teach you how to research the specifics of their cases, because it's all online and you need to know.

If you don't have access to a computer, you can call the board at 702-732-2147 and ask if your DO has been subject to any formal disciplinary action or if malpractice has been reported.

"What we absolutely do not do is verbally summarize the complaint or the malpractice case because that leaves too much to interpretation and can be misstated," said Executive Director Barbara Longo, who provided the disciplinary statistics for 2015.

The websites of the boards also explain that malpractice settlements don't necessarily reflect a doctor's competence or indicate that malpractice occurred.

I looked at the 22 people disciplined by the two Nevada boards last year. Some complaints involved substance abuse. Several were disciplined because they failed to notify the Nevada board they had been disciplined in other states.

The most serious complaints involve patient care or sexual abuse. Binh Chung's license has been suspended indefinitely for having sex with a minor patient.

Hand surgeon Ascar Egtedar has had insurance companies pay out three malpractice settlements, and last year he had a neuropsychological assessment and was deemed a risk to patients. His license also was suspended indefinitely.

Many medical providers reach settlements with the board and their licenses are returned to active status. For example, pain management specialist Steven Hölper's license is active again, although he has had two settlements since 2013. Malpractice charges were dropped, and he pleaded guilty to keeping poor records regarding his diagnosis, treatment and care of certain patients. He's been publicly reprimanded.

# DISCIPLINARY ACTION REPORT

**ARAGON, Romualdo, Jr., M.D. (9214) Las Vegas, Nevada**
*Summary:* Alleged signing of blank prescription forms and allowing unlicensed nurse practitioner students/externs to use pre-signed blank physical examination forms and blank prescriptions, both when he was present and when he was not on the premises.
*Charges:* One violation of NRS 630.304(4) [signing a blank prescription form]; one violation of NRS 630.305(1)(e) [aiding, assisting employing or advising an unlicensed person to engage in the practice of medicine contrary to the provisions of Chapter 630 or regulations of the Board]; one violation of NRS 630.306(2)(a) [engaging in conduct which is intended to deceive]; one violation of NRS 630.306(2)(b) [engaging in conduct which the Board has determined is a violation of standards of practice established by regulation of the Board].
*Disposition:* On December 2, 2011, the Board accepted a settlement agreement by which it found Dr. Aragon violated NRS 630.304(4), as set forth in Count I of the Complaint, and imposed the following discipline against him: (1) public reprimand; (2) $2,000 fine; (3) six hours continuing medical education regarding ethics; (4) reimbursement of the Board's fees and costs of investigation and prosecution. Count II, III and IV of the Complaint were dismissed.

**BOYLE, James, RRT (RC1428) Anaheim Hills, California**
*Summary:* Mr. Boyle voluntarily surrendered his license to practice respiratory care in Nevada.
*Statutory Authority:* NRS 630.240 [voluntary surrender of license].
*Disposition:* On March 9, 2012, the Board accepted Mr. Boyle's voluntary surrender of his license to practice respiratory care in Nevada while under investigation.

**BURSTEIN, Alan, M.D. (8524) Las Vegas, Nevada**
*Summary:* Alleged malpractice and failure to maintain appropriate medical records related to Dr. Burstein's treatment of two patients.
*Charges:* One violation of NRS 630.301(4) [malpractice]; one violation of NRS 630.3062(1) [failure to maintain, timely, legible, accurate and complete records relating to the diagnosis, treatment and care of a patient].
*Disposition:* On March 9, 2012, the Board accepted a settlement agreement by which it found Dr. Burstein violated NRS 630.301(4), as set forth in Count I of the Complaint, and imposed the following discipline against him: (1) public reprimand; (2) six hours in-person continuing medical education regarding medical records/documentation; (3) reimbursement of the Board's fees and costs of investigation and prosecution. Count II of the Complaint was dismissed.

**DUNN, Gerald, M.D. (2827) Las Vegas, Nevada**
*Summary:* Alleged malpractice related to Dr. Dunn's treatment of a patient.
*Charges:* One violation of NRS 630.301(4) [malpractice].
*Disposition:* On March 9, 2012, the Board accepted a settlement agreement by which it found Dr. Dunn violated NRS 630.301(4) and imposed the following discipline against him: (1) public reprimand; (2) $1,000 fine; (3) reimbursement of the Board's fees and costs of investigation and prosecution.

**FISHELL, Michael, M.D. (9403) Henderson, Nevada**
*Summary:* Alleged malpractice and failure to maintain appropriate medical records related to Dr. Fishell's treatment of a patient.
*Charges:* One violation of NRS 630.301(4) [malpractice].

*Disposition:* On March 9, 2012, the Board accepted a settlement agreement by which it found Dr. Fishell violated NRS 630.301(4) and imposed the following discipline against him: (1) public reprimand; (2) reimbursement of the Board's fees and costs of investigation and prosecution.

**GINIER, Bruce, M.D. (10573) Fresno, California**
*Summary:* Dr. Ginier voluntarily surrendered his license to practice medicine in Nevada.
*Statutory Authority:* NRS 630.240 [voluntary surrender of license].
*Disposition:* On March 9, 2012, the Board accepted Dr. Ginier's voluntary surrender of his license to practice medicine in Nevada while under investigation.

**GRAHAM, Charles, M.D. (6794) North Las Vegas, Nevada**
*Summary:* Alleged failure to comply with two orders from the Board's Investigative Committee requesting a response and records.
*Charges:* One violation of NRS 630.3065(2)(a) [willful failure to comply with a regulation, subpoena or order of the Board or an investigative committee of the Board].
*Disposition:* On March 9, 2012, the Board found Dr. Graham violated NRS 630.3065(2)(a) and imposed the following discipline against him: (1) public reprimand; (2) $5,000 fine; (3) reimbursement of the Board's fees and costs of investigation and prosecution.

**GREEN, Brandon, M.D. (13346) Delray Beach, Florida**
*Summary:* Disciplinary action taken against Dr. Green's medical license in Florida.
*Charges:* One violation of NRS 630.301(3) [disciplinary action taken against his medical license in another state].



Attachment # P

area after being summoned away from the treatment area to attend to another patient experiencing a life threatening medical emergency. The Order also calls for you to be publicly reprimanded for this conduct and that you pay the costs of investigation and prosecution of this matter, which are in the amount of $3,499.91.

It is now my unpleasant duty as President of the Board to formally and publicly reprimand you for your conduct which has brought professional disrespect upon you and which also reflects unfavorably upon the medical profession as a whole.

Sincerely,

Benjamin J. Rodriguez, M.D., President
Nevada State Board of Medical Examiners

cc: L. Kristopher Rath, Esq.

## CHARLES GRAHAM, M.D.

March 19, 2012

Charles E. Graham, M.D.
4591 Borrego Springs Way
Las Vegas, NV 89129

Dr. Graham:

On March 9, 2012, the Nevada State Board of Medical Examiners (Board) considered and adjudicated the matter involving the formal Complaint filed against you, Case Number 11-7922-1.

In accordance with its findings, the Board has entered a Findings of Fact, Conclusions of Law and Order, which indicates that your failure to comply with multiple Orders issued by the Investigative Committee of the Board was a violation of Nevada Revised Statute 630.3065(2)(a), i.e., willful failure to comply with an order of a committee designated by the Board to investigate a complaint. The Order calls for you to be publicly reprimanded, for you to be fined in the amount of $5,000.00, and that you pay the costs of investigation and prosecution of this matter, that amount being $5,609.48.

Accordingly, it is now my unpleasant duty as President of the Board to formally and publicly reprimand you for your conduct which has brought professional disrespect upon you which also reflects unfavorably upon the medical profession as a whole.

Sincerely,

Benjamin J. Rodriguez, M.D., President
Nevada State Board of Medical Examiners

## LYNN GREENHOUSE, M.D.

March 19, 2012

Lynn Greenhouse, M.D.
1780 Browning Way
Elko, NV 89801

Dr. Greenhouse:

On March 9, 2012, the Nevada State Board of Medical Examiners (Board) accepted the Settlement, Waiver and Consent Agreement between you and the Board's Investigative Committee in relation to the formal Complaint filed against you in Case Number 11-7546-1.

In accordance with its acceptance of the Agreement, the Board has entered an Order finding that you violated Nevada Revised Statute (NRS) Section 630.306(2)(c), engaging in conduct which is in violation of a regulation adopted by the State Board of Pharmacy as alleged in counts I and II of the disciplinary Complaint filed in this matter.

The Order suspends your license for a period of thirty-six (36) months, stays the suspension and places you on probation for a period of forty-eight (48) months with the following conditions: that you be publicly reprimanded; that you shall not apply for or hold a certificate of registration from the Nevada State Board of Pharmacy to dispense controlled substances or dangerous drugs during the period of probation; that you complete twelve (12) hours of continuing medical education in addition to those hours required to maintain licensure, six (6) on the topic of ethics and six (6) on the topic of prescribing and/or dispensing controlled substances and dangerous drugs; and that you reimburse the Board the reasonable costs and expenses incurred in the investigation and prosecution of this case.

Accordingly, it is my unpleasant duty as President of the Board to formally and publicly reprimand you for your conduct

which has brought professional disrespect upon you and which reflects unfavorably upon the medical profession as a whole.

Sincerely,

Benjamin J. Rodriguez, M.D., President
Nevada State Board of Medical Examiners

## STUART HOFFMAN, M.D.

December 7, 2011

Stuart Michael Hoffman, M.D.
77 Birchwood Dr.
Gouverneur, NY 13642

Dr. Hoffman:

On December 2, 2011, the Nevada State Board of Medical Examiners (Board) accepted the Settlement, Waiver and Consent Agreement between you and the Board's Investigative Committee in relation to the formal Complaint filed against you in Case Number 10-20386-1.

In accordance with its acceptance of the agreement, the Board has entered an Order finding that your actions by failing to utilize reasonable care, skill and/or knowledge in the case(s) of Patient A and B were a violation of NRS 630.301(4) & NAC 630.040. The Order calls for you to be publicly reprimanded, that you attend ten (10) hours of CME in laparoscopic cholecystectomy, cholecystitis, urinary fistula and GI-related carcinoma, and that you reimburse the Board the reasonable costs and expenses incurred in the investigation and prosecution of this case.

Accordingly, it is my unpleasant duty as President of the Board to formally and publicly reprimand you for your conduct which has brought professional disrespect upon you and which reflects unfavorably upon the medical profession as a whole.

Sincerely,

Benjamin J. Rodriguez, M.D., President
Nevada State Board of Medical Examiners

cc: David Mortensen, Esq.



Attachment # 9

# PUBLIC REPRIMANDS ORDERED BY THE BOARD

## ROMUALDO ARAGON, JR., M.D.

December 8, 2011

Romualdo Aragon, Jr., M.D.
2870 S. Maryland Pkwy., Ste. 120
Las Vegas, NV 89109

Dr. Aragon:

On December 2, 2011, the Nevada State Board of Medical Examiners (Board) accepted the Settlement, Waiver and Consent Agreement between you and the Board's Investigative Committee in relation to the formal Complaint filed against you in Case Number 11-12861-1.

In accordance with its acceptance of the agreement, the Board has entered an Order finding that your practice of stamping and/or signing blank prescriptions in your practice is a violation of NRS 630.304(4). The Order calls for you to be publically reprimanded, that you pay a fine of $2,000.00, that you complete continuing medical education hours regarding ethics and orders you to reimburse the Board the reasonable costs and expenses incurred in the investigation and prosecution of this case.

Accordingly, it is my unpleasant duty as President of the Board to formally and publicly reprimand you for your conduct which has brought professional disrespect upon you and which reflects unfavorably upon the medical profession as a whole.

Sincerely,

Benjamin J. Rodriguez, M.D., President
Nevada State Board of Medical Examiners

cc: Jack C. Juan, Esq.
    Jack F. DeGree, Esq.

## ALAN BURSTEIN, M.D.

March 15, 2012

Alan Burstein, M.D.
9030 W. Sahara Avenue, PMB #441
Las Vegas, NV 89117-5744

Dr. Burstein:

On March 9, 2012, the Nevada State Board of Medical Examiners (Board)

accepted the Settlement, Waiver and Consent Agreement between you and the Board's Investigative Committee relating to the formal Complaint filed against you in Case Number 11-12112-1.

In accordance with its acceptance of the agreement, the Board entered an Order finding that you agreed that the Board may find your care of the patients at issue constituted a violation of Nevada Revised Statute Section 630.301(4), malpractice, as defined by Nevada Administrative Code Section 630.040. The Order calls for you to be publically reprimanded, and orders you to complete six (6) hours of continuing medical education on the topic of medical records/documentation in addition to those hours required to maintain licensure, and to further comply with all terms and conditions of the agreement and to reimburse the Board the reasonable costs and expenses incurred in the investigation and prosecution of this case as outlined in the agreement.

Accordingly, it is my unpleasant duty as President of the Board to formally and publicly reprimand you for your conduct which has brought professional disrespect upon you and which reflects unfavorably upon the medical profession as a whole.

Sincerely,

Benjamin J. Rodriguez, M.D., President
Nevada State Board of Medical Examiners

cc: Kathleen Janssen, Esq.

## GERALD DUNN, M.D.

March 15, 2012

Gerald W. Dunn, M.D.
10432 Profondo Ct.
Las Vegas, NV 89135

Dr. Dunn:

On March 9, 2012, the Nevada State Board of Medical Examiners (Board) accepted the Settlement, Waiver and Consent Agreement between you and the Board's Investigative Committee relating

to the formal Complaint filed against you in Case Number 11-4343-1.

In accordance with its acceptance of the agreement, the Board entered an Order finding that you agreed that the Board may find that your care of the patient at issue constituted a violation of Nevada Revised Statute Section 630.301(4), malpractice, as defined by Nevada Administrative Code Section 630.040. The Order calls for you to be publically reprimanded and orders you to pay a fine of $1,000.00 and to reimburse the Board the reasonable costs and expenses incurred in the investigation and prosecution of this case.

Accordingly, it is my unpleasant duty as President of the Board to formally and publicly reprimand you for your conduct which has brought professional disrespect upon you and which reflects unfavorably upon the medical profession as a whole.

Sincerely,

Benjamin J. Rodriguez, M.D., President
Nevada State Board of Medical Examiners

cc: Robert McKenna, Esq.

## MICHAEL FISHELL, M.D.

March 14, 2012

Michael L. Fishell, M.D.
2505 Anthem Village Drive, Suite E625
Henderson, NV 89052

Dr. Fishell:

On March 9, 2012, the Nevada State Board of Medical Examiners (Board) accepted the Settlement Agreement proposed between you and the Board's Investigative Committee in relation to the formal Complaint filed against you regarding Case Number 12-18246-1.

In accordance with their acceptance, the Board has entered an Order which found you guilty of violating Nevada Revised Statute 630.301(4). The finding is related to your care and treatment of the patient at issue in the underlying Complaint; specifically, that you inadvertently left a needle catheter in the patient's coccygeal



**LANDSMAN, Henry, M.D. (4021)**
**Las Vegas, Nevada**
*Summary:* Alleged malpractice related to Dr. Landsman's treatment of a patient.
*Charges:* One violation of NRS 630.301(4) [malpractice].
*Action Taken:* On December 2, 1011, the Board found Dr. Landsman guilty of a violation of NRS 630.301(4), as set forth in the Complaint, and imposed the following discipline against him: (1) public reprimand; (2) $200 fine; (3) six hours continuing medical education regarding documentation at the time of discharge against medical advice; (4) reimbursement of the Board's fees and costs of investigation and prosecution.

**LEE, Brian, M.D. (12072)**
**Las Vegas, Nevada**
*Summary:* Alleged failure to maintain appropriate medical records related to Dr. Lee's treatment of four patients.
*Charges:* Four violations of NRS 630.3062(1) [failure to maintain, timely, legible, accurate and complete records relating to the diagnosis, treatment and care of a patient].
*Disposition:* On December 2, 2011, the Board accepted a settlement agreement by which it found Dr. Lee violated NRS 630.3062(1) (2 counts) and imposed the following discipline against him: (1) public reprimand; (2) ten hours continuing medical education regarding medical record keeping; (3) reimbursement of the Board's fees and costs of investigation and prosecution.

**MATHIS, Eddie, M.D. (6138)**
**Las Vegas, Nevada**
*Summary:* Alleged malpractice related to Dr. Mathis' treatment of a patient.
*Charges:* One violation of NRS 630.301(4) [malpractice].
*Disposition:* On March 9, 2012, the Board accepted a settlement agreement by which it found Dr. Mathis violated NRS 630.301(4) and imposed the following discipline against him: (1) public reprimand; (2) $2,000 fine; (3) 15 ~~hours continuing medical education~~ ~~regarding~~ ~~treatment of~~ a trauma patient; (4) reimbursement

of the Board's fees and costs of investigation and prosecution.

**NATHU, Rakesh, M.D. (9337)**
**Las Vegas, Nevada**
*Summary:* Dr. Nathu was the subject of a federal investigation related to his medical billing practices ~~and~~ entered into a settlement agreement with the Department of Health and Human Services and the Office of the Inspector General as a result thereof.
*Charges:* One violation of NRS 630.301(9) [engaging in conduct that brings the medical profession into disrepute]; one violation of NRS 630.3062(1) [failure to maintain, timely, legible, accurate and complete records relating to the diagnosis, treatment and care of a patient].
*Disposition:* On March 9, 2012, the Board accepted a settlement agreement by which it found Dr. Nathu violated NRS 630.3062(1), as set forth in Count II of the Complaint, and imposed the following discipline against him: (1) $2,500 fine; (2) 15 hours in-person continuing medical education regarding medical records and billing; (3) reimbursement of the Board's fees and costs of investigation and prosecution.

**OUTLAW, Edward, M.D. (10630)**
**Las Vegas, Nevada**
*Summary:* Alleged abandonment of numerous medical records in a foreclosed, bank-owned property.
*Charges:* One violation of NRS 630.3062(1) [failure to maintain, timely, legible, accurate and complete records relating to the diagnosis, treatment and care of a patient]; one violation of NRS 630.3065(1) [willful disclosure of a communication privileged pursuant to a statute or court order].
*Disposition:* On March 9, 2012, the Board accepted a settlement agreement by which it found Dr. Outlaw violated NRS 630.3065(1), as set forth in Count II of the Complaint, and imposed the following discipline against him: (1) public reprimand; (2) $2,500 fine; (3) reimbursement of the Board's fees and costs of investigation and prosecution. Count I of the Complaint was dismissed.

**PAULIN, Sebastian, M.D. (6895)**
**Las Vegas, Nevada**
*Summary:* Dr. Paulin voluntarily surrendered his license to practice medicine in Nevada.
*Statutory Authority:* NRS 630.240 [voluntary surrender of license].
*Disposition:* On March 9, 2012, the Board accepted Dr. Paulin's voluntary surrender of his license to practice medicine in Nevada while under investigation.

**ROBERTS, Gary, CRT (RC36)**
**Henderson, Nevada**
*Summary:* Alleged practice of respiratory care while under the influence of a controlled substance.
*Charges:* One violation of NAC 630.540(9) [rendering respiratory care to a patient while under the influence of alcohol or any controlled substance or in any impaired mental or physical condition]; one violation of NAC 630.540(23) and NRS 630.306(1) [inability to practice respiratory care with reasonable skill and safety due to illness, a mental or physical condition or use of alcohol, narcotics or any other substance].
*Disposition:* On December 2, 2011, the Board accepted a settlement agreement by which it found Mr. Roberts violated NAC 630.540(9), NAC 630.540(23) and 630.306(1) and imposed the following discipline against him: (1) revocation of license, with the revocation stayed contingent upon compliance with 60 months' probation with numerous terms and conditions, including suspension of his license for 120 days from the date of summary suspension of his license on August 22, 2011, said summary suspension to be lifted and his license to practice reinstated to the appropriate license status on December 19, 2011; (2) reimbursement of the Board's fees and costs of investigation and prosecution.

**RUHL, Diane, PA-C (401)**
**North Las Vegas, Nevada**
*Summary:* Ms. Ruhl voluntarily surrendered her license to practice medicine in Nevada.
*Statutory Authority:* NRS 630.240 [voluntary surrender of license].
*Disposition:* On December 2, 2011, the Board accepted Ms. Ruhl's voluntary surrender of her license to practice



# COVER SHEET

# BEGIN Claim

# # 3

## CLAIM 3

The following civil rights have been violated: 14thu U.S. Amend. Due Process and Equal Protection, Resulted In S.Dcc Failure To Reclassifie ADA qualified resulting In Improper calculation of Time. with a longer Prison Term

Supporting Facts: [Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be sure you describe exactly what each specific defendant (by name) did to violate your rights].

The Following things will clearly Direct The Courts To Improper Calculation of Time. unconstitution Failure To Reclassifie Disabled Inmate "ANDERSON" By NEVADA Department of Correction. Director of Prison James Dzurenda, Warden Jerry Howell, and Offender Management Department. ANDERSON Demonstrates That He Has a legitimate Disability. And That He was other-wise qualified And That [S.D.C.C] [OMD] Either excluded His Participation. This was Begined/Started By C/O Williays whay Also Denied Plaintiff The Benifits of Service, Program Activity whay The Above Mentioned Other-wise Subjected "Anderson" To Discrimination on The Basis of His Physical Ill-Ness. ON 1-15-2020 ADministrative Personal "SI Clark" States IN Grievence Response # 20063095454 That "ANDERSON" Has Had A #5 Restriction Since 9-11-2019. SEE Attachment #K Found

28

Claim #3

Claim Number #2 Attachments ; Fact under color of law
Tier 5 Inmates are Certified Medically Restricted
From Inmate work Programs. And Are To Be Reclassified
By An [A.D.A] Coordinator, whom Reports This Reclass
To [OMD] In which A.D.A Reclassification Programs
stop Inmate work credit lossage. of 42 Days a year
Duffy v. Riveland 98 F3d 447. 455 (9th Cir 1996)
O'Guinn v. Lovelock Coar Ctr 502. F3d 1056 1060
(9th Cir 2007)   See. 42 U.S.C.A. § 12132


"Anderson" is Unable To work as well as S.D.C.C.
Medical Dept Declaiming Anderson 100% Disable
9-11-2019. Due To His Battle with "Kimuras Diesase"
In which Anderson other-wise would Qualify. As
"Anderson" worked "yard labor" until S.D.C.C Medical
Dept, Distribution of "Andersons" Indefinate lay-IN
on (5-2-17) In which Anderson is Never cleared
To work again By S.D.C.C Medical Dept as a
Result of Andersons Battle with This "Strange"
New Ill-Ness called "Kimuras Diesase" In which
N.D.O.C Became Aware of Anderson Ill-Ness
on or about 10-13-2013 or Before. Which
The Effects of Anderson's Ill-Ness Begin
To Take Effect on Show They-Self on
or about 5-2-17

Claim #3

While ANDERSON still Qualified FOR INMATE WORK
ANDERSON Held The Following yard labor positions
#1 yard labor CLERK, #2 yard labor Trashman
#3 yard labor lawn man. "ANDERSON" complaints He was
TERMINATED while on "Medical LAY-IN" By
C/o Williams with-out (MEDICAL OR WARDEN Howell's)
CLEARENCE BEING GRANTED To Return To WORK. THE
TERMINATION was as ANDERSON was REFUSSING work
IN which was NOT THE ISSUE. THE Fact while ANDERSON
was still UNDER IN-DEFINATE MEDICAL Lay-IN AND
PER MEDICAL ORDERS Could Not Return To work Due
To ANDERSONS Knee's Being Swollening
Continued a Result of His ILL-Unees IN ① which
THE EFFECTS OF "Kimuras Diease" are Most of THE
Time VERY HARD To Detect with-out Knowlege
of This ① ILL-Ness which at Time Takes ON "Stealth"
Tory Thin at OTHER Time Shows: Through #1 Migrain HeadAcks
#2 THINING SKIN #3 Swelling Knee's, ANKLE, WRIST
#4 Ear Canal Swelling making Right Ear Hard To Hear
#5 Ear Pains Due To Swelling, #6 a weakended Immune
Systom #7 poor wound Healing. Makening it Hard
To work DURING INFlaymatory Flair. Ups

Claim #3

ANDERSON Requested To Return To work on light Duty "Request was (Medically Denied) SEE: Page # 32 Exhibit # 17 Found in Amended Petition Also see Exhibit # 16 Medical Lay-In-Orders ANDERSON was Also Found To Have (Carpel Tunnel Syndrome) which Cause's "Great Pain" IN ANDERSONS Hands And with-out. These Ill-Ness's Plaintiff would Qualifie For any and all work Programs (specfic Job Programs) Now Due To a Second Discovered under-lined Ill-Ness Plaintiff Now Dosn't Qualifie For any work Programs Now with The use of Discrimination Plaintiff is Denied work Credit or work programs Due To His Physical Disabilitys ANDERSON is Not Mistaken That [ADA] Benifits He Does "Qualifie" And These Benifits would Restore lost work Days of (12) Days a year Taken For Not worken That An ADA Cordinator would Correctly Reclassifie ANDERSON According To His Medical File Allowing A.D.A Benifits For Disabled INmates with Physical And or Mental Disabiltys Caused By The Effects of Their Ill-Ness's IN-which [N.D.O.C.] [S.D.C.C] Dosn't OFFER any AR 658 Title I-II-III Protection Which

IS a DisRegaurd To 504 RehaB Act A.D.A. MANDates AND a MANDatory State AND Federal MANDate Administrative Regulation AR 658 Title I-II-III Americans with Disabilitys Act Which S.D.C.C Dosn't OFFER ANDERSON

PRINT NAME: Anthony L. Anderson    ID#: 1089999
(Also print name and ID# at bottom of form where indicated)    DOB: 9/11/164

Institution: S.D.C.C.    Date submitted: 7/6/18  RECEIVED  Signature: A. Anderson

Medical: ☑    Dental: ☐    Mental Health: ☐    Nursing: ☐  JUL 0 6 2018  Other: ☐

Reason for request: (Describe below)

Requesting light Duty work clearance

medican Keizweel

### DO NOT WRITE IN AREA BELOW

Response to request:

You have been placed on nursing sick call list. Plase wait, as the schedule is permitted by priority of request/situation & order. Thank you.

☐ Appointment Schedule for: __/__/__    Rescheduled for: __/__/__
☐ No visit necessary
☐ No Show for Appointment
☐ Refused to be seen. DOC 2523-Release of Liability signed

### PRESCRIPTIONS

☐ KOP    ☐ NON-KOP
☐ Order Date: __/__/__

### PLAN

☐ Follow-up appointment __/__/__    ☐ Return if needed
☐ No follow-up required

Signature/Title of Provider    Date 7/6/18

NEVADA DEPARTMENT OF CORRECTIONS    NAME: _____
                                         Last    First    MI
**MEDICAL KITE and/or**
**SERVICE REPORT**    ID#: 1089999
                                                        (31)

ExHibit #17 ▬▬▬▬

▬▬▬▬    NEVER Cleared
               TO WORK SINCE
               above Mentioned Date
▬▬▬▬    with Lost of (72) Days a Year
   32      SINCE -2013-

DOC 2600 (03/18)

## MEDICAL ORDERS / LAY-IN

DISTRIBUTION:   Inmate Medical Record

COPY PROVIDED TO:  ☐ Property  ☒ Custody  ☐ Classification  ☒ Inmate

FROM:   Health Services

DATE:   5-2-17

Please be advised that the following has been ordered by the medical provider for the inmate named below:

_____
_____
_____

Days:  ☐ 5  ☐ 10  ☐ 20  ☐ 30  ☐ 45  ☐ 60  ☐ 90

☐ Inmate is to lay-in _____ days  From: _____ To: _____
☐ Inmate is to lay-in _____ weeks  From: _____ To: _____
☐ Inmate is to be medically unassigned  From: _____ To: _____
☐ Inmate is on athletic restrictions  From: _____ To: _____
☒ Other:  UNTIL SEEN BY MEDICAL PROVIDER

Dr. Pena / LH

Medical Practitioner Signature          Date: 5-2-17

I understand that I will not receive work credits until such time as I have been released by the Practitioner from this medical orders/lay-in or have been returned to work by the Classification Committee.

Inmate Signature    ID#    Housing Unit    Date

If Required:   ☐ APPROVED   ☐ DISAPPROVED

Warden Signature          Date:

Note:  Warden must confer with health authority to determine what appropriate alternative treatment will be given before any disapproval is finalized.

NEVADA DEPARTMENT OF CORRECTIONS

### MEDICAL ORDERS LAY-IN

NAME: ANDERSON, ANTHONY
ID# 1082979   INSTITUTION: SDCC

DOC 2531 (01/13)

exHibit #16

*(handwritten left margin)* I NEVER Signed But Practice lost (20 Days) a 4000 Since

33

Page #1 of A/R 658 Title I II III Hard Copy is To Ensure That [N.O.O.C] is in Complement with Titles I II III of A/R 658. [A.D.A] Acts As well As Section 504 Rehabilitions Acts The [A.D.A] Gives "State And Federal Civil Rights Protection To Individuals with Disabilities [A.D.A] Guarantees Equal Protection And Equal Opportunity's For Individuals with Both Hard To "Detect Disabilites" And Those That are "Open And Easy To Detect" For Individuals In Public Accommodations, Prisons, Employment And Transportation: State And Federal Encluding local Goverment And Governing State laws        O

#1
The Director of NEVADA Prison System is Responsable To Ensure His Administraigtions Devolpment In which A/R 658 wears Dir Dzurenda's Signature 5-15-2018 with Applicabilty To [A.D.A] Mandates In which is "Fraud" And "Crule with enusal Puinishyat"

#2 The "Warden" of Each Institution is Responsable To Manage And or Train a Designee (Cordinator) Responsable To Ensure Operational Pre-ceedures of [A.D.A] Mandates are Operational And Implemanted at Each Facility or Institution which warden "Jery Howell" Failed To Ensure It S.D.C.C.

#3 The Medical Director at Each And EVERY Institution is To Ensure a completelly Trained And Certified A.D.A Staff is Impleyented with Applicabilty which A/R 658 wears The Signature of Medical Director "Romeo Aranas" 6-12-18

:35

Claim #3

N.D.O.C Dosent Follow Americans with Disabilitys Act
504 Rehabilitation Act. Is NEVER OFFERED To
ANDERSON EVEN AFTER His Request. IN which

AR 658.01.(C) states on Page #2 of A/R 658
    658.01 (C) Substantial limitions of Major life Activity
AR 658.01 (D) Physical or Mental Impairments "lymphatic
    SKIN" Hemic and or ENDocrine cometic DisFigurement
Anatomical loss Affecting one or More of The Bodys Systems
Reproductive System Digestive System Special Sense organs
    SEE D.3
658-02     A.B.C.D.E
658-03     # 1.2 3
658-04     Equal Access
658-05   # 1   A.B.C. D. E.F  G. H.2. H.3.
658.06   Request For Reasonable Accommodations
    · 1.2 3   3.A.  3.B.  3C.  3D.  3E.
658-07   #  1   1A  1E  1F  1G
    658.09.
    658-10   # 1 2 3
A/R 658  Title I II III   Signature James Dzurenda 5-15-18
    MEDical Director Romeo tranas 6-12-18 (ANDERSON)
Requested The Above. Mentioned Accommodations 8-13-18
    To Discover S.D.C.C. Dosent Offer an A.D.A
Coordinator To Reclassifie (ANDERSON)

36

# Claim #3

When "ANDERSON" Requested The Benifits of A/R 658. [SDCC. 1st Response was "Sorry Medical Dosnt Have This Requested A.D.A. Form please SEE your Case worker IN which UNDER Color of Law [CCSI L ANDERSON] states She Has NO Knowlege of Any A.D.A Protocal. [CCSII Case worker Carl Sutterly] states He Also Has No Knowlege of Any A.D.A. Provision or Protocal ANDERSON Filed Grievence # 20063069946 ANDERSONS Grieved Issue's where NEVER correctly answer Nor was any A.D.A Personal Informed. ANDERSON Deymnstraleths The Sad Realization There No! ADA Corainator Stationed at S.D.C.C. which Is plain And Simple Acts of Fraud UNDER color OF A.D.A law By all Before Mentioned Defendants

Which on 9-11-2019 Said Prison "Dr landsman" classified ANDERSON 100% Disable. Question To The courts was Said Dr landsman a Real Doctor? HERE Found in Attachment #3(#4) Grievence # 2006309545½ Issue Date 1-15-2020 N.D.O.C states The Said Doctor Cannot label you as 100% Disable. with The ADyinistraigltion Having Knowlege of The Prison Doctors Diaqnossis And Refuse To Act on Provider Findings The ADyinistraigltion of [S.D.C.C] Must Have Knowlege Not Available To Plaintiff!

37

Claim # 3

AS IN Randolph vs. Rogers 980 Fsupp 1051.
The Courts Held That Failure To provide an Interpreter
Did Not Deny Due Process of law " But Failure To
Move Forward with A-D-A Provision Causes
Undo Hardship under Turner Standards.

"Andersons" Conditions Significantly Affects His
Daily Activities . Anderson Has recorded chronic
And Serious Issues That keep Him From working
He Suffers all The Before mentioned as His Chronic
Care Records Reflect " Brock vs. Wright 315 F3d
158 (2nd cir 2003) . Anderson Has Not Been Allowed
any [A.D.A] Accommodations For His Physical or
Mental Disabilites Bradley vs. Puckitt 157 F3d
1022 (5th cir 1998) . Anderson claims Full Support
Negligence By And Through prison Doctors And
Nurse's Leading To [A.D.A] Mal-Practice And Medical
Mal-Practice. Jones vs. United States 91 F3d 623
(3rd cir 1996) S.O.C.C. Breached a Mandated
Manditory Duty To "Anderson" This Duty Is
Found In A/R 658 A.D.A. Accommadations.
Plummer vs. United States 580 F2d 72 (3rd cir 1978)
Deliberate Indifference Caused New Injury

Claim #3

ANDERSON INFORMONED S.O.C.C. Medical Dept That Predison Continued use Has Begin To .Effect His Phybical Abilitie's And was Taken a Large Toll on ANDERSONS wieght Skin Textures, Hearing Problems And Reproductive System Illuse's on The Physcial Neglect Protion And ANDERSON Also Since 2017 Continued To Inform N.D.O.C. of Their Duty To Make Corrections To The longer Restraint From liberty Due To Being extorted out of 72 Days a year when He is Not Allowed To work N.D.O.C. Duty is Found in A/R 658 A.D.A Accommodations Plummer VS United States 580 F2d. 72. (3rd Cir 1978)

Deliberate Indifferonce is Found In Estella VS Gamble 429. US 97 (1976) Turner VS Safley The Supreme Court Held. That when a Prisoner or Prison Regulation Impings on Inmates Constitutional Rights The Regulation is Valid IF It is Reasonably Related To Legitimate Penological Intrest. [ANDERSON] States The Legitimate penological Intrest IS A/R 658 Rehab Act A.D.A

39

Claim# **3**

Here a NON-Medical Official Interferes (MMiNEV) This Same NON-Medical Official Interferes with Placement That Doctor landsman Has Declaired As Found IN: Estelle, 429 US. at 104-05 ; LOPEZ V. SMITH, 203 F3d 1122 (9th Cir 2000) In which Plaintiff Has suffered Harm Such as No [A.D.A] Care This Injury is a Result of Prison officals Deliberate INDIFFERENCE Prison officals Can Also Be Held liable. Even For Following The Advice of Prison Medical Officals Here ANDERSON Brings To The Attention of The Courts His NEED For Complience of "AR 658" By Prison officals For Other A.D.A Critical Care AND Disability. MCHAVEN V Sanders, 577 F3d 974. (8th cir 2009)# As S.D.C.C. Prison AND Medical officals KNEW AND Kno' About plaintiffs MEDICAL NEEDS AND [ADA] Request S.D.C.C. EVEN HAViNG Knowlege of ADministrative FINDING # 20063095154 ON 10-12-2020 ON 6-11-2020 ON 3-25-20 AND Prison officals Failed To Respond Reasonably To it Estell, 429. US at 104: Gutierez V. PETERS 111. F3d 1369 (7th cir 1997). Generally Courts Agree That The existense of a Serious or Chronic Medical NEED Depends ON The Facts Surrounding Each Individual Smith V. Capenter, 316 F3d 178 (2d cir 2003) IN concidering wheather you Have a Serious Medical Need The Court will look at Several Factors INclu Ding #1 wheather a Reasonable Doctor or Patient would concider The Need worthy of comment or TReaTment

Claim #3

NOTICE OF Factual FinDings OF MEDICAL Mal-Practice/ADA Facts Plaintiff Contirys either MEDICAL Mal-practice on He's NEVER Recioved a [A.D.A] ClassiFication. IN Which The Attachyent states I was labeled or Declared 100% Disable During a Detailed exay By said Doctor "HenRy landsyan" which Took Place at [S.O.C.C] Medical unit on 9-11-2019. IN which level 2 Response was The Doctor or MeDical PRoviDeR can only Fill out His part OF The Fory AnD The Doctor Cannot label you as 100% Disable. even Though He wrote what He Saw after a Detailed examination He can't Label you 100% Disable iF Protocal was in place concerning Mandated A/R 658 after The Forys left The ProviDer it would Travel To To [A.D.A] CoRDinator Then "ReclassiFication" THis Said [A.D.A] NEVER left (MeDical Housing unit) AT [S.O.C.C]. Plaintiff : Here Holds Prison officals liable FoR Not Relying AnD Following what The PRISON Doctor Tells Them, oR Declaires.

Johnson V. Doughty 433 F3d 1001 (7th Cir 2006 PRison GuaRDs or otheR Non MeDical OFFicals Intentionally Deny Plaintiff Access To [A.D.A] Treatyent. And ADA Accoyyodations.

BRown V. District oF Coluybia, 514 F3d 1279 (DC CiR 2008)

Here Plaintiffs Said Doctor ORDERS Declairation OF 100% Disable To [N.D.O.C] [S.D.C.C]

Claim #3

658.B

IF The Health Care Practitioner is unable To Determine Thate an Identifed Inmate qualifies UNDER [A.D.A] The Practitioner is Responsible To Submitt a Request To The Utilization Review Panel For Consult, Buy an "Out-side Specialist" To Determine The level of disability AND or Hearing Lost Any Appariate Specialist Care For The Inmate ONCE The Disability Has Been Confirmed AND a course of Treatment ORDERED The Inmate will Be Seen By a Committe Consiting of The [A.D.A] - Appariate Accompations Categories My Be used To Assist This Process As Determined By Healthcare Professionals. Note This Process Has Never Taken Place Also The Records Please Be ADvised! DURING my last Visit with Out-side Specialist [DR Kelly] He States Let Me Make it CLEAR Iam Not AN [A.D.A] COORDINATOR NOR AM I [A.D.A] CERTiFied I Cannot Classifie [A.D.A] Disability Patients I Could Loss My Medical lic With Those Issues I want Deal with Any [A.D.A] Responsibilitys Contact INFO DR G TimoThy Kelly M.D. Rheumatology # 702-341-5444 # 702-341-5445

A/R 658 05. C
The Facility [A.D.A] COORDINATOR is Responsible To Record [A.D.A] Determination Recommended Accommodations Modifications OR Denial AND explanations OF Denial To Accommodations Review Classification Secutity CONCERNS = Plaintiff Assures The Courts THIS NEVER Took Place more Facts are Total Denial of A/R 658.05.c 42

Claiy #3

Claiy #3 END's at Page #43
The Following Attachyents are Supporting Trame.worK

Attachyent Claiy #3 #1
Request For Reclassification 2-19-2020
Attachyont Claiy #3 #2
Request Copy of INDeafivate lay.IN
Attachyent Claiy #3 #3
Request Reclassificotion 2-6-2020
Attachyont Claiy #3 #4
OFFical Kesponse landsyan Finds 100%
Disability But N-DOC wont Provide
ANDERSON with lost Days or A.D.A
Attachyent claiy#3 #5
Becound level Grreivence Concerning
100% Disable FinDing   Claiy #4 AND #5
Front AND Back
Reclassificotion is Not oN Yedical
But Case worker Spicilist SEE claiy#3#5
1-15-2020   OFFical Kesponse
Attachyent Claiy#3 #6
Grrience Doniol Reclassificotion
6-25-19
SEE 6-6-2019 Yedicol cannot control
The loss of work credits Provider
wont Allow Return To work  Nor any Alturnative
43

Claim # 3

Attachment Claim # 3 #6
6-6-2019. Reclassification
RECLass is a Requested Visit
FoR INMates with MEDical
Problems
Attachment claim # 3 # 7
SHEriFFS OFFICE Proof OF SERVICE
"Director" James DZURENDA
"WarDen" JERRY Howel
"MeD Director" Romeo ARANAS
"MED Director" N.D.O.C    IN EX Rel   N.D.O.C
Correct    State of NEV. IN EX Rel
NEVADA Dept of COrrections

44

PRINT NAME: Anthony K. Anderson        ID#: 1082999
(Also print name and ID# at bottom of form where indicated)        DOB: 9-1-1-64

Institution: S.D.C.C.    Date submitted: 21A12020    Signature: K. Anderson

Medical: ☒    Dental: ☐    Mental Health: ☐    Nursing: ☐    Other: Failure To Respond

Reason for request: (Describe below)
my #1 Issue on 2-16-2020 was The written Status
on my Reclassification as of 9-11-2019
This Does Not Require a Visit To Medical
#2 I am requesting my Providers To Re-New
my Medicated Prescription lotion Skin is starting
To Crack

DO NOT WRITE IN AREA BELOW

Response to request:

The medical schedule is based on priority of needs & current waiting time. You will be seen in approximately 6-9 wks. If your condition worsens, please submit a kite for nursing sick call. Thank you.

☐ Appointment Schedule for:     /  /        Rescheduled for:   /  /
☐ No visit necessary
☐ No Show for Appointment
☐ Refused to be seen. DOC 2523-Release of Liability signed

PRESCRIPTIONS

☐ KOP    ☐ NON-KOP
☐ Order Date:    /  /

PLAN

☐ Follow-up appointment    /        ☐ Return if needed
☐ No follow-up required

Signature/Title of Provider        Date 2-19-20

EXHibit (K)

NEVADA DEPARTMENT OF CORRECTIONS        NAME: Anderson Anthony K
**MEDICAL KITE and/or**        Last        First        MI
**SERVICE REPORT**        ID#: 1082999
Unit/Cell#: 12-A-4-D

DOC 2600 (03/19)

Attachment Claim # 3 #1

PRINT NAME: Anthony K. Anderson
(Also print name and ID# at bottom of form where indicated)

ID#: 1082999
DOB: 1 / 19 / 6.9

Institution: S.D.C.C.    Date submitted: 4 / 251 / 2019    Signature: Anderson

Medical: [X]   Dental: [ ]   Mental Health: [ ]   Nursing: [ ]   Other: _____

Reason for request: (Describe below) I am Requesting a copy
of the Order ( seal ) they Health Care
instructing N.D.O.C. staff of
an inadequate. lay-IN in 2017

---

**DO NOT WRITE IN AREA BELOW**

Response to request:

Scheduled for
chart Review 5/3/19
JW

[ ]   Appointment Schedule for: __/__/__    Rescheduled for: __/__/__
[ ]   No visit necessary
[ ]   No Show for Appointment
[ ]   Refused to be seen.  DOC 2523-Release of Liability signed

**PRESCRIPTIONS**

[ ]   KOP    [ ]   NON-KOP
[ ]   Order Date.  __/__/__

**PLAN**

[ ]   Follow-up appointment  __/__/__    [ ]   Return if needed
[ ]   No follow-up required

_____    _____
Signature/Title of Provider      Date

---

NEVADA DEPARTMENT OF CORRECTIONS

**MEDICAL KITE and/or**
**SERVICE REPORT**

NAME: Anderson Anthony K
        Last      First    MI
ID#: 1082999
Unit/Cell#: 12-A-4D

DOC 2500 (03/18)

Attachment Claim #3  #2

PRINT NAME: _Anthony K Anderson_
(Also print name and ID# at bottom of form where indicated)
ID#: _1082999_
DOB: _9.22.1964_
Signature: _Anderson_

Institution: _S.D.C.C._   Date submitted: _2/16/2020_

Medical: ☑   Dental: ☐   Mental Health: ☐   Nursing: ☐   Other: _____

Reason for request: (Describe below)
#1) Requesting Status on "Reclassification"
#2) "Swollen INNER HIP Jointe" as well as
OUTER HIP Joints "Hurts To walk" KNees as well
#3) Facial Swelling more Intense, Than Requested
with SEVER EAR Pains Right EAR
#4) Worse Return OF (Migraine Head Acks) with
Right Eye Jumping

**DO NOT WRITE IN AREA BELOW**

Response to request:

The medical schedule is based on priority of
needs & current waiting time. You will be
seen in approximately 6-9 wks. If your
condition worsens, please submit a kite for
nursing sick call. Thank you.

RECEIVED
FEB 17 2020

☐ Appointment Schedule for: _/ /_   Rescheduled for: _/ /_
☐ No visit necessary
☐ No Show for Appointment
☐ Refused to be seen. DOC 2523-Release of Liability signed

**PRESCRIPTIONS**

☐ KOP   ☐ NON-KOP
☐ Order Date: _/ /_

**PLAN**

☐ Follow-up appointment _/ /_   ☐ Return if needed
☐ No follow-up required

Signature/Title of Provider   Date _2, 17, 2020_

EXHibit (I)

NEVADA DEPARTMENT OF CORRECTIONS

**MEDICAL KITE and/or
SERVICE REPORT**

NAME: _Anderson Anthony_
Last   First   M.I.
ID#: _1082999_
Unit/Cell#: _12-A-4-D_

DOC 2600 (03/19)

Attachment Claim #3 #3



# State of Nevada
# Department of Corrections

## INMATE GRIEVANCE REPORT

**ISSUE ID#** 20063095454                    **ISSUE DATE:** 01/15/2020

| INMATE NAME | NDOC ID | TRANSACTION TYPE | ASSIGNED TO |
|---|---|---|---|
| ANDERSON, ANTHONY KENNETH | 1082999 | RTRN_L2 | MMINEV |

| LEVEL | TRANSACTION DATE | DAYS LEFT | FINDING | USER ID | STATUS |
|---|---|---|---|---|---|
| 2 | 08/24/2020 | | Resolved | VAUSTIN | INACTIVE |

### INMATE COMPLAINT

### OFFICIAL RESPONSE

Monetary demands are not made through grievance process. Your request for $20,000 is denied.

It was explained to you during your clinic visit that the Medical Provider can only fill up his part of the form , he cannot Label you as 100% Disabled , he wrote what he saw after a detailed examination . The loss of time is not for medical to decide , you were also made aware about this . These inquiries of yours were all answered on previous grievance response. Resolved

*[handwritten signatures]*
#1082999

10-12-2020

How is The Grievance    N.D.O.C. Refuse To Honor what
Resolved ?          (The Sad Doctor wrote; what
                    He Saw AFTER a Detailed examination)
Michael Mines, M.D.    → [N.D.O.C] [S.D.C] Response is
GRIEVANCE RESPONDER     FRAUD This was
                        NEVER DISCUSSED

Report Name: NVRIGR
Reference Name: NOTIS-RPT-OR-0217.4    → FRAUD
Run Date:  AUG-24-20 03:08 PM    The Above was NEVER
Attach ptc bit #3 #4    Stated During any
                        Clinic Visit AND is
                        Stated IN ERROR! Only (Dr.s)
                        Can lable you Disable



## NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Anthony K. Anderson   I.D. NUMBER: 1082999

INSTITUTION: S.D.C.C.   UNIT #: 11-B-2-E

GRIEVANCE #: 20063095454   GRIEVANCE LEVEL: 2 Nd

GRIEVANT'S STATEMENT CONTINUATION:   PG. 1   OF 2

9-11-2019 with MR B. Gutierrez in Opposition
Arguing with landsman During My visit
After Landsman Filled out My A.D.A
Tory Ton Reclassification Found in My
Medical File Directly Under The Notice
of litigation warning. See Medical File
This cannot Be Over-Looked Dr Landsman
Declairs (#1) Anderson 100% Disable
Due Kiyura Disease ● 75 Percent (#2) 20%
Disable Due To Bowles Disorder Disease
(#3) 5% Dues To Obesity caused Thay long Term
Steroids USE Predisone.

- This Grievance was Never Addressing
Any lost of Time But Only Dr. Landmans
Restalation, This Grievance Addressed
My Changing And Harmfull Side Effects

Original:   Attached to Grievance
Pink:   Inmate's Copy

Claim #3 #5

DOC – 3097 (01/02)

# NEVADA DEPARTMENT OF CORRECTIONS
## ADMINISTRATIVE CLAIM FORM

> THIS FORM MUST BE COMPLETED PER NRS 41.036, 41.0322, 209.243 AND ADMINISTRATIVE REGULATION 740

> DO **NOT** SEND DIRECTLY TO ATTORNEY GENERAL'S OFFICE, BOARD OF EXAMINERS, OR DIRECTOR

> This form is to be attached to your grievance form for any injuries or any other claim (except property) arising out of a tort alleged to have occurred during your incarceration as a result of an act or omission of the Department of Corrections or any of its agents, former officers, employees or contractors.

The following information is necessary to fairly evaluate your claim. Please provide complete information. If you need more space, attach a separate sheet of paper. You may submit additional evidence if available. Such additional evidence will be returned.

CLAIM IN THE AMOUNT OF $ _20,000.00_ is hereby made against the Department of Corrections, based upon the following facts:

| 1. NAME OF CLAIMANT (Please print full name) | 2. I.D. # 1082999 | 3. INSTITUTION S.D.C.C. |
|---|---|---|
| 4. AMOUNT OF CLAIM Twenty Thousand $20,000.00 | 5. DATE AND DAY OF OCCURRENCE 12-26-2019 | 6. TIME (a.m. or p.m.) 2:10 PM |
| 7. PLACE OF OCCURRENCE Southern Desert Correctional Center Medical Dept | | |

DOC 3095 (12/01)

Claim #3 #5





# State of Nevada
# Department of Corrections

## INMATE GRIEVANCE REPORT

**ISSUE ID#**  20063095454        **ISSUE DATE:**  01/15/2020

| INMATE NAME | NDOC ID | TRANSACTION TYPE | ASSIGNED TO |
|---|---|---|---|
| ANDERSON, ANTHONY KENNETH | 1082999 | RTRN_L1 | BGUTIERREZ |

| LEVEL | TRANSACTION DATE | DAYS LEFT | FINDING | USER ID | STATUS |
|---|---|---|---|---|---|
| 1 | 05/14/2020 | 5 | Denied | SCOOK | INACTIVE |

| INMATE COMPLAINT |
|---|

| OFFICIAL RESPONSE |
|---|

Denied including the $ 20,000.00 claim.

I reviewed your medical records and saw that you were medically classified on 9/21/19 , we cannot classified your as you are requesting to be Labeled Disabled , we can only write what we saw is appropriate , about your time loss , it is not a medical decision but it is on the Casework Specialist to determine that , pls. write a kite to see a Provider if you think we missed something during our assessment.

*Theirs No Case worker Specilist (A.D.A Cordinator) at S.O.C.C.*

*6-11-2020*

X *Anthony K. Anderson* #1082999

X *Reg 6/11/20*

*[S.O.C.C] Adytts Medical Reclassification (9-21-19)
AND wont Honor
DR Landryon's
100% Disable classification 6/2/2020*

**GRIEVANCE RESPONDER**

*This To is ERROR Theins--- No Case Worker Specialist At S.O.C.C.*

*Claim #3 #5*

*Medical*

**Log Number** 2006-3095454

## NEVADA DEPARTMENT OF CORRECTIONS
## FIRST LEVEL GRIEVANCE

NAME: Anthony K Anderson    I.D. NUMBER: 1082999

INSTITUTION: Southern Desert C.T.A    UNIT: 12-A-4-0

I REQUEST THE REVIEW OF THE GRIEVANCE, LOG NUMBER 2006-3095454 , IN A FORMAL MANNER. THE ORIGINAL COPY OF MY GRIEVANCE AND ALL SUPPORTING DOCUMENTATION IS ATTACHED FOR REVIEW.

SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: Anthony K Anderson    DATE: 4-2-2020

WHY DISAGREE: #1 SL Clark And OK Southern Desert, Staff, agents Employees "Failed" To Answer And Respond or Address The Complaint Before They #2006-3095454. IN Complaint #2006-3095454 I NEVER Addressed The lost of Pay. SL Clark Attempts To Divert The Issues in Complaint "

GRIEVANCE COORDINATOR SIGNATURE: _____    DATE: 5-5-20

FIRST LEVEL RESPONSE: _____

_____ GRIEVANCE UPHELD _____ GRIEVANCE DENIED _____ ISSUE NOT GRIEVABLE PER AR 740

WARDEN'S SIGNATURE: _____ TITLE: _____ DATE: _____

GRIEVANCE COORDINATOR SIGNATURE: _____ DATE: 5-27-20

_____ INMATE AGREES _____ INMATE DISAGREES

INMATE SIGNATURE: Anthony K Anderson    DATE: 6-11-2020

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A SECOND LEVEL GRIEVANCE MAY BE PURSUED IN THE EVENT THE INMATE DISAGREES.

Original:   To inmate when complete, or attached to formal grievance
Canary:    To Grievance Coordinator
Pink:       Inmate's receipt when formal grievance filed
Gold:       Inmate's initial receipt

claim #3 #5

Received SDCC

MAY 01 2020

AWP
DOC 3093 (12/01)

## NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Anthony K Anderson          I.D. NUMBER: 1082999

INSTITUTION: S.D.C.C          UNIT #: 12-A-4-D

GRIEVANCE #: 20063095454     GRIEVANCE LEVEL: 1st Level

GRIEVANT'S STATEMENT CONTINUATION:     PG. 2     OF 2

in which Mr Landsyan Medical Profession
is in Fact in Question. Landsyan was
Walked off The yard   2-19-2020
For The Same Behavior Telling a Inmate
The wrong information Concerning His Ill-ness
which is Questionable Concerning: Henry Landsmans
Medical Board of Cal; Case where His Physicains
And Surgeons Certificate well Kevdked
SEE: Attachet. Hearing Held in "Las veges" Nevada
Landsman Terinination is The Keason of The New
Provider: Kemedy Scott #1 Nurse Stacy
Cole Forward with Ketailation into Requesting what
See Heard #2 is Now Moot Landsyan was Already
Teryinated; #3 $20,000 us Dollars For
Ketciliation/Immet Danger of Furthein
internal Damages And Mental Stress

Original:     Attached to Grievance
Pink:        Inmate's Copy

Claim #3 #5



8. Describe here, in complete detail, exactly how your claim loss or damage occurred and why you believe the institution is responsible or liable:

#1 SEE Attachment #1 Landsyan Medical Case "Las Vegas"
#2 SEE Medical Board Case Henry Beinhold Londoyan V
California Medical Board # 01-2009-197740
#3 NEVADA Medical Board #11-5951-1 #4 Retailiction
ON 12-26-19 landsyon Never Addressed The Reeso I
was Their And Sends Me To get E.K.G  I NEVER
Complained of Chest Pains Landsyon Deverts From (My Medical Issues)

9. Witnesses. Be sure to include any staff member who may have been involved in, or has any knowledge of, your alleged loss; also, list any inmate who has actual knowledge of facts pertinent to your claim:

#1 Staff Member Wit-Ness (NURSE Stacy)
Heard The Entire Act of Retailiction. And Heard
me Act Londoyan lets Address My Medical Issues
Not any Thing Else #2 "Ben" Head Nurse Also
Heard Landsyon LouD out BURSTS And Came
in The Exay Room

10. Other pertinent information:

Landsyon Admitts Harmful Information To "ANDERSON"
which Should Have only Come Foward During Discover
"Stating Even Though you're Right ANDERSON",
you will NEVER win This case I know you warn't
Giving Medication From (2013 until 2017) SO What
Thats Not Eyouh!\  To win

Claim #3  #5



Page 2 of 3

"For Tracking Purpose only"

Log Number _____

## NEVADA DEPARTMENT OF CORRECTIONS
### INFORMAL GRIEVANCE

NAME: Mr. Anthony K. Anderson     I.D. NUMBER: 1082999

INSTITUTION: S.D.C.C     UNIT: 12-A-4-D

GRIEVANT'S STATEMENT: NEVADA Dept of Corrections "SECOND" Improper Calculation of Time [Delay and Denial of Medical Re-Classification] Causing The lost of Work Days. SEE: (Exhibit #A). Kite 2-22-19 "Current waiting Time" 6-9 weeks. I Havent Been Re-Classified AND my E.P.D Has Moved OVER 30 Days For Failure To Work

### SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: _____ DATE: _____ TIME: _____

GRIEVANCE COORDINATOR SIGNATURE: _____ DATE: 6/4/19 TIME: 9A

GRIEVANCE RESPONSE: _____

_____

_____

_____

CASEWORKER SIGNATURE: _____ DATE: 6-25-19

_____ GRIEVANCE UPHELD _____ GRIEVANCE DENIED _____ ISSUE NOT GRIEVABLE PER AR 740

GRIEVANCE COORDINATOR APPROVAL: _____ DATE: 6/4/19

_____ INMATE AGREES _____ INMATE DISAGREES

INMATE SIGNATURE: Anthony K. Anderson DATE: 6-25-19

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A FIRST LEVEL GRIEVANCE MAY BE PURSUED IN THE EVENT THE INMATE DISAGREES.

| | |
|---|---|
| Original: | To inmate when complete, or attached to formal grievance |
| Canary: | To Grievance Coordinator |
| Pink: | Inmate's receipt when formal grievance filed |
| Gold: | Inmate's initial receipt |

Received SDCC

JUN 06 2019

AWP

DOC 3091 (12 / 01)

Exhibit #26 2 of 5.

Attachment Claim #3 #6

*//////////*

Log Number 2006 30 84171

## NEVADA DEPARTMENT OF CORRECTIONS
## INFORMAL GRIEVANCE

NAME: Mr Anthony D. Anderson   I.D. NUMBER: 1082999

INSTITUTION: S.D.C.C.   UNIT: 12-A-4-D

GRIEVANT'S STATEMENT: NEVADA Dept of Corrections' SECOund IMPROPER Calculation of Time. Delay two Denial of Medical Reclassifiction Causing The lost of work Days SEE (EXHibit #A) Note -2-22-19 Correct writing Time 6-9-weeks I Havent Been Reclassified and E.P.D. Has Moved over 30 Days.

SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: Anthony D. Anderson   DATE: 6-25-19   TIME: 10:35

GRIEVANCE COORDINATOR SIGNATURE: _____   DATE: _____   TIME: _____

GRIEVANCE RESPONSE: _____

_____

_____

_____

_____

CASEWORKER SIGNATURE: _____   DATE: 8-9-19

____ GRIEVANCE UPHELD ____ GRIEVANCE DENIED ____ ISSUE NOT GRIEVABLE PER AR 740

GRIEVANCE COORDINATOR APPROVAL: _____   DATE: _____

____ INMATE AGREES ____ INMATE DISAGREES

INMATE SIGNATURE: Anthony L. Anderson   DATE: 8-9-19

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A FIRST LEVEL GRIEVANCE MAY BE PURSUED IN THE EVENT THE INMATE DISAGREES.

| | |
|---|---|
| Original: | To inmate when complete, or attached to formal grievance |
| Canary: | To Grievance Coordinator |
| Pink: | Inmate's receipt when formal grievance filed |
| Gold: | Inmate's initial receipt |

Received
SDCC

JUL 0 2 2019

AWP

DOC 3091 (12/01)

Claim #3   #6

## NEVADA DEPARTMENT OF CORRECTIONS
## GRIEVANT'S STATEMENT CONTINUATION FORM

NAME: Anthony K. Anderson          I.D. NUMBER: 1082999

INSTITUTION: S.D.C.C.          UNIT #: 12-A-4-O

GRIEVANCE #: T.B.A          GRIEVANCE LEVEL: Informal

GRIEVANT'S STATEMENT CONTINUATION:     PG. 2 OF 2

SEE: EXHIBIT #C; MEDICAL Lay IN INDIFINATE. Lay IN 5-2-19
SEE: EXHIBIT #D; ANDERSON request To Return To work. ANDERSON
is (REFUSED) 7-6-18. SEE EXHIBIT #E Dr Kelly, Prohibition Requesting
N.D.O.C Grant NEW DRUG "METHOTRATE" SEE: EXHIBIT #F Request Copy of EXPERT
Facts #1 Custody NEVER INFOrm OHD OF ANDERSON'S SERIOUS Medical ISSUES —
abl INfOrys OHD OF INDEFINIT lay IN #2 S.D.C.C NEVER Re instates "ANDERSON"
Medically clear To WORK: Provider "Dr. Timothy" Declines To Reinstate —
"Dr lowderson" Decline To Reinstate, "Dr DHaniDac." Declines To Reinstate
Facts "ANDERSON" is Not Allowed Not cleaned To work. How CAN "ANDERSON'S"
QED Date change over 40 Days For Not working When N.D.O.c
want clean Him For work? REMEDy SOUGHT
N.D.O.C S.D.C.C OHD MUST ReClassify ANDERSON
enEligibl To InFactory work Duty And Restore
The Lost of OFInjUrd EPSD For AUG 6th 2019
As Stated By ANDERSON in Offical Response #20063069964
I CANNOT WORK like I DiD Before Because of Disease Related
ISSUES

Original:     Attached to Grievance
Pink:          Inmate's Copy

DOC – 3097 (01/02)

Claim # 3 #6

*medical*

Log Number 2006308417 |

## NEVADA DEPARTMENT OF CORRECTIONS
## FIRST LEVEL GRIEVANCE

NAME: Anthony K. Anderson     I.D. NUMBER: 1082899

INSTITUTION: S.D.C.C.     UNIT: 12-A-4-D

I REQUEST THE REVIEW OF THE GRIEVANCE, LOG NUMBER 2006308417|     , IN A FORMAL MANNER. THE ORIGINAL COPY OF MY GRIEVANCE AND ALL SUPPORTING DOCUMENTATION IS ATTACHED FOR REVIEW.

SWORN DECLARATION UNDER PENALTY OF PERJURY

INMATE SIGNATURE: Anthony K. Anderson     DATE: 8-10-2019

WHY DISAGREE: While I disagreed with the offical Response I say "not Refusing To see The Doctor Because There are Medical Issues That NEED Attention at This, Time, Related To This Matter! That are VERy Hard TO Explaine' AND NEED "Expert Attention AND wildeRNess"

GRIEVANCE COORDINATOR SIGNATURE: _____     DATE: 9-4-9

FIRST LEVEL RESPONSE: _____
_____
_____
_____
_____

____ GRIEVANCE UPHELD ____ GRIEVANCE DENIED ____   ISSUE NOT GRIEVABLE PER AR 740

WARDEN'S SIGNATURE: _____   TITLE: _____   DATE: _____

GRIEVANCE COORDINATOR SIGNATURE: _____   DATE: 92019

____ INMATE AGREES ____ INMATE DISAGREES

INMATE SIGNATURE: Anthony K. Anderson     DATE: 10-1-2019

FAILURE TO SIGN CONSTITUTES ABANDONMENT OF THE CLAIM. A SECOND LEVEL GRIEVANCE MAY BE PURSUED IN THE EVENT THE INMATE DISAGREES.

Original:     To inmate when complete, or attached to formal grievance
Canary:      To Grievance Coordinator
Pink:        Inmate's receipt when formal grievance filed
Gold:        Inmate's initial receipt

Received
SDCC

AUG 3 0 2019

AWP

DOC 3093 (12/01)

Claim #3 #6

**NEVADA DEPARTMENT OF CORRECTIONS**
**GRIEVANT'S STATEMENT CONTINUATION FORM**

NAME: Mr. Anthony T. Anderson   I.D. NUMBER: 1082999

INSTITUTION: S.D.C.C   UNIT #: 12-A-24-D

GRIEVANCE #: 20063084171   GRIEVANCE LEVEL: 1st Level

GRIEVANT'S STATEMENT CONTINUATION:   PG. 2   OF 2

And keep fighting like. I am Not in Pain. Also SEE Attachment #4 "The orthopedic provider. Also Diagnosed Osteoathritis" In Hands And Knees with Needed "carpal Tunnle syndrome Surgery in Both Hands which Delayed, Due To NDOC Procedures of Placing Patient In medical unit Being locked up all Day in H.D.SP until Recovered Question Why should I Be Punished For Being Ill? with All These Problems noted in my progressive Notes why would I have To Notify N.D.O.C of a Need For Reclassification. Also ID Exhibit "E" other Drug For my "kidney Disease" N.D.O.C want Allow "Methotraxte

"Remody Sought" To be scheduled as soon as Possible To SEE: DR. Medical Provider, PER Response (8-9-19) Reclassify me Per A.D.A Perform lite Duty Work, or Be Giving a Job of light Duty Restore All lost Work Days Towards Expiration And Or Manditory Date Of Sentence Since Oct 13 2013 Until Present Date

Original:   Attached to Grievance
Pink:   Inmate's Copy

DOC – 3097 (01/02)

Claim #3 #6



# State of Nevada
# Department of Corrections

## INMATE GRIEVANCE REPORT

**ISSUE ID#**  20063084171

**ISSUE DATE:**  06/06/2019

| ANDERSON, ANTHONY KENNETH | 1082999 | RTRN_L1 | BGUTIERREZ |
|---|---|---|---|

| 1 | 09/19/2019 | 5 | Denied | SCOOK | INACTIVE |
|---|---|---|---|---|---|

Denied.
I reviewed your Medical records together with your grievance , it was clearly stated on the Informal grievance level that it is up to the Provider if you are capable or fit to be back to work, unfortunately Medical cannot control your work credits since our concern is to have your medical issues address, Classification is always based on medical history and current status , Our Providers are experienced , skilled and trained related to their high education that will always focus on your medical issues and never your work credits. Pls. address your work credit to a different dept.

GRIEVANCE RESPONDER                                    9/20/19

Report Name: NVRIGR
Reference Name: NOTIS-RPT-OR-0217.4
Run Date:   SEP-19-19 08:29 AM

X Anthony K Anderson

Claim #3 #6



# State of Nevada
## Department of Corrections

INMATE GRIEVANCE REPORT

**ISSUE ID#** 20063084171                **ISSUE DATE:** 06/06/2019

| ANDERSON, ANTHONY KENNETH | 1082999 | RTRN_INF | SLCLARK |
|---|---|---|---|

| IF | 08/02/2019 | 5 | Denied | SCOOK | INACTIVE |
|---|---|---|---|---|---|

Denied

Providers determine whether or not you can return to work. You have seen several during your visits to medical. Your request for reclassification so that you can get work credits / stat time its outside of medicals scope. Reclassification is a requested visit and inmates with medical problems will be seen before reclass. You will be scheduled to see the Dr.

_DCarlkrn (SlClarkrn) 8/6/19_

GRIEVANCE RESPONDER

Report Name: NVRIGR
Reference Name: NOTIS-
Run Date:  AUG-02-19 0

_Anthony K Anderson_

Page 5 of 11

Claim #3 #6





**FILED**

**JUN 2 7 2019**

CLERK OF COURT



# PROOF OF SERVICE

| | | |
|---|---|---|
| **Court Date:** | | |
| **Court:** | DISTRICT COURT CLARK COUNTY | **File No.** 0016588 |
| | | **Case No.** A19795566C |
| **Initiator:** | ANTHONY ANDERSON #1082999 | **Other:** DZURENDA, JAMES |
| **Address:** | SOUTH DESERT CORRECTIONAL CENTER | **Address:** 5500 E SNYDER AVE |
| | P.O. BOX 208 | CARSON CITY, NV 89701 |
| | INDIAN SPRINGS, NV 89070 | |
| **Plaintiff:** | ANDERSON, ANTHONY #1082999 | **Defendant:** STATE OF NEVADA IN EX REL NEVADA. DEPT |
| **Address:** | , 0 | **Address:** , 0 |

**I.** Documents Served:
<u>SUMMONS & COMPLAINT</u>

**2.** Service Attempts:

| Date | Time | Address | Served |
|---|---|---|---|
| 6/14/19 | 15:00 | Address: 5500 E SNYDER AVE | ☒ |
| | | Notes: | |
| | | Address: | ☐ |
| | | Notes: | |
| | | Address: | ☐ |
| | | Notes: | |

**3.** Party Served: <u>NANCY SANDERS</u>    Title: AAII

**4.** I served the party named in Item 3:  <u>TO AUTHORIZED INDIVIDUAL</u>

**5.** Remarks:

**6.** At the time of service I was at least 18 years of age and not a party to this action.

**7.** I am an authorized individual with the Carson City Sheriff's Office and certify that the foregoing is true and correct.

_Jacob Dzyak_                                    6/14/19
JACOB DZYAK 9685                                 Date
Carson City Sheriff's Office
911 East Musser Street                  A-19-795566-C
Carson City, NV 89701                   PSER
Phone: 775-887-2500                     Proof of Service
                                        4845910

RECEIVED
JUN 2 7 2019
CLERK OF THE COURT

Claim #3 #7



**SHERIFF'S OFFICE**

**FILED**

JUN 2 7 2019

*[signature]*
CLERK OF COURT

# PROOF OF SERVICE

| | |
|---|---|
| **Court Date:** | **File No.** 0016588 |
| **Court:** DISTRICT COURT CLARK COUNTY | **Case No.** A19795566C |
| **Initiator:** ANTHONY ANDERSON #1082999 | **Other:** NEVADA DEPT OF CORRECTIONS |
| **Address:** SOUTH DESERT CORRECTIONAL CENTER<br>P.O. BOX 208<br>INDIAN SPRINGS, NV 89070 | **Address:** 5500 E SNYDER AVE<br>CARSON CITY, NV 89701 |
| **Plaintiff:** ANDERSON, ANTHONY #1082999 | **Defendant:** STATE OF NEVADA IN EX REL NEVADA. DEPT |
| **Address:** , 0 | **Address:** , 0 |

1. Documents Served:
   SUMMONS & COMPLAINT

2. Service Attempts:

| Date | Time | | | Served |
|---|---|---|---|---|
| 6/14/19 | 15:00 | Address: 5500 E SNYDER AVE | | ☒ |
| | | Notes: | | |
| | | Address: | | ☐ |
| | | Notes: | | |
| | | Address: | | ☐ |
| | | Notes: | | |

3. Party Served: NANCY SANDERS    Title: AAII

4. I served the party named in Item 3:  TO AUTHORIZED INDIVIDUAL

5. Remarks:

6. At the time of service I was at least 18 years of age and not a party to this action.

7. I am an authorized individual with the Carson City Sheriff's Office and certify that the foregoing is true and correct.

*[signature]*                                                6/14/19
JACOB DZYAK 9685                                          Date
Carson City Sheriff's Office
911 East Musser Street                    A-19-795566-C
Carson City, NV  89701                    P688
Phone:  775-887-2500                      Proof of Service
                                          4848812

RECEIVED
JUN 2 7 2019
CLERK OF THE COURT





*Claim #3 #7*



FILED

JUN 2 7 2019


CLERK OF COURT

## PROOF OF SERVICE

| | | | |
|---|---|---|---|
| Court Date: | | File No. 0016588 | |
| Court: | DISTRICT COURT CLARK COUNTY | Case No. A19795566C | |
| Initiator: | ANTHONY ANDERSON #1082999 | Other: ARANAS, ROMEO | |
| Address: | SOUTH DESERT CORRECTIONAL CENTER P.O. BOX 208 INDIAN SPRINGS, NV 89070 | Address: 5500 E SNYDER AVE CARSON CITY, NV 89701 | |
| Plaintiff: | ANDERSON, ANTHONY #1082999 | Defendant: STATE OF NEVADA IN EX REL NEVADA. DEPT | |
| Address: | , 0 | Address: , 0 | |

1. Documents Served:
   SUMMONS & COMPLAINT _____ _____ _____
   _____ _____ _____

2. Service Attempts:
   | Date | Time | | Served |
   |---|---|---|---|
   | 6/14/19 | 15:00 | Address: 5500 E SNYDER AVE | ☐ |
   | | | Notes: DID NOT ACCEPT, FORMER EMPLOYEE | |
   | _____ | _____ | Address: _____ | ☐ |
   | | | Notes: _____ | |
   | | | Address: _____ | ☐ |
   | | | Notes: _____ | |

3. Party Served: _____ Title: _____

4. I served the party named in Item 3: MOVED - RETURNED NOT SERVED
   _____

5. Remarks: _____
   _____
   _____

6. At the time of service I was at least 18 years of age and not a party to this action.

7. I am an authorized individual with the Carson City Sheriff's office and certify that the foregoing is true and correct.

*Jakob Dzyak*                                    6/14/19
JAKOB DZYAK 9689                                    Date
Carson City Sheriff's Office
911 East Musser Street
Carson City, NV 89701
Phone: 775-887-2500

A-19-795566-C
PSER
Proof of Service
4845814

Attachment   Claim #3 #7

BEGIN Claim

# 4

## CLAIM 4

The following civil rights have been violated: 8th us Amend Cruel And Unusal Punishment Caused By Iyminant Danger of life And limb By And Through Deliburate Covid-19 Exposure.

Supporting Facts: [Include all facts you consider important.  State the facts clearly, in your own words, and without citing legal authority or argument.  Be sure you describe exactly what each specific defendant (by name) did to violate your rights].

During The mounth of December in The year OF 2020, southern Desert C.T.N, was placed on lockDown Due To The wide spread Dangers caused By Covid-19 Pandemic The Novel Coronavirus (Named Sars-Cov-2) Plaintiff ANDERSON was Housed IN Re-entra program unit 11-B. which was "FREE From Covid Infection/Infected Inmates" Their were only 40 To 50 Inmates Housed in unit 11 FOR over 9 Months or longer which unit 11 Has Been a programs unit Since My Stay At S.D.C.C. Starting in The Summer of 2012. SDC.C. Contayinated units were as Follows unit #3 unit #4 Unit #5 Unit #6 Unit #12 Incoming Inmates From H.DS.p. And N.D.O.C work Camps. Then IN Late Dec 2020 ON or About Dec 24th 2020, N.D.O.C. S.D.C.C. AD minIstraigltion Dept ORDER ConTayinated with Cov-19. Inmates Transfered

45

Claim # 4

INTO A COVID-19 FREE ZONE 11-B
THis was Done UNDER The Color OF law with
a Deliberate INDifference These INmate where
COVID-19 Positive From ContamINateD UNits #5 #6
AND Camp The FRist 80 Twenty INmates ContamINateD
UNit 11-B Their is AND was No Social DistenciNg
we live iN Close Very Close liviNg arrangments
Lest TTan 3 Feet apart. We Share showers, Restrooms
AND Social AREA'S - NOW The NUN ContamINateD
INmate's SUCH as "ANDERSON" # 1082999 are EXPOSED
with a Deliberate INDifference Here "ANDERSON" AlReady
HaviNg an Immune system DisoRDER was StrickeN
with COVID-19. Virus Testing Positive 12-29-2020
CausiNg "ANDERSON" UNDO paiN and suffERING MORE
IN-Dept Head-Acks ColD AND Hot Sweets
Short-Ness of BReath No Taste COVID Made
it Almost IMPosible To INHale Air with N.D.O.C.
HaviNg KnowlEdge "ANDERSON" is AlReady using
The DRug PReDisoN - HERE There's No way
ARounD The CRULe AND UNUSal PunistMent
Claim Due To PendiNg Case # A-20-817789-W
INforcyiNg N.D.O.C. oF The DaNgers
"ANDERSON" Faces are IMMient FileD By The
FeDeRal GroverMent oN ANDERSON Port On or
About - July 9th 2020 - (6) Six MounthS Before
"ANDERSON" was StrickeN with COVID-19
46

Claim #4

Also Before The U.S. Dist Court in Support
Of Deliberate Indifference is Dr Karen Gedneys
Declaration Concerning Anderson Seeking
Release During Covid-19. The Records Reflect
Dr Karen Gedney is The Original Dr Concerning
Andersons . . . Medical Case

"Anderson" States That Due To Cruel And Unusual
Punishment Caused By Deliberate Indifference To
His Safty And well Being N.D.O.C placed Andersons life
And limbs In Jepardy Allowing Covid-19 Into
The Building Unit 11-B Effecting The Distance He
Could walk Having To Stop For Air Every 2 to 3
Feet No Sleep For about a Week And ½
"Anderson" was Then placed In Quarantine And
only Given "Anderson" (6) Six Cough Drops And A
24 Pac of Asprin To Fight Covid-19. Then
Contained in a Cell For 18 Days only out
For ½ Hour To Shower Or use The Phone
This undo pain was caused By Negligence
with a Deliberate Indifference Stating It Has
Not Happened yet. it Probelly wont, Not
Having any Covid Protocal in place, And Failing
To Follow Big Brother. The Federal GoverMant
whoy Released Inmate 3 years To
E.P.D whoy was 5 years Violence Free

47

Claim #4

WHEN ANDERSON Finally HaD ConTacT with CCSIII Kimberly Mccoy ASKED HER Why DiD They put Those INFected people IN THe unit with-out Contamination ANDERSON was TolD "ANDERSON I UNDERSTAND But I Have To Do what Iam Told There ARE 80 OPEN BED iN unit 11-B we NEED The Space THESE BEDS Must Be Filed at all Cost we Have Knowlege, AND are Aware of your Concerns That This is The Only unit THats Covid Free But we Have No where ElsE To put They ???

with a Deliberate INDifference To ANDERSON Health AND Safty ANDERSON was EXPOSED To CoVID

with N.D.O.C Already Having Knowlege of ANDERSONs UNDERlining Ill-Ness EXPOSED To CoviD 12-29-2020 By The Entire Excutive Staff of N.D.O.C.

2:21-CV-00514-APG-EJY

POINTS AND AUTHORITIES

I. Introduction    NEWLY DISCOVERED

Mr. Anderson has filed a Tort Action petition arguing the heightened and inexorable danger of death or serious illness from the COVID-19 virus while in prison represents a cruel, unusual, and disproportionate punishment in violation of the State and Federal Constitutions.  Mr. Anderson moves to be released on medical conditions NRS 178.4871(2). Release pending the ultimate determination on the petition is justified here. The dangers Mr. Anderson faces as a result of being incarcerated during the pandemic is an exceptional circumstance deserving of special treatment in the interests of justice. These dangers are imminent as the Nevada Department of Corrections has reported its first positive tests for inmates at six different facilities, including the one housing Mr. Anderson. Nationally, the rates of infection inside prisons have been skyrocketing.  It is only inevitable this will happen in Nevada. There also can be no doubt the issue here presents both a substantial question of law and fact. Further Mr. Anderson has made a clear case on the merits. Mr. Anderson was convicted of a non-serious felony, is within three years of his release date, and has a verified release plan. Because Mr. Anderson is a great candidate for release this motion should be granted.

II.   Legal Analysis

Under NRS 178.4871(2), a petitioner who has filed a post-conviction petition may be admitted to bail pending appeal. A court may grant such a request if the petitioner can show:

> (1) the petition was filed in the proper jurisdiction;
>
> (2) the petition presents a substantial question of law or fact and does not appear to be barred procedurally;
>
> (3) the petitioner has made out a clear case on the merits;

2

Front And Back Copys

2ND

Newly Discovered                    2:21-CV-00514-APG-EJY
Claims In Case #
         N.R.S  41.0322  ToRT  Action
Showing  Imminent  Danger,  Fraud, Attempted Stealth
Fraud,  Acts  of  Class of  one,  Bias  Pre-judiced
Acts  of  Deliberate  Indifference  Medical  Mal practice
with-out "Mandated  Reclassification  under
Americans  with  Disabilty Act"  Thus  violating  AK
(658) in Full  Title  I II III  [A.D.A]  Not operational
at  Southern  Desert  correctional center  From oct 13 2018
until Present Day  [S.D.C.C  ingaging in  Deceptive
Practice  concerning  proper  medical needs, with a
Deliberate  Indifference  To  Petitioners life, limbs
and  Health  To Those Simalar  Suited,  "Creating
a "Disporportionate  Punishment"  Executed and
Inforced  on a  Person  Not  Sentenced To  Death
Nor  Sentenced  To  undo pain and Suffering
Nor a Person Not Sentenced To  Cruel and unusual
Punishment  Due To  Heightened And  Inexorable
Danger of Death or More  Serious Ill-ness's From
The  COVID-19 Virus  while in Prison
Represents  Cruel And unusual Disproptionate,
Punishment  in  Violation of  State And Federal
Constitutions

2ND  Newly  Discovered
             2:21-00514-APG-EJY

2:21-cv-00514 APG-EJY

A-19-795566-C

(4) there are exceptional circumstances deserving of special
treatment in the interests of justice.

*See Bergna v. State*, 120 Nev. 869, 873, 102 P.3d 549, 551-51 (2004) (discussing availability of release while post-conviction petition is pending).

For the reasons discussed below, Mr. Anderson can meet each element of this standard.

**A.   The pandemic clearly presents an exceptional circumstance**

The world is currently grappling with a dangerous pandemic without precedent over the past century.   The novel coronavirus represents a serious and existential danger to people who are incarcerated. Prisons are the ideal environment for an infectious disease to spread.   Due to the nature of incarceration, the mitigating steps the rest of society can take to minimize spread of the disease are simply unavailable.   As a result, the danger of infection to inmates is both heightened and unpreventable.   It is simply inescapable that an outbreak will happen in prisons, no matter what mitigation steps prison officials may take.   Indeed, such an outbreak may be in its beginning stages right now as the Nevada Department of Corrections has announced its first confirmed cases in six separate facilities. It's especially likely to cause substantial harm or death to people with the same risk factors as Mr. Anderson.   Nationally, the number of cases in prisons is increasing exponentially. The virus therefore poses an overwhelming threat to Mr. Anderson, and this threat is an extraordinary circumstance supporting pre-decision release.

**1.   The novel coronavirus is causing worldwide havoc.**

The novel coronavirus (named SARS-CoV-2) first caught attention in late December 2019 and has quickly grown into one of the most serious crises to affect the safety and security of the entire world since perhaps World War II.   The first outbreak occurred in Wuhan, China; the Chinese government confirmed dozens of cases on December 31. *See* Derrick Bryson Taylor, "A Timeline of the Coronavirus Pandemic,"

3

2:21-CV-00514-APG-EJY

A-19-795566-C

1 The New York Times (Apr. 7, 2020), *available at* https://nyti.ms/2wNznJ7 (last visited

2 May 26, 2020) (hereinafter "Timeline"). China reported its first known death from

3 the virus (the illness it causes is called "COVID-19") on January 11. *Id.* Within the

4 next couple weeks, the virus spread to other parts of East and Southeast Asia, and

5 then on from there, including to Washington State. *Id.* The Chinese government

6 locked down Wuhan on January 23; the World Health Organization declared a global

7 health emergency soon after; and the Trump administration responded by barring

8 certain travel from China. *Id.*

9  Concerns continued to mount from there. Within a month after China reported

10 its first death, the number of confirmed cases had skyrocketed to 44,653. *See*

11 Timeline, *supra.* Substantial outbreaks developed in mid-February in France, South

12 Korea, and Iran. *Id.* The Lombardy region in Italy became a major cluster, and the

13 local government closed schools and events in late February. *Id.* By the end of

14 February, the United States recorded its first domestic death from COVID-19. *Id.*

15 The Trump administration banned travel from Europe and declared a national

16 emergency; the European Union and its associated countries imposed similar steps

17 over the coming weeks; and the world is now scrambling to contain the impact. *Id.*

18  The novel coronavirus causes initial symptoms somewhat like seasonal

19 influenza's, but with a higher risk of negative outcomes. Like the flu, people who

20 contract COVID-19 often suffer fever, cough, and/or shortness of breath. *See*

21 "Symptoms," U.S. Centers for Disease Control and Prevention, *available at*

22 https://bit.ly/33U4pey (last visited May 26, 2020). But unlike the flu, serious illness

23 can develop in about 16 percent of all cases. *See* "Situation Summary," U.S. Centers

24 for Disease Control and Prevention, *available at* https://bit.ly/2X60slJ (last visited

25 May 26, 2020). In severe cases, the disease can cause pneumonia, which is a

26 dangerous lung infection. *See* James Gallagher, "Coronavirus: What it does to the

27 body," BBC News (Mar. 14, 2020), *available at* https://bbc.in/2UL8wFG (last visited

4

2:21-CV-00514-APG-EJY

A-19-795566-C

1   May 26, 2020).  As the pneumonia worsens, the condition can develop into acute
2   respiratory distress syndrome ("ARDS"), which is life-threatening and requires
3   ventilators to manage.  *Id.* The virus can also cause septic shock and serious damage
4   to other organs.  *Id.*

5        The disease is a public health crisis on an unparalleled scale for many reasons,
6   including because it's so much more deadly and virulent than seasonal flu.  Seasonal
7   flu has an average death rate of 0.1 percent; estimates for the novel coronavirus's
8   death rate range much higher, from between 1 percent and 3.4 percent.  *See* Denise
9   Grady, "How Does the Coronavirus Compare With the Flu?," The New York Times
10  (Mar. 27, 2020), *available at* https://nyti.ms/2WRsRvz (last visited May 26, 2020).
11  Meanwhile, someone who contracts seasonal flu is likely to infect only another 1.3
12  people; someone who contracts coronavirus is likely to infect a much more significant
13  total of 2.2 people.  *Id.* Thus, the novel coronavirus is more serious than the typical
14  flu because it's more likely to cause death and more likely to spread to more people.
15  Notably, the incubation period for the virus can be up to two weeks—that is, someone
16  can be infected for up to two weeks without noticing any symptoms—and some people
17  can be asymptomatic for the entire duration of the infection.  *See,* Graham Lawton,
18  "You could be spreading the coronavirus without realizing you've got it," New
19  Scientist (Mar. 24, 2020), *available at* https://bit.ly/2QVeToy (last visited May 26,
20  2020).  People who haven't yet suffered symptoms or who won't end up suffering any
21  symptoms might still be contagious and can still spread the virus without realizing
22  it.  *Id.*

23       Given these threats, governments across the world took unprecedent steps to
24  combat the virus.  Here in Nevada, Governor Sisolak ordered the closure of non-
25  essential businesses (including casinos) for nearly two months to avoid the possibility
26  of community spread.  *See* Megan Messerly et al., "Sisolak orders statewide closure,"
27  Nevada Independent (Mar. 17, 2020), *available at* https://bit.ly/3dgeTJt (last visited

5

2:21-CV-00514-APG-EJY

A-19-795566-C

1   May 26, 2020); Riley Snyder, "Sisolak extends COVID-19 shutdown until end of April,

2   urges residents to shelter-in-place," Nevada Independent (Apr. 1, 2020), *available at*

3   https://bit.ly/2xWmOeS (last visited May 26, 2020).  Almost every state government

4   instituted similar lockdowns.  *See* Sarah Mervosh et al, "See Which States and Cities

5   Have Told Residents to Stay at Home," The New York Times (Apr. 20, 2020),

6   *available at* https://nyti.ms/2XheRvn (last visited May 26, 2020).

7        Courts realized the seriousness of the situation, too.  For example, this Court

8   and the other courts in this state took extraordinary measures to limit the spread of

9   the disease in the courthouse.  *See, e.g., In re COVID-19 Emergency Cancellation of*

10  *Oral  Argument  and  Public  Hearing*  (Nev.  Sup.  Ct.),  *available  at*

11  https://bit.ly/3bbW744 (last visited May 26, 2020); Administrative Orders 2020-01

12  through 2020-13 (Nev. 8th Jud. Dist. Ct.), *available at* https://bit.ly/397CPeT (last

13  visited May 26, 2020).  The U.S. Court of Appeals for the Ninth Circuit canceled, or

14  heard remotely, oral arguments on a case-by-case basis through August.  *See* COVID-

15  19 Notice (9th Cir.), *available at* https://bit.ly/2woI5NJ (last visited Apr. 20, 2020).

16  The U.S. Supreme Court has switched over to telephonic arguments.  Press Release

17  (U.S. Sup. Ct.) (Apr. 13, 2020), *available at* https://bit.ly/3czY237 (last visited Apr. 20,

18  2020).

19       Despite the mitigating measures, the exponential growth of the virus around

20  the world and the ensuing death rates, in particular in the United States, have

21  confirmed both the high rates of transmission, the high death rates, and the serious

22  health risks the virus poses.  As of June 25, 2020, the United States has the highest

23  number of confirmed cases of COVID-19 in the world at over 2.4 million and also the

24  highest number of deaths from the virus at over 120,000.  The number of deaths has

25  kept pace with the federal government's grim projections of between 100,000 and

26  240,000 American deaths even with appropriate social distancing measures.  Cara

27  Buckley et al, "White House Projects Grim Toll from Coronavirus," The New York

6

2:21- CV-00514-APG - EJY

A- 19-795566-C

1    Times (Mar. 31, 2020), *available at* https://nyti.ms/2xIdNWG (last visited May 26,

2    2020).

3        Although the initial spike may have passed, the fear has always been that

4    there would potentially be a new upturn in infections as the country reopens. *See*

5    Dale Smith, "A Second Wave of Coronavirus: When It Could Come, How Long It Could

6    Last and More," cnet.com (May 31, 2020), *available at* https://cnet.co/305T7nG (last

7    visited June 3, 2020). That is now a reality. The United States saw one of its largest

8    number of confirmed daily cases on June 23, 2020. *See* "The U.S. just recorded its

9    third-highest total of new cases, as hospitalizations rise in some states," The New

10   York Times (June 24, 2020), *available at https://nyti.ms/2Nsobqc* (last visited June

11   24, 2020). This increase is being seen in Nevada. Sarah Almukhtar et al, "Nevada

12   Coronavirus Map and Case Count," The New York Times (June 24, 2020), *available*

13   *at* https://nyti.ms/2ZBroLk (last visited June 24, 2020). And the continuing concern

14   is that it will likely get even worse as the state's economy is dependent upon tourism.

15   As people travel here from all over the country, especially neighboring hot spots like

16   Arizona, California, and Utah, the risk of spread in Nevada could drastically increase.

17       In sum, the pandemic is an unprecedented crisis that has required

18   unprecedented responses from all our branches of government.

19       **2.    The prison population is especially likely to get infected.**

20       While the entire country is at risk, inmates in jails and prisons are particularly

21   vulnerable to contracting the disease.  The very nature of incarceration as communal

22   space makes prisons "festering petri dishes" for coronavirus.  *See* Jake Harper,

23   "Crowded Prisons are Festering 'Petri Dishes' for Coronavirus, Observers Warn,"

24   NPR (May 01, 2020), *available at* https://bit.ly/2yzQ8sc (last visited May 26, 2020);

25   *see also* Ernesto Londono et al, "As Coronavirus Strikes Prisons, Hundreds of

26   Thousands Are Released," The New York Times (April 26, 2020) (stating prisons

27

7

2:21-cv-00514 APG-EJY

A-19-795566-C

1  across the world have become powerful breeding grounds for the coronavirus),

2  *available* at https://nyti.ms/2XtsLJ9 (last visited May 26, 2020).

3      The mitigation measures society has used to limit the spread simply are

4  inapplicable to the prison setting. Among other things, people in the community can

5  combat spread by staying isolated at home whenever possible; practicing social

6  distancing (i.e., staying six feet apart from others) and wearing gloves or masks in

7  public; sanitizing their surroundings; and washing their hands or using hand

8  sanitizer frequently. Inmates don't have the same luxuries; they can't stay in their

9  own homes, they can't avoid interacting with officers or other inmates at their

10  pleasure, they can't sanitize their living spaces, they can't wash their hands at will.

11  *See, e.g.,* Timothy Williams et al., "'Jails Are Petri Dishes':   Inmates Freed as the

12  Virus Spreads Behind Bars," The New York Times (Mar. 30, 2020), *available at*

13  https://nyti.ms/2UrZ8b0 (last visited Apr. 20, 2020). Inmates unavoidably live in

14  cramped, unsanitary conditions. The main weapons our society has to combat the

15  virus, social distancing and sanitizing, is impossible to implement in prison.

16      Further, there is a great deal of stress on inmates in prison. There is poor

17  nutrition and a lack of quality sleep. Their access to medical facilities is inadequate.

18  Prison medical capability is insufficient to address an outbreak and it takes a vast

19  amount of resources to send prisoners out to be treated. Inmates are medically 10

20  years older than someone outside prison. Inmates disproportionately suffer from

21  chronic illness and other health conditions that exacerbate the impact of COVID-19.

22  German Lopez, "Why U.S. Jails and Prisons Became Coronavirus Epicenters,"

23  Vox.com (April 22, 2020), *available at* https://bit.ly/2ZBlDgI (last visited May 26,

24  2020); *see also* COVID-19 in Correctional and Detention Facilities – United States,

25  February – April 2020, Centers for Disease Control and Prevention (May 6, 2020)

26  (listing    difficulties    of    controlling    spread    in    prisons),    *available    at*

27

8

2:21-cv-00514-APG-EJY

A-19-795566-C

1    https://bit.ly/3d14IYN (last visited May 25, 2020). These factors significantly
2    increase the danger of more serious complications from the virus.

3          Thus, as the New York Times has reported, "Defense lawyers, elected officials,
4    health experts and even some prosecutors have warned that efforts to release inmates
5    and to contain the spread of the disease are moving too slowly in the face of [the]
6    contagion." *Id.*

7          In a declaration attached to the petition, Dr. Karen Gedney, who was a senior
8    physician with the Nevada Department of Corrections, echoes these concerns. *See*
9    Exhibit 1, ¶ 2. She states, "Prisons are more susceptible to the spread of the highly
10   contagious novel COVID-19. Due to the nature of incarceration, the steps the rest of
11   society can take to slow the spread of the disease are simply not possible in prisons."
12   *Id.*, ¶ 8. She explains, most importantly, social distancing is not possible. *Id.*, ¶ 9.
13   She adds hand washing cannot be done at the level necessary to adequately fight the
14   spread; hand sanitizing will likely be limited; and sanitation will be inadequate. *Id.*,
15   ¶¶ 10-11. The danger is also higher for prisoners due to the physical condition of the
16   inmates. She explains, "COVID-19 affects older populations most severely.
17   Incarcerated men and women are 10 years older than their chronological age because
18   of their lifestyle choices. The inmate population overall has more heart and lung
19   problems," which is another population vulnerable to the disease. *Id.*, ¶ 12. She adds,
20   "Stress, poor nutrition, and lack of quality sleep are common in prison and they all
21   affect the inmates' ability to fight the virus." *Id.*, ¶ 13.

22         Dr. Gedney states, even more troubling, "NDOC does not have the resources
23   necessary if there is an outbreak." *Id.*, ¶ 14. There is a limited number of medical
24   beds in each prison. *Id.* There is only one regional medical facility and it only has 60
25   beds. *Id.* No institution has the ability to take care of an inmate who needs a
26   ventilator or ICU care." *Id.* The facilities also would not have the resources to assist
27

9

2:21-CV-00514-APG-EJY

A-19-795566-C

1    multiple inmates who would need outside medical care as an outside trip to a hospital

2    requires two custody officers in attendance. *Id.*

3         Dr. Gedney concludes, "The only real way to mitigate the spread of the disease

4    within the prison to inmates and staff alike is to decrease the number of incarcerated

5    individuals." *Id.,* ¶ 16.

6         Beyond Dr. Gedney, public health experts have voiced substantial concerns

7    about the prison population's susceptibility to infection.  For example, in a letter to

8    President Trump regarding federal inmates, dozens of health experts explain prisons

9    "contain high concentrations of people in close proximity and are breeding grounds

10   for the uncontrolled transmission of SARS-CoV-2."  Letter from Sandro Galea, MD,

11   DrPH, et al., to President Trump (Mar. 27, 2020), *available at* https://bit.ly/39uc7x5

12   (last visited Apr. 20, 2020).  Thus, prisons "present significant health risks to the

13   people housed in them," as well as prison staff. *Id.* Prisoners are often "housed cheek-

14   by-jowl, in tightly-packed and poorly-ventilated dormitories; they share toilets,

15   showers, and sinks; they wash their bedsheets and clothes infrequently; and often

16   lack access to basic personal hygiene items." *Id.* The institutions "lack the ability to

17   separate sick people from well people and to quarantine those who have been

18   exposed." *Id.* Thus, the experts urge the President to help combat the pandemic by

19   reducing the total federal prison population. *See also, e.g.,* "Preparedness, Prevention

20   and Control of COVID-19 in Prisons and Other Places of Detention: Interim

21   Guidance,"  World  Health  Organization  (Mar.  20,  2020),  *available  at*

22   https://bit.ly/3bAqIsf (last visited Apr. 20, 2020).

23        Given these concerns, litigation has ensued across the country about the

24   possible effects of the pandemic on the prison population; in connection with that

25   litigation, doctors have repeatedly stressed the likelihood that the disease will spread

26   rapidly throughout prison facilities. *See, e.g., Valentine et al v. Collier et al,* Case

27   No. 4:20-cv-01115 (S.D. Tex.), ECF Nos. 12 through 14; *United States v. Toro,* Case

10

2:21-CV-00514-APG-EJY
A-19-795566-C

1   No. 1:19-cr-00256-NONE-SKO-8 (E.D. Cal.), ECF No. 145 at 29-65 (collecting various

2   declarations).  Similarly, the American Civil Liberties Union of Nevada has written

3   a letter to state government officials discussing the problem; as they explain, "People

4   in prisons and jails are highly susceptible to outbreaks of contagious illness" because

5   "[t]hey are housed in close quarters and are often in poor health."  Letter from ACLU

6   of Nevada to Steve Sisolak et al. (Mar. 26, 2020), *available at* https://bit.ly/2WWW886

7   (last visited Apr. 20, 2020).  Some of that litigation has already been successful,

8   including here in Nevada.  *See, e.g.*, Ricardo Torres-Cortez, "Henderson immigration

9   detainee, at high risk of coronavirus, is released," Las Vegas Sun (Apr. 2, 2020),

10  *available at* https://bit.ly/3dT6yvy (last visited Apr. 20, 2020); *Rose v. Baker et al.*,

11  Case No. 17-15009 (9th Cir.), ECF No. 62 (order granting release pending the State's

12  petition for a writ of certiorari to the U.S. Supreme Court).

13          Courts across the country resoundingly agree:  inmates face a heightened risk

14  of contracting the virus compared with the general public.  *See, e.g.*, *United States v.*

15  *Raia*, 954 F.3d 594, 596 (3d Cir. 2020) (stating the virus "poses unique risks in

16  population-dense prison facilities").[1]

17

18          [1] *See also, e.g.*, *Gomes v. U.S. Dep't of Homeland Sec., Acting Sec'y*, Case No.
19  20-CV-453-LM, 2020 WL 2514541, at *4 (D.N.H. May 14, 2020) (stating "[p]risons
    and detention centers are particularly susceptible to the introduction and spread of
20  the virus," and collecting cases); *Mays v. Dart*, Case No. 20 C 2134, 2020 WL 1987007,
    at *28 (N.D. Ill. Apr. 27, 2020) ("[P]laintiffs are reasonably likely to succeed on their
21  contention that group housing or double celling of detained persons is objectively
    unreasonable given the immediate and significant risk to their life and health from
22  transmission of coronavirus."); *Basank v. Decker*, Case No. 20 CIV. 2518 (AT), 2020
    WL 1953847, at *5 (S.D.N.Y. Apr. 23, 2020) (stating "[t]he nature of detention
23  facilities makes exposure and spread of the virus particularly harmful," and collecting
    cases); *Cristian A.R. v. Decker*, Case No. CV 20-3600, 2020 WL 2092616, at *2 (D.N.J.
24  Apr. 12, 2020) ("[A]voiding exposure to COVID-19 is impossible for most detainees
    and inmates."); *Coreas v. Bounds*, Case No. CV TDC-20-0780, 2020 WL 1663133, at
25  *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially
    vulnerable to outbreaks of COVID-19."), *preliminary injunction granted*, 2020 WL
26  2292747 (D. Md. May 7, 2020); *Jones v. Wolf*, Case No. 20-CV-361, 2020 WL 1643857,
    at *8 (W.D.N.Y. Apr. 2, 2020) ("The petitioners also have shown that they face a
27  heightened risk of contracting COVID-19."); *United States v. Rodriguez*, Case No.

11

2:21-CV-00514-APG-EJY

A-19-195566-C

1      The novel coronavirus has infiltrated the prison population, and outbreaks are

2 likely to get much worse over time. The Federal Bureau of Prisons reported the first

3 death of an inmate due to COVID-19 back in March. *See* Walter Pavlo, "COVID-19

4 Takes Life of Federal Inmate in Louisiana," Forbes (Mar. 29, 2020), *available at*

5 https://bit.ly/2yDXwlQ (last visited Apr. 20, 2020). Hundreds of inmates and jail staff

6 members in New York City have contracted the disease. *See* David Brand, "At least

7 167 NYC inmates, 114 jail staffers now have COVID-19," Queens Daily Eagle (Mar.

8 30, 2020), *available at* https://bit.ly/39PeVoE (last visited Apr. 20, 2020). Overall, the

9 Marshall Project reports that, as of June 18, 2020, the number of people in prison

10 who have tested positive stands at 46,249 and there have been 521 inmate deaths.

11 "A State-by-State Look at Coronavirus in Prisons," The Marshall Project (June 18,

12 2020), *available at* https://bit.ly/3d1aidJ (last visited June 24, 2020).

13      Some prison systems—federal and state—have already been releasing inmates

14 early to mitigate the threat. *See, e.g.*, Paige St. John, "California to release 3,500

15 inmates early as coronavirus spreads inside prisons," Los Angeles Times (Mar. 31,

16 2020), *available at* https://lat.ms/2R6qpNX (last visited Apr. 20, 2020). Concerns

17 abound in other jurisdictions. *See, e.g.*, Douglas Berman, "Reviewing more headlines

18 from more states about coronavirus cases among prisoners and prison staff,"

19 Sentencing Law and Policy (Apr. 6, 2020), *available at* https://bit.ly/34eCciJ (last

20 visited Apr. 20, 2020).

21      Prisons in Nevada have taken some steps to mitigate the danger, but the

22 nature of incarceration makes it practically impossible for official to stop the spread.

23

24 2:03-CR-00271-AB-1, 2020 WL 1627331, at *8 (E.D. Pa. Apr. 1, 2020) ("Prisons are
   ill-equipped to prevent the spread of COVID-19."); *United States v. Barkman*, Case

25 No. 3:19-CR-0052-RCJ-WGC, 2020 WL 1811343, at *2 (D. Nev. Mar. 17, 2020) ("While
   measures are being taken by facilities all over the world, no facility is prepared.");

26 *Foster v. Comm'r of Correction*, 484 Mass. 698, __ N.E.3d __, at *13 (2020) (stating
   "there can be no real dispute that the increased risk of contracting COVID-19 in

27 prisons, where physical distancing may be infeasible to maintain, has been
   recognized by the CDC and by courts across the country," and collecting cases).

2:21-cv-00514-APG-EJY
A-19-795566-C

1   While prisons have modified their policies somewhat—for example, by eliminating

2   visits (see, e.g., Ricardo Torres-Cortez, "Coronavirus precaution:   Visitations at

3   Nevada prison facilities halted," Las Vegas Sun (Mar. 7, 2020), *available at*

4   https://bit.ly/2QTA8ak (last visited Apr. 8, 2020); *see also Rose v. Baker et al.*, Case

5   No. 17-15009 (9th Cir.), ECF No. 60 (attaching memorandum from Charles Daniels,

6   director of the Nevada Department of Corrections))—it's only a matter of time before

7   an outbreak occurs. Even assuming prisons follow mitigation protocols to the letter

8   (which is likely a generous assumption), there's no way the protocols will reduce the

9   risk enough to make the pandemic unextraordinary and a grave and heightened

10  threat to inmates. *See, e.g., Prieto Refunjol v. Adducci*, Case No. 2:20-CV-2099, 2020

11  WL 2487119, at *18 (S.D. Ohio May 14, 2020) ("While the virus's infectious spread

12  may be mitigated by the prophylactic measures that [the jail] has taken, Respondents'

13  evidence does not engender confidence that [the jail] remains safe for high-risk

14  detainees."), *reconsideration denied*, 2020 WL 3026236 (S.D. Ohio June 5, 2020).[2]

15      Indeed, the initial outbreak may be beginning as the Nevada Department of

16  Corrections reported its first positive test result for an inmate at High Desert State

17  Prison on May 22. Jeff Mosier, "Nevada Prisons to Start Widespread Coronavirus

18  Testing," Las Vegas Review-Journal (May 26, 2020) ("Prison Testing"), *available at*

19

20      [2] *See also, e.g., Ruderman v. Kolitwenzew*, Case No. 20-CV-2082, 2020 WL
21  2449758, at *12 (C.D. Ill. May 12, 2020) ("However, as other courts have found, the
    CDC's guidelines, while important, are not dispositive standing alone."); *Bent v. Barr*,
22  Case No. 19-CV-06123-DMR, 2020 WL 1812850, at *6 (N.D. Cal. Apr. 9, 2020)
    ("[E]ven assuming that Respondents accurately describe [the detention center's]
23  current practices, these practices are inadequate to ensure the 'safety and general
    wellbeing' of [the] detainees during the COVID-19 pandemic."); *Rafael L.O. v.*
24  *Tsoukaris*, Case No. CV 20-3481 (JMV), 2020 WL 1808843, at *8 (D.N.J. Apr. 9, 2020)
    ("[T]here are certain realities that neither [the prison] or ICE can overcome."); *Malam*
25  *v. Adducci*, Case No. 20-10829, 2020 WL 1672662, at *8 (E.D. Mich. Apr. 5, 2020), *as*
    *amended* (Apr. 6, 2020) ("Though the CDC has recommended public health guidance
26  for detention facilities, and though the [prison] has indeed implemented measures
    designed to prevent spread of the disease, these measures are inadequate to
27  sufficiently decrease the substantial likelihood that Petitioner will contract COVID-
    19.").

2:21-CV-00514-APG-EJY
A-19-795566-C

1  https://bit.ly/2M0K8Im (last visited May 26, 2020). The number for all inmates was
2  up to 18 on July 16, 2020. "Facilities with Reported COVID_19 Cases," Nevada Dep't
3  of Health and Human Services, *available at* https://bit.ly/3cBC6o2 (last visited July
4  16, 2020) (sort by facility type "Correctional"). The number for High Desert has now
5  reached 12. There have also been positive results for inmates at Ely State Prison,
6  Northern Nevada Correctional Center, Southern Desert Correctional Center,
7  Tonopah Conservation Camp, and Lovelock Correctional Center. *Id.* This is now in
8  addition to 49 prison staff members at various facilities testing positive. *Id.* There
9  may be other staff members or inmates who have the disease but haven't received a
10 positive result yet, and thus a serious outbreak might be right around the corner. In
11 fact, the number of infected is probably significantly higher as the Department of
12 Corrections has acknowledged that, until recently, it has only tested a small number
13 of inmates. Katelyn Newberg, "Low number of coronavirus tests in Nevada prisons
14 questioned," Las Vegas Review-Journal (May 14, 2020), *available at*
15 https://bit.ly/2LZueBQ (last visited May 26, 2020).[3]

16      This is critical here. Even if there isn't an outbreak yet, and even if the prison
17 is trying to stop infected or symptomatic staff members from entering the facility, a
18 staff member could still have the disease, be asymptomatic (or pre-symptomatic), but
19 still be contagious; if that person enters the prison, they may unwittingly spread the
20 virus. Due to the nature of incarceration, that is a near certainty.

21      In fact, the current conditions around the country show how quickly the
22 situation is deteriorating within the prison population. Timothy Williams, Libby
23 Seline and Rebecca Griesbach, "Coronavirus Cases Rise Sharply in Prisons Even as
24 They Plateau Nationwide," N.Y. Times (June 16, 2020), *available at*
25

26      [3] On May 26, 2020, the Department of Corrections announced it would begin
   widespread testing in prisons. *See* Prison Testing. This will hopefully provide insight
27 into the extent of any possible outbreak in the Nevada prison system. As of June 25,
   2020, there has been no public statement about the results of any further testing.

14

2:21-cv-00514-APG-EJY

A-19-795566-C

1   https://nyti.ms/2BgRr0g (last viewed June 19, 2020).  The cases of coronavirus in

2   prisons have soared in recent weeks. *Id.*  The number of prison inmates with

3   confirmed cases has doubled during the past month and the number of deaths has

4   also risen by 73 percent since mid-May. *Id.* "Public officials have long warned that

5   the nation's correctional facilities would most likely become vectors in the pandemic

6   because they are often overcrowded, unsanitary places where social distancing is

7   impractical, bathrooms and day rooms are shared by hundreds of inmates, and access

8   to cleaning supplies is tightly controlled." *Id.*

9         Thus, given the exponential growth of infections throughout the world,

10   throughout the country, throughout Nevada, and now throughout the prison

11   population—it's highly likely Nevada prisons will begin suffering major outbreaks in

12   the all-too-near future. It is clear the pandemic and its risk to Mr. Anderson presents

13   a special circumstance.

14         This is particularly true for Mr. Anderson. Mr. Anderson was diagnosed with

15   Kimura Disease (KD), an immune system disorder, in 2013. SDCC has treated Mr.

16   Anderson's KD with prednisone for the past three years. This treatment puts him at

17   a higher risk if he is infected with COVID-19. *See* "Individuals taking class of steroid

18   medications at high risk for COVID-19," Endocrine Society, *available at*

19   https://www.endocrine.org/news-and-advocacy/news-room/2020/individuals-taking-

20   class-of-steroid-medications-at-high-risk-for-covid (last visited July 7, 2020).

21   Individuals taking corticosteroids "may be more susceptible to COVID-19 as a result

22   of the medication suppressing the immune system. They may also experience more

23   severe disease once infected because these medications suppress their own steroid

24   response to infection." *Id.*

25         Additionally, Mr. Anderson could be at higher risk because he is borderline

26   diabetic. The illness is more severe for individuals with diabetes. *Id.* He is borderline

27

15

2: 21- CV -00514- APG- EJy

A-19-795566-c

1   diabetic due to his obesity, which also increases his risk of severe illness from COVID-
2   19. *See* "People of Any Age with Underlying Medical Conditions," U.S. Centers for
3   Disease Control and Prevention, *available at* https://www.cdc.gov/coronavirus/2019-
4   ncov/need-extra-precautions/people-with-medical-
5   conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%
6   2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#obesity
7   (last visited July 7, 2020). Finally, Mr. Anderson is African American, and the CDC
8   recognizes that "[l]ong-standing systemic health and social inequities have put some
9   members of racial and ethnic minority groups at increased risk of getting COVID-19
10  or experiencing severe illness, regardless of age." *See* "COVID-19 in Racial and Ethnic
11  Minority Groups," U.S. Centers for Disease Control and Prevention, *available at*
12  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-
13  minorities.html (last visited July 7, 2020). Based on Mr. Anderson's medical issues,
14  he has an increased risk of developing a severe illness.

15  **B.   Substantial question of law with a clear case on the merits**

16          The issue in the petition is obviously substantial. The novel question in the
17  petition is whether the heightened and inexorable danger of death or serious illness
18  from the COVID-19 virus while in prison represents a cruel, unusual and
19  disproportionate punishment in violation of the State and Federal Constitutions. As
20  shown above, the pandemic is an extraordinary circumstance creating new challenges
21  for our society to address.   One of those is the inevitable outbreak of the virus in
22  prisons, where the danger of spread is heightened due to the nature of incarceration.
23  The danger represents an additional punishment, raising serious constitutional
24  questions.

25          Mr. Anderson has a clear case on the merits of this issue. The Eighth
26  Amendment provides: "Excessive bail shall not be required, nor excessive fines
27  imposed, nor cruel and unusual punishments inflicted." Under this provision, a

16

2:21-cv-00514-APG-EJy
A-19-795566-C

1   "sanction imposed cannot be so totally without penological justification that it results

2   in the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 182–83

3   (1976). Therefore, once a judge or a jury has determined the appropriate punishment

4   for a crime, additional punishment for the same crime would violate the Eighth

5   Amendment. *Cf. Foster v. Florida*, 537 U.S. 990, 993 (2002) (Breyer, J., dissenting

6   from denial of certiorari) (discussing Eighth Amendment problem presented by

7   inmate suffering "more than a generation spent in death row's twilight" in addition

8   to death sentence); *Lackey v. Texas*, 514 U.S. 1045 (1995) (Stevens, J., memorandum

9   respecting denial of certiorari). The Nevada Constitution also prohibits "cruel or

10  unusual" punishment. *See* Nev. Const. art. 1, § 6.   By its very terms, the state

11  constitutional protection, written in the conjunctive, would appear to be broader than

12  its federal counterpart.

13         A sentence also violates the Eighth Amendment if it is grossly disproportionate

14  to the crime.  *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991); *Solem v. Helm*, 463

15  U.S. 277, 296-97 (1983).

16         Mr. Anderson is already serving the sentence that has been deemed

17  appropriate and constitutional. It is the sentence imposed by the judge and reflected

18  in the judgment.   However, because of the current global pandemic, he is facing

19  additional, unjustified punishment, namely the threat of death or serious illness and

20  the extreme anguish of having the inability to prevent contracting the virus. Mr.

21  Anderson was not convicted of a crime for which death or serious illness is a

22  justifiable punishment.

23         Inmates face the ever-present risk and attendant fear that they will be exposed

24  to and contract the virus. Their risk is greater than that of the general public. There

25  is an additional risk and fear for an individual like Mr. Anderson who is particularly

26  vulnerable to the virus due to his health condition. The prison environment creates

27  an existential and ongoing threat to inmates for which there are insufficient

17

2:21-cv-00514-APG-EJY

A-19-795566-C

1   mitigation measures to prevent spread. The result of contagion and serious illness is

2   unconscionable for an inmate such as Mr. Anderson who is approaching his release

3   date and was not convicted of one of the more serious felonies. *See* NRS 207.012(2)

4   (Mr. Anderson's conviction is not listed among serious felonies for which habitual

5   treatment is non-discretionary).    The virus will interfere with his legitimate

6   expectation that he will complete his term of incarceration and be released.    The

7   situation here is unprecedented and exceptional.

8           These circumstances constitute a separate and disproportionate punishment

9   from the originally imposed incarceration. The Supreme Court has recognized that a

10  prisoner can face punishment beyond an imposed sentence due circumstances of the

11  incarceration. See *In re Medley*, 134 U.S. 160, 171 (1890) (recognizing time spent in

12  solitary confinement awaiting execution as "an additional punishment of the most

13  important and painful character"); *cf. Davis v. Ayala*, 135 S. Ct. 2187, 2209 (2015)

14  (Kennedy, J., concurring) (discussing years in solitary confinement as an "added

15  punishment").

16          First, Mr. Anderson faces an added punishment because prisoners are

17  confronted with an unprecedented health risk that could result in severe

18  consequences, including death. Mr. Anderson was not sentenced to death. Such a

19  sentence would not be justified and clearly would be disproportionate. *See, e.g.,*

20  *Enmund v. Fla.*, 458 U.S. 782, 797 (1982). The second factor of the punishment is the

21  fear attendant with the high risk to Mr. Anderson's health, which is amplified by his

22  lack of control and inability to protect himself from the virus. He faces extreme

23  uncertainty as to his fate. *Cf. In re Medley*, 134 U.S. 160, 172 (1890) ("[W]hen a

24  prisoner sentenced by a court to death is confined in the penitentiary awaiting the

25  execution of the sentence, one of the most horrible feelings to which he can be

26  subjected during that time is the uncertainty during the whole of it."); *Glossip v.*

27  *Gross*, 135 S. Ct. 2726, 2765 (2015) (Breyer, J., dissenting) ("The dehumanizing effect

18

2:21-CV-00514- APG-EJY

A-19-795566-C

1    of solitary confinement is aggravated by uncertainty as to whether a death sentence

2    will in fact be carried out.").

3         There can be no penological justification for this additional punishment. The

4    judge who sentenced him already weighed the appropriate sentence that was justified

5    by the crimes. Mr. Anderson has done nothing to allow the additional punishment

6    they now face. Incarceration under these circumstances results in excessive and

7    disproportionate punishment.

8         Continued incarceration of Mr. Anderson given the risk to his health and life,

9    beyond prison officials' ability to prevent, and the mental anguish that results "is

10   nothing more than the purposeless and needless imposition of pain and suffering and

11   hence an unconstitutional punishment." *Atkins v. Virginia*, 536 U.S. 304, 319 (2002)

12   (internal quotation marks and citation omitted). It therefore violates the Eighth

13   Amendment.

14        This claim is appropriately brought in a habeas petition. The situation here is

15   exceptional.   The COVID-19 pandemic is a new punishment to incarcerated

16   individuals. The virus is an existential threat in prison beyond prison officials' ability

17   to stop. The prison environment, on its own, no matter what mitigating steps prison

18   officials may take, is creating the new punishment.  It is the nature and fact of

19   incarceration that is creating the new punishment. Thus, the issue here is not about

20   prison officials' failure to protect an inmate from a harm.  In this regard it is

21   distinguishable from those cases that bars prison administration issues from

22   litigation in habeas petitions. *See, e.g., Bowen v. Warden*, 100 Nev.489, 490, 686 P.2d

23   250, 250 (1984) (holding that challenges to conditions of confinement cannot be raised

24   in a habeas corpus petition). To the contrary, the ongoing danger from the virus goes

25   straight to the question of the legality of continuing confinement in the face of that

26   threat. *Cf. Director, Nev. Dep't of Prisons v. Arndt*, 98 Nev. 84, 86, 640 P.2d 1318,

27   1319 (1982) (observing that this court has "consistently held that use of the

19

2:21-CV-00514-APG-EJY
A-19-795566-C

1   extraordinary writ [of habeas corpus] is warranted only to challenge present custody
2   or restraint and the legality of that confinement").

3        Once again, the constitutional violations are acute for those, like Mr. Anderson,
4   who have been convicted of less serious felonies and have an upcoming release date.
5   He has a legitimate expectation of release from prison. It is inequitable to fail to
6   remedy the continuing harm to petitioners who face the danger of dying or serious
7   illness so close to their eligibility for release.

8        This establishes a clear case on the merits of the constitutional claim.

9   **C.    There are no procedural issues with the petition**

10        Preliminarily, the petition was filed in the proper jurisdiction.  The petition
11   challenges the constitutionality of the judgment of conviction and sentence and it was
12   filed in the judicial district in which the judgment was entered.

13        The petition is also not procedurally barred. To be sure, the petition is both
14   successive and filed outside the relevant one-year time period. But Mr. Anderson
15   clearly has good cause for filing this petition now. The claim is based on newly
16   discovered evidence. The legal claim is that Mr. Anderson is facing a new punishment
17   as a result of the coronavirus pandemic.  The virus was first detected in the Wuhan
18   province of China in December 2019.  WHO Timeline – COVID-19, *available at*
19   https://bit.ly/2YemGlA (last visited June 19, 2020).  The first known case of the virus
20   in the United States was January 21, 2020.   Erin Schumaker, "Timeline: How
21   coronavirus    got    started,"    ABC   News   (April   23,   2020),   *available    at*
22   https://abcn.ws/2Cp2UeE (last visited June 19, 2020). The first known case of the
23   virus in Nevada was February 24, 2020. *See* Southern Nevada Health District
24   COVID-19 dashboard, available at https://bit.ly/2V0ZncM (last visited June 19,
25   2020). The claim has been brought within one year of the discovery of the factual
26   predicate of the claim, which could not have been discovered previously through the
27   exercise of due diligence. *See Rippo v. State*, 131 Nev. 95, 110-11, 368 P.3d 729, 739-

20

2:21-CV-00514-APG-EJY

40 (2016). Furthermore, Mr. Anderson can establish prejudice for the reasons discussed in subsection B.

**D.     Mr. Anderson is a good candidate for release**

Mr. Anderson is a good candidate for release as he is within 14 months of his September 1, 2021 release date, committed a non-serious felony, and has a release plan. As fully explained by Tammy Smith in her Declaration, attached as Exhibit 3 to the petition, Mr. Anderson would move in with his mother, Doris Anderson, if released. Ms. Anderson has owned her home in Las Vegas for 17 years and would welcome her son into her home. Mr. Anderson's sister, Sharon Anderson, would also support Mr. Anderson upon his release by providing transportation, financial assistance, and emotional support.

The extraordinary circumstances justify that this motion be granted and that reasonable bail be set so that Mr. Anderson can be released.

**E.     Conclusion**

For the reasons stated herein, Mr. Anderson's motion for release and/or bail pending the decision on his petition should be granted.

Dated July 17, 2020.

Respectfully submitted,



2:21-CV-00514-APG-EJY

1   **CERTIFICATE OF SERVICE**

2     I hereby certify that on July 17, 2020, I electronically filed the foregoing with

3   the Clerk of the Eighth Judicial District by using the Court's electronic filing system.

4     Participants in the case who are registered users in the electronic filing

5   system will be served by the system and include: Steven B. Wolfson,

6   Steven_Wolfson@clarkcountyda.com, Motions@clarkcountyda.com.

7     I further certify that some of the participants in the case are not registered

8   electronic filing system users. I have mailed the foregoing document by First-Class

9   Mail, postage pre-paid, or have dispatched it to a third party commercial carrier for

10  delivery within three calendar days, to the following person:

11    Anthony Anderson
  No. 1082999
12    Southern Desert Correctional Center
  PO Box 208
13    Indian Springs, NV 89070

14

15  

16

17

18

19  

20

21

22

23

24

25

26

27

22

AnThony K AndERson
          plaintiff

VS.

State of NEVADA
DepartmEnt of corrEctions

DiR of PRison
Jayes Dzurenda et.al

warden
Jerry Howell et. al.

DR Henry landsyan

Sonya cotrillo
          Defendants

| |
|---|
| 1) District Court |
| Clark County NEVADA |
| u.s. Dist#. 2-21-cv-00514-APG-EJY |
| Case # A-19-795566-C |
| 2) Dept # XI |

Newly Discovered

\#1   DeClaration of DR Kaien GEDNEY
\#2   EXPERENCE of DR Kaien GEDNEY
\#3   Subpoena - civil DucES Tecuy

INDex  of  exhibits  In Support
        of   Newly  Discovered
Claims #1 #2) AND The Facts
Found Here Deey The PRison
HealTh CaRe SysTey DeFicient
In violation of plaintiff Constitutional Rights
PuRsuant To  A.D.A  42. USC. (6) 12101-12213

Newly Discovered

INDex of Exhibits

#1  DR Karen GEDney

#2  ExPERence  DR GEDney

#3  Subpoena  civil  Duces Tecum

| No. | DATE | DOCUMENT | COURT | CASE # |
|-----|------|----------|-------|--------|
| 1. | 06/09/2020 | Declaration of Dr. Karen Gedney | N/A | N/A |
| 2. | (undated) | Curriculum Vitae of Karen Gedney | N/A | N/A |
| 3. | 07/07/2020 | Declaration of Tammy R. Smith Regarding Doris Anderson | | |

DATED July 9, 2020.

Respectfully Submitted,

Rene L. Valladares
Federal Public Defender

*/s/ Megan Hopper-Rebegea*
MEGAN HOPPER-REBEGEA
Assistant Federal Public Defender

2

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2020, I electronically filed the foregoing with the Clerk of the Eighth Judicial District by using the Court's electronic filing system.

Participants in the case who are registered users in the electronic filing system will be served by the system and include: Steven B. Wolfson, Steven_Wolfson@clarkcountyda.com, Motions@clarkcountyda.com.

I further certify that some of the participants in the case are not registered electronic filing system users. I have mailed the foregoing document by First-Class Mail, postage pre-paid, or have dispatched it to a third party commercial carrier for delivery within three calendar days, to the following person:

Anthony Anderson
No. 1082999
Southern Desert Correctional Center
PO Box 208.
Indian Springs, NV 89070

*/s/ Adam Dunn*
An Employee of the Federal Public
Defender, District of Nevada

## Declaration of Dr. Karen Gedney

1.    I am a doctor licensed to practice in the State of Nevada.

2.    I worked at the Nevada Department of Corrections for 30 years. I retired as a senior physician and before that was the chief resident for the Internal Medicine Program at the University of Nevada Medical Program. As a result, I have extensive experience working with vulnerable populations, in particular the incarcerated.

3.    After retiring from the Nevada Department of Corrections, I founded DRG Consulting, LLC, for which I am the sole proprietor. I give presentations on holistic prison reform and have spoken at universities, correctional associations, community service groups, political groups, and book clubs, etc.

4.    I blog about issues related to prisons in newspapers and many of my blogs are available on my website, DiscoverDrG.com.

5.    I'm a board member of The Ridge House, which is a non-profit organization whose mission is to help individuals involved with the criminal justice system with residential housing as well as wrap around medical and psychological services.

6.    I submit this Declaration in support of NDOC inmates seeking release during the COVID-19 pandemic.

7.    When I first started my career at NDOC in 1987, I battled a different virus, HIV. HIV killed many young men before drugs were discovered that work. COVID-19 has the potential and be more dangerous. Unlike HIV, medical and custody staff can bring COVID-19 into their homes and community thru casual contact.

8.    Prisons are more susceptible to the spread of the highly contagious, novel COVI-19. Due to the nature of incarceration, the steps the rest of society can take to slow the spread of the disease are simply not possible in prisons.

9.    Social distancing is not possible in prison, where 120 men sleep in one room, share 10 toilets, one urinal, and 12 showers, assuming they are all working, which is rare.

10.    The prison can promote washing hands, but many inmates will not be able to afford their own soap. While NDOC is now providing soap at every facility for free, the bar of soap the prison provided when I worked there was three inches long, and less than two nickels thick. For the amount of hand washing necessary, it won't last long.

11.    Inmate sanitation teams can use bleach to clean surfaces, but bleach is a popular commodity in prison and may ended up being sold instead of used for cleaning. Similarly, hand sanitizer is a necessary tool, but it was banned when I

# EXHIBIT 1

# EXHIBIT 1

worked for NDOC because of the high alcohol content and the concern that inmates would drink it, not use it for its intended purpose.

12.     COVID-19 affects older populations more severely. Incarcerated men and women are 10 years older than their chronological age because of their lifestyle choices. The inmate population overall has more heart and lung problems.

13.     Stress, poor nutrition, and lack of quality sleep are common in prison and they all affect the inmates' ability to fight the virus.

14.     The NDOC does not have the resources necessary if there is an outbreak. Each prison only has a limited number of medical beds. The Northern Nevada Correctional Center, where I worked, is the only institution with a regional medical facility. It has 60 medical beds and 60 psychiatric beds for a state population of 13,000 inmates. There is no ability at any institution to take care of inmates who need a ventilator or ICU care. Any inmate who needs that type of care must be sent to an outside hospital with usually two custody officers in attendance.

15.     While the NDOC has recently begun widespread testing, the results of that testing won't be known until a significant portion of the inmate population is tested. Given the delay in undergoing such widespread testing, the results are likely to reveal multiple positive tests across several, if not all, institutions. Thus, it's possible an initial outbreak may just be beginning.

16.     The only real way to mitigate the spread of the disease within the prison to inmates and staff alike is to decrease the number of incarcerated individuals.

     I declare under penalty of perjury that the forgoing statement is true. This statement was executed in Carson City, Nevada on June ___9___, 2020.

_____          _Karen Gedney_
Karen Gedney, MD

2

# EXHIBIT 2

# EXHIBIT 2

Karen Gedney MD
karen@discoverdrg.com
775-720-8611

## EXPERIENCE

| | |
|---|---|
| Consultant for DRG Consulting, LLC, author, speaker | 2017-present |
| Senior Physician Nevada Department of Corrections | 1987-2016 |
| Chief Resident, University of Nevada Reno | 1986-1987 |
| Microbiology Supervisor, Los Gatos Labs, California | 1979-1980 |

## EDUCATION

| | | |
|---|---|---|
| M.D. | Board Certified Internal Medicine | 2010, 2000, 1990 |
| M.D. | Board Certified Anti-aging and Regenerative Medicine | 2017 |
| M.D. | University of Cincinnati Medical School | 1980-1984 |
| B.A. | Clark University, Massachusetts | 1975-1979 |

## AWARDS

| | |
|---|---|
| Service to Society Award, Clark University, MA | 2019 |
| Best in the Business, American Correctional Association | 2002 |
| Nevada Heroes for Humanity Award | 2000 |
| National Health Service Corps Directors Award | 1991 |
| Director's Award, Nevada Department of Corrections | 1990 |

## PUBLICATIONS

| | |
|---|---|
| Memoir, '30 Years Behind Bars,' Trials of a Prison Doctor | 2017 |

## AFFILIATIONS

| | |
|---|---|
| Board Member of The Ridge House, Transitional  housing and wrap around psych and medical services for formerly incarcerated | 2017-present |
| Mentor for Big Brother Big Sister Organization | 2010-present |
| Advisor for Carson Tahoe Hospital Tumor Board | 2009-present |

EXPERTISE

Medical Expert in Court Cases
30 years of experience in testifying in court for the Nevada Attorney General's Office

Speaker
Presenter on issues related to prison reform.
Presenter on HIV and hepatitis in the past for Bristol Myers Squibb, Boehringer Ingelheim, Vertex and Gilead.

Teacher
Instructor for continuing medical education for medical and custody staff in the Nevada Department of Corrections.
Precepted physician assistants and nurse practitioners in the Nevada Department of Corrections.
Developed and taught substance abuse and life skill courses to the inmates in the Nevada Department of Corrections as a volunteer.

For more information check out

www.discoverdrg.com

www.linkedin.com/in/karen-gedney-md-dr-g-4314a497

_Declaratory_

## E. REQUEST FOR RELIEF

I believe that I am entitled to the following relief:

#1 Declaratory Judgment a Foryal Proclamation of Reinstatent of all lost work Days Due To Not working as a Result of (Kiyuta's Desease) Starting From Oct 18th 2013. Causing a Recalculation of The lost 72 Days a year. Due To S.D.C.C. Not Allowing Pleintiff To work But in Return Extorts 72 Days a year. For Not working AND "Full Medical Dental AND Vision "SSI Prepained" By S.D.C.C.

I understand that a false statement or answer to any question in this complaint will subject me to penalties of perjury. **I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.** See 28 U.S.C. § 1746 and 18 U.S.C. § 1621.

Anthony Kennith Anderson
(Name of Person who prepared or helped prepare this complaint if not Plaintiff)

MR Anthony Kennith Anderson
(Signature of Plaintiff)
May 5th 2021
5-5-2021
(Date)

- - - - - - - - - - - - - - - - - - - - - - - - - -
(Additional space if needed; identify what is being continued)

SEE Request For Monatary Relief NEXT Page

49

Monatary

**D.   REQUEST FOR RELIEF**

I believe I am entitled to the following relief: #2 Just Compensation

For Claims #1 Through #4 with-out

Qunitive Damages Ten Million US Dollors

$10,000,0000.00 Plaintiff is open For

Negotiable Instrument a Nun-Disclosure

Settlement OFFER Including Conditional Promise

In ORDER To Pay a Specified Sum OF MONey's

Under The Color oF law in good Faith with Good Cause Shown

I understand that a false statement or answer to any question in this complaint will subject me to penalties of perjury. **I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.** *See* 28 U.S.C. § 1746 and 18 U.S.C. § 1621.

Mr Anthony Kennth Anderson          Anthony Kennth Anderson
(name of person who prepared or helped          (signature of plaintiff)
prepare this complaint if not the plaintiff)

5-5-2021
(date)

May 5th 2021

50

c)   The case was dismissed because it was found to be (check one): _____ frivolous _____ malicious or _____ failed to state a claim upon which relief could be granted.

d)   Issues raised: _Successive_ _9th Circuit Granted_ _The Successive Petition (COA)_

e)   Approximate date it was filed: _December 19, 2016_

f)   Approximate date of disposition: _Oct TERM 2019_

Lawsuit #3 dismissed as frivolous, malicious, or failed to state a claim:

a)   Defendants: _State of NEV  N.D.O.C  Medical Dept_

b)   Name of court and case number: _2:14 CV 1610 - APG - CWA_

c)   The case was dismissed because it was found to be (check one): _____ frivolous _____ malicious or _✓_ failed to state a claim upon which relief could be granted.

d)   Issues raised: _N.D.O.C  Failed To Supplie Adquet_ _And Timly Health Care Froy Oct 13 2013 until 2017_

e)   Approximate date it was filed: _Winter/Spring 2014_

f)   Approximate date of disposition: _Summer 2014_

3)   Have you attempted to resolve the dispute stated in this action by seeking relief from the proper administrative officials, e.g., have you exhausted available administrative grievance procedures? _✓_ Yes ____ No. If your answer is "No", did you not attempt administrative relief because the dispute involved the validity of a: (1) ____ disciplinary hearing; (2) ____ state or federal court decision; (3) ____ state or federal law or regulation; (4) ____ parole board decision; or (5) ____ other _Requested Civil Case Disposition_ _# A-19-795566-C_
If your answer is "Yes", provide the following information. Grievance Number _# 2006309964_
_# 2006309454_
Date and institution where grievance was filed _Southern Desert CTN_

Response to grievance: _Grievance Codinator B Gutikke_
_And M Miney Change The Subject Matter_
_Of Both Grievances And Never Address plaintiff Issues._
_(While Rule 60(b) of # A-19-795566-C was Pending_
_plaintiff Filed Notice Of Removal at [I-I])_

51

9)  Have you filed other actions in state or federal courts involving the **same or similar facts** as involved in this action? Circle one: Yes or No. If your answer is "Yes," describe each lawsuit. (If more than one, describe the others on an additional page answering the following questions.)

a)  Defendants: *State of NEV. 8th District courts*

b)  Name of court and docket number: *U.S. District Court # 2:12-CV-0167-MHD*

c)  Disposition (for example, was the case dismissed, appealed or is it still pending?):
*Dismissed  Heck v. Humphere  Issue's*

d)  Issues raised: *Unconstitutional Conviction  False Imprison  that  witness's against me were not credable*

e)  Approximate date it was filed: *Summer 2012*

f)  Approximate date of disposition: *Fall 2012*

10)  Have you filed an action in federal court that was dismissed because it was determined to be frivolous, malicious, or failed to state a claim upon which relief could be granted? Circle one: Yes or No. If your answer is "Yes," describe each lawsuit. (If you had more than three actions dismissed based on the above reasons, describe the others on an additional page answering the following questions.)

**Lawsuit #1 dismissed as frivolous, malicious, or failed to state a claim:**

a)  Defendants: *State of NEV.  N.D.O.C  Medical Dept*

b)  Name of court and case number: *2:13-CV-02334 - JCM*

c)  The case was dismissed because it was found to be (circle one): (1) frivolous; (2) malicious; or (3) failed to state a claim upon which relief could be granted.

d)  Issues raised: *Medical Issue's  No Medication For Ill-Ness  After Tumor Removal Surgery*

e)  Approximate date it was filed: *2013*

f)  Approximate date of disposition: *2013*

52

outline).

a)  Defendants: _Brain williams, Romeo Aranas, Dwight NEVEN Rebecca Kzcloff Francisco Sanchez_

b)  Name of court and docket number: _District # A-17-761357-C [SC #78061_

c)  Disposition (for example, was the case dismissed , appealed or is it still pending?): _Appealed plaintiff NEVER Recieved His Day in court_

d)  Issues raised: _(Sgt Kozloff) not medical Staff Refused plaintiff Health care stating epik Pain Dosnt constitute an Emergency without Tumor knewlage Delay and Denial of Adquect and Tiedy Health care_

e)  Approximate date it was filed: _Some Time in 2017_

f)  Approximate date of disposition: _N.D.O.C. Tect NEVER allow Discovery [SDCC] Has 3 Attoneys: D'Randall Gilmer, Frank Toddre II, Matthew feely against plaintiff standing Alone_

2)  Have you filed an action in federal court that was dismissed because it was determined to be frivolous, malicious, or failed to state a claim upon which relief could be granted? ✓ Yes ____ No. If your answer is "Yes", describe each lawsuit. (If you had more than three actions dismissed based on the above reasons, describe the others on an additional page following the below outline.)

Lawsuit #1 dismissed as frivolous, malicious, or failed to state a claim:

a)  Defendants: _State of NEV. Dept of Corrections_

b)  Name of court and case number: _2:13-cv-716-APG-VCT_

c)  The case was dismissed because it was found to be (check one): ____ frivolous ____ malicious or ✓ failed to state a claim upon which relief could be granted.

d)  Issues raised: _Residental Confine ment Time UNDER NRS 209-4465 432 Days Not Granted_

e)  Approximate date it was filed: _2013_

f)  Approximate date of disposition: _mid Summer 2013_

Lawsuit #2 dismissed as frivolous, malicious, or failed to state a claim: _N/A_

a)  Defendants: _State of NEVada (Brain williams et al)_

b)  Name of court and case number: _2:16-cv-2215-APG-Pal_

53

## CERTIFICATE OF SERVICE

I, *mr Anthony Kenneth Anderson*, hereby certify that I am the Petitioner in this matter and I am representing myself *in propria persona*.

On this __5th__ day of __May__, __2021__, I served copies of the __Clerk of United States District Court, District of Nev. 333 Las Vegas Blvds So-744 1334 Las Vegas Nev 89101__, in Case No. __00514-APG-EJY__, and placed said document(s) in the United States Mail, first-class postage prepaid, addressed as follows:

*Clerk of Court*
*US. Dist Court Dist of Nev,*
*Lloyd D. George U.S. Court House*
*333 Las Vegas Blvd So-744 1334*
*Las Vegas Nev. 89101*

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the Petitioner in the above-entitled action, and he has read this Certificate of Service and the information contained therein is true and correct.

Executed pursuant to 28 U.S.C. § 1746 and 18 U.S.C. § 1621 at __Southern Desert C.T.N__ on this __5th__ day of __May__, __2021__.

*Anthony K. Anderson*

NDOC No. **1082999**

Petitioner – *In Propria Persona*