1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ANTHONY K. ANDERSON,

Plaintiff,

v.

STATE OF NEVADA, *et al.*,

Defendants.

Case No.  2:21-cv-00514-APG-EJY

**ORDER**
**And**
**REPORT AND RECOMMENDATION**

RE: Second Amended Complaint
(ECF No. 25)

10

11

Before the Court is Plaintiff's Second Amended Complaint ("SAC"), which the Court screens pursuant to 28 U.S.C. § 1915A(a).

12

**I.    The Screening Standard**

13

14

15

16

17

18

19

20

21

22

23

When screening a complaint, the Court must identify cognizable claims and dismiss claims that are frivolous, malicious, fail to state a claim on which relief may be granted or seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  Dismissal for failure to state a claim under § 1915(e)(2) incorporates the standard for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).  To survive § 1915 review, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court liberally construes pro se complaints and may only dismiss them "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

24

25

26

27

28

In considering whether the complaint is sufficient to state a claim, all allegations of material fact are taken as true and construed in the light most favorable to the plaintiff.  *Wyler Summit P'ship v. Turner Broad. Sys. Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted).  Although the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

1

555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.* Unless it is clear the complaint's deficiencies cannot be cured through amendment, a pro se plaintiff should be given leave to amend the complaint with notice regarding the complaint's deficiencies. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

## II.    Plaintiff's Second Amended Complaint

The Court reviewed the allegations in Plaintiff's SAC to determine whether Plaintiff states a claim that may proceed against any of the 15 named defendants. Plaintiff's SAC alleges a violation of Title II of the Americans with Disabilities Act ("ADA") a potential false imprisonment claim, and a violation of the Eighth Amendment prohibition against cruel and unusual punishment.

### A.    The Americans with Disabilities Act Claim.

Title II of the ADA applies to prisons and incarcerated persons. *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206 (1998). However, a plaintiff cannot vindicate rights created by Title II of the ADA by asserting claims against defendants in their individual capacities under 42 U.S.C. § 1983. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). Instead, the proper defendant in a Title II claim is the public entity responsible for the alleged discrimination. *United States v. Georgia*, 546 U.S. 151, 153-54 (2006). In his SAC, Plaintiff asserts ADA claims against the State of Nevada (the "State"), the Nevada Department of Corrections ("NDOC" referred to by Plaintiff as the Bureau of Prisons), and various individual defendants.[1] To the extent Plaintiff names any individual defendants in his Title II ADA claim, these defendants should be dismissed with prejudice.

Title II of the ADA states: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a). Disability means: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such

---

[1]    On pages 5-6 of the SAC, Plaintiff appears to name James Dzurenda, Jerry Howell, Ms. Williams, Kimberly McCoy, L. Anderson, and Sonya Carrillo as additional defendants in his ADA claim. These individual defendants, as well as any others Plaintiff intended to name, but for some reason are not located in Plaintiff's ADA claim, must be dismissed with prejudice.

impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1); *see also Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 794 (9th Cir . 2001).

A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2); 28 C.F.R. § 35.104. Discrimination under Title II of the ADA includes a public entity's failure to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). A claim under Title II of the ADA thus requires a plaintiff to plead (1) he is an individual with a disability, (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities, (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability. *O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1060 (9th Cir. 2007) (internal quotation marks and citation omitted, alterations original).

Plaintiff alleges he suffers from Kimura's Diseases, a rare chronic inflammatory disorder that qualifies as a disability; that he is otherwise qualified to participate in and receive benefits related to prisoner work programs with a reasonable accommodation; he was excluded from participating in this program because of his disability; and that this resulted in a denial of work credit of 84 days a year that would shorten his period of incarceration. These factual allegations are sufficient to state a Title II ADA claim against the State and NDOC. Plaintiff's Title II ADA claims will therefore proceed against the State and NDOC.

B.    Plaintiff's False Imprisonment Claim.

Plaintiff appears to claim false imprisonment based on the denial of the opportunity to earn work credits resulting in a longer sentence than he would otherwise serve.  ECF No. 25 at 10. Unfortunately, it is unclear under what theory of law Plaintiff brings this claim. To the extent Plaintiff may be asserting false imprisonment as part of Plaintiff's ADA claim (*id*.), no further analysis is needed.  As stated above, Plaintiff may proceed on his Title II ADA claim against the State and NDOC.  However, if Plaintiff is attempting to bring false imprisonment under another theory (whether state or federal), his claim fails because the Court cannot discern what legal claim is asserted. *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to make "a general appeal to a constitutional guarantee," such as a bald reference to "due process," to a "constitutional error" or a "fair trial").

Moreover, as of the date of this Order, while Plaintiff alleges that Defendants Dzurenda, Howell, and McCoy, "by and through personal involvement … extended … [his] prison term by the unconstitutional removal of 84 days a year for not working" because of his disability, Plaintiff does not plead sufficient facts to support a false imprisonment claim.  Plaintiff does not allege facts (as opposed to conclusion) demonstrating that Dzurenda (the former Director of NDOC) or Howell (alleged to be the Southern Nevada Detention Center ("SNDC") warden) had actual knowledge of a refusal to allow Plaintiff to work, an accommodation denial that would have allowed Plaintiff to work, or the removal of the 84 days of credit about which Plaintiff complains.  ECF No. 25 at 7-10.  Further, if Plaintiff seeks to hold Dzurenda and Howell liable based on their overall responsibilities for NDOC and the SNDC, Plaintiff's claim fails because these defendants may only be held liable as supervisors under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury.  The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right." *Redman v. Cnty of San Diego*, 942 F.2d 1435,

1447 (9th Cir. 1991) (internal quotation marks omitted).  Plaintiff alleges no facts supporting a

causal connection between the decision to remove 84 days of credit from his time served and either

Dzurenda or Howell, but instead states the conclusion that these Defendants knew or should have

known of his illness, ADA requests made through grievances, a medical lay-in order, and his

requests for accommodation.  ECF No. 25 at 6.  With respect to Plaintiff's claim against McCoy,

who Plaintiff identifies as a CCS III, there is no individual liability under Title II of the ADA, and

Plaintiff does not even hint at whether he is asserting an attendant state law claim or constitution

claim against this defendant.  *Vinson*, 288 F.3d at 1156; *Shumway*, 223 F.3d at 987.

C.    Plaintiff's SAC States an Eighth Amendment Claim Against Certain Defendants in
      Their Individual Capacities.

To state an Eighth Amendment violation, Plaintiff "must satisfy both an objective

standard—that the deprivation was serious enough to constitute cruel and unusual punishment—

and a subjective standard—deliberate indifference."  *Snow v. McDaniel*, 681 F.3d 978, 985 (9th

Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).  As

explained in *Edmo v. Corizon, Inc*., 949 F.3d 489, 495 (9th Cir. 2020):

> a deliberately indifferent state of mind may be inferred when the course of treatment
> the doctors chose was medically unacceptable under the circumstances and "they
> chose this course in conscious disregard of an excessive risk to plaintiff's health.
> …   Yet even most objectively unreasonable medical care is not deliberately
> indifferent. [M]ere indifference, negligence, or medical malpractice is not enough
> to constitute deliberate indifference. … Even gross negligence is insufficient to
> establish deliberate indifference ... Likewise, [a] difference of opinion between a
> physician and the prisoner—or between medical professionals—concerning what
> medical care is appropriate does not amount to deliberate indifference.

(Internal quote marks and citations omitted.)  Thus, deliberate indifference at the very least requires

that a prison official be conscious of an excessive risk to a prisoner's health.  *Farmer v. Brennan*,

511 U.S. 825, 837 (1994) ("[A] prison official cannot be found liable under the Eighth Amendment

... unless the official knows of and disregards an excessive risk of health or safety; the official must

be aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference.").  "In a suit for prospective relief, the subjective

factor, deliberate indifference, "should be determined in light of the prison authorities' current

attitudes and conduct, their attitudes and conduct at the time suit is brought and persisting

thereafter.  In making the requisite showing of subjective culpability, the prisoner may rely on developments that postdate the pleadings and pretrial motions, as prison officials may rely on such developments to show that the prisoner is not entitled to an injunction." *Id.* (internal citation omitted).

However, the Eleventh Amendment bars Plaintiff's claims for damages against the named Defendants in their official capacities.  *See Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997); *Eaglesmith v. Ward*, 73 F.3d 857, 859 (9th Cir. 1996).  State officers acting in their official capacities receive the same immunity as the government agency that employs them. *Hafer v. Melo*, 502 U.S. 21 (1991).  Thus, a state prison official sued for damages in his or her official capacity is entitled to Eleventh Amendment immunity.

In order to prevail and recover damages against a prison official in his or her individual capacity, Plaintiff must prove (1) that the specific prison official, in acting or failing to act, was deliberately indifferent to the mandates of the Eighth Amendment, and (2) that this indifference was the actual and proximate cause of the deprivation of the inmate's Eighth Amendment right to be free from cruel and unusual punishment.  *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

Plaintiff's SAC states he is bringing his claim based on a "totality of the conditions" theory. ECF No. 25 at 11.  He further states he is bringing claims against Defendants in their individual and official capacities. *Id.* at 2.  Plaintiff alleges that "[h]is case has multiple conditions that add[] up to create a single identifiable harm." *Id.*  Plaintiff contends that his medical care was delayed and denied causing him pain and suffering. *Id.*  In the spring of 2012, Plaintiff discovered a knot growing under his right ear and lower face about which he filed over 15 medical requests, was not seen until sometime in 2013 after he felt weak, suffered a "severe migraine," sought emergency care, and was told by Defendant Rebecca Kozlof that "pain doesn't constitute an emergency." *Id.* at 11-13.  Sometime thereafter, Plaintiff lost consciousness and was "finally … sent for a biopsy" that found Kimura disease. *Id.* at 13.  By this time, Plaintiff states he had lost hearing in his right ear and had "badly damaged" facial glands. *Id.*  On October 13, 2013, Plaintiff underwent surgery, but within one year the lesions (identified by Plaintiff as tumors) returned. *Id.*  When Plaintiff complained to NDOC medical staff, Plaintiff was told by Dr. Aranas that the returned lesions were

scar tissue. *Id*. This persisted through 2014 and into 2015 when he became totally deaf in his right ear. *Id*. Plaintiff claims he requested medical treatment through June of 2017 because of the pain he was suffering, but that no pain medication was prescribed *Id*. Plaintiff further alleges that the "root" of his illness was not addressed again until March 2021. *Id*. at 14. Prednisone prescribed is alleged to have done further damage to Plaintiff. *Id*. 14-15.[2]

These facts sufficiently allege "deliberate indifference to [Plaintiff's] serious medical needs" constituting "the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Irrespective of Plaintiff's use of the "totality of the conditions" phrase, which may apply to overall conditions of confinement, Plaintiff clearly pleads a deliberately indifferent state of mind regarding his medical needs by Drs. Aranas, Landsman, and Kelly, as well as Rebeca Kozlof. That there may be others to whom Plaintiff intends this claim to apply, the Court cannot be sure as these are the only named defendants found in Plaintiff's Second Claim. Plaintiff's Eighth Amendment claim against Drs. Aranas, Landsman, and Kelly, as well as against Rebeca Kozlof in their individual capacities for money damages may proceed. No money damages are available for suits against individual state actors in their official capacities. *Sossamon v. Texas,* 563 U.S. 277, 293 (2011).

## III. Order

IT IS HEREBY ORDERED that Plaintiff's claim alleging a violation of Title II of the Americans with Disabilities Act shall proceed against the State of Nevada and the Nevada Department of Corrections.

IT IS FURTHER ORDERED that Plaintiff's Eighth Amendment claim against Dr. Romeo Aranas, Dr. Landsman, Dr. Kelly, and Rebeca Kozlof in their individual capacities for money damages shall proceed.

IT IS FURTHER ORDERED that the Clerk of the Court **shall** electronically **serve** a copy of this Order and a copy of Plaintiff's Second Amended Complaint (ECF No. 25) on the Office of

---

[2]     Plaintiff claims Dr. Landsman directed him to Dr. Kelly who first prescribed prednisone.

the Attorney General of the State of Nevada by adding the Attorney General of the State of Nevada to the docket sheet. This does **not** indicate acceptance of service.

IT IS FURTHER ORDERED that subject to the findings of this Screening Order (ECF No. 28), **within twenty-one (21) days of the date of entry of this Order**, the Attorney General's Office **shall** file a notice advising the Court and Plaintiff whether it accepts service on behalf of Dr. Aranas, Dr. Landsman, Dr. Kelly, and/or Rebeca Kozlof. If the Attorney General's Office does not or cannot accept service on behalf of any of these Defendants, then it **must** file **under seal**, and not serve Plaintiff, the defendant's last-known-address. If the last known address is a post office box, the Attorney General's Office shall attempt to obtain and provide the last known physical address.

IT IS FURTHER ORDERED that if the Attorney General's Office cannot accept service on behalf of any of these defendants, Plaintiff **must** file a motion requesting issuance of a second summons with any additional identifying information for these Defendants in Plaintiff's possession.

**IV.    Recommendation**

Based on the foregoing, IT IS HEREBY RECOMMENDED that Plaintiff's Second Amended Complaint (ECF No. 25) asserted against any individual named defendant be dismissed **with prejudice**.

IT IS FURTHER RECOMMENDED that Plaintiff's Eighth Amendment claim against Drs. Aranas, Landsman, and Kelly, and Rebeca Kozlof, in their official capacities, be dismissed **with prejudice**.

IT IS FURTHER RECOMMENDED that Plaintiff's false imprisonment, if intended to be asserted as a separate claim, be dismissed **without prejudice** and with leave to amend.

IT IS FURTHER RECOMMENDED that Plaintiff be allowed to file a third amended complaint; however, that he not be permitted to do so until pro bono counsel is identified and makes an appearance on his behalf.

Dated this 4th day of January, 2022.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

## **NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).