UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Anthony K. Anderson,<br><br>　　　　　Plaintiff<br><br>　v.<br><br>Nevada Department of Corrections, et al.,<br><br>　　　　　Defendants | Case No. 2:21-cv-00514-CDS-EJY<br><br>**Order Granting Defendant's<br>Motion to Dismiss**<br><br>[ECF No. 66] |

　　　　This is a 42 U.S.C. § 1983 action. Plaintiff Anthony K. Anderson brings an Eighth Amendment claim for deliberate indifference to serious medical needs against defendants Timothy Kelly, M.D. ("Dr. Kelly"), a Rheumatology physician, the Nevada Department of Corrections ("NDOC"), Rebeca Kozloff, an NDOC corrections officer, and the following medical care providers: Henry Landsman, M.D. ("Dr. Landsman"), Romeo Aransas, M.D., and Sonya Carrilo, R.N. ECF No. 48 at 15–16. Specifically, Anderson alleges that Dr. Kelly's 2017 prescription for Prednisone to reduce inflammation in his face was far too high a dosage and that such conduct violated Anderson's rights to receive proper medical care while incarcerated. *Id.* Anderson also alleges that the State of Nevada and NDOC discriminated against him in violation of the Americans with Disabilities Act of 1990 (ADA). *Id.* at 16–18. Defendant Dr. Kelly filed a motion to dismiss the lone claim against him: the claim for deliberate indifference. ECF No. 66. For the following reasons, I grant Dr. Kelly's motion to dismiss.

I.　　**Procedural background**

　　　　Anderson, who is incarcerated in the custody of NDOC at the Southern Desert Correctional Center, originally filed a pro se complaint in the Eighth Judicial District Court of Clark County, Nevada on January 30, 2020. ECF No. 1-1. This complaint was dismissed with prejudice on March 4, 2021 for failing to state a claim for violation of the Eighth Amendment,

failing to state a claim for fraud, and failing to state a claim for the violation of Title II of the ADA. *Id.*

Later, on March 29, 2021, Anderson filed a complaint and an application to proceed *in forma pauperis* with the United States District Court for the District of Nevada, both of which were denied without prejudice by Magistrate Judge Elayna J. Youchah on April 13, 2021. ECF Nos. 1; 4. Anderson filed a second application to proceed *in forma pauperis*, which was approved by Judge Youchah on May 27, 2021. ECF Nos. 5; 12. Anderson filed a first amended complaint on May 7, 2021, which was dismissed in part with prejudice on August 4, 2021, for failure to state a claim, but Anderson was given leave to amend certain claims.[1] ECF Nos. 8; 13; 19.

Anderson filed his second amended complaint on October 12, 2021. ECF No. 25. Judge Youchah recommended that (1) any Title II ADA claims in Anderson's second amended complaint asserted against any individual named defendant be dismissed with prejudice; (2) that his Eighth Amendment claims against Drs. Aranas, Landsman, and Kelly, and Rebeca Kozloff, in their official capacities, be dismissed with prejudice; (3) that his false imprisonment claim, if intended to be asserted as a separate claim, be dismissed without prejudice and with leave to amend; and (4) that Anderson be allowed to file a third amended complaint if pro bono counsel is identified and makes an appearance on his behalf. ECF No. 28. Judge Gordon in turn accepted this report and recommendation in full. ECF No. 29.

Anderson, now represented by counsel, filed a third amended complaint (TAC) on February 17, 2023. ECF No. 48. Under Federal Rule of Civil Procedure 12(b)(6), Dr. Kelly filed a motion to dismiss with prejudice Anderson's second cause of action as to Dr. Kelly in Anderson's third amended complaint. ECF No. 66. The motion is fully briefed. ECF Nos. 71; 82.

---

[1] Judge Andrew P. Gordon adopted the Report and Recommendation of Magistrate Judge Elayna J. Youchah to dismiss Anderson's first amended complaint (ECF No. 13). ECF No. 19.

## II. Facts

Anderson alleges the following. Since February 24, 2012, Anderson has been in NDOC custody and is an inmate at the Southern Desert Correctional Center. ECF No. 48 at 4. Beginning on or about October 3, 2013, Anderson was diagnosed with Kimura disease, a rare chronic inflammatory condition that causes the tissue under the skin of the head or neck to become swollen. *Id.* Anderson's medical case was assigned to Dr. Landsman, who sent Anderson to Dr. Kelly in 2017. *Id.* at 13. Shortly after meeting with Anderson, Dr. Kelly prescribed Anderson 20mg of prednisone in the summer of 2017. *Id.* at 13.

Later, on or around May 20, 2020, Anderson submitted a medical kite, requesting a different medication as the drug prednisone was no longer helping to decrease the swelling and inflammation. *Id.* Anderson alleges that since taking this higher dosage of prednisone, he has suffered from a host of medical issues he did not previously have, such as (1) diabetes; (2) decreased sexual desire; (3) damage to the adrenal glands; (4) thin, fragile skin; (5) slowed healing of cuts and bruises; (6) blood in his stool; (7) knee joint pain; (8) ninety pound weight gain; and (9) moon facies, among other things. *Id.* at 13–14.

After three years of using prednisone, Dr. Kelly allegedly informed Anderson in his June 29, 2020 letter that 20mg of prednisone is not recommended, stating, "prednisone is best minimized. If a person takes more than 5mg a day of prednisone, undesirable side effects can occur." *Id.* at 14. Dr. Kelly ordered Anderson's provider, Dr. Landsman, to reduce the dosage, stating, "[y]our prednisone dose should be no more than 5mg a day." *Id.*

Anderson alleges that on or about September 23, 2020, he submitted a medical kite, informing medical of his visit with Dr. Kelly and their discussion that prednisone no longer works and requesting a new prescription for the inflammation to address his disease. *Id.* Anderson further alleges that on or about January 2022 he submitted additional kites regarding the painful inflammation in his knee. *Id.* Then, on or about February 25, 2022 and April 17, 2022, he submitted kites, reminding the medical staff at NDOC that he had been without proper

medical care to address his disease and the pain for two years. *Id.* Anderson contends that to date, he still has yet to receive the appropriate medical care to address his disease and further, that he has been denied pain medication to help with his pain. *Id.*

### III.   Legal Standard

####    A.   Motion to Dismiss

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.

Accordingly, Fed. R. Civ. P. 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Fed. R. Civ. P. 15(a), a court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the

4

opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178 (1962).

### B.   42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Paeste v. Gov't of Guam*, 798 F.3d 1228, 1238 (9th Cir. 2015) (quoting *West*, 487 U.S. at 49). "Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West*, 487 U.S. at 50; *see also Naffe v. Frey*, 789 F.3d 1030, 1036 (9th Cir. 2015).

### C.   Eighth Amendment: Delay or Denial of Medical Treatment

The Eighth Amendment prohibits imposing cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).

To establish the objective prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th

Cir. 2006) (internal quotations omitted). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).

To satisfy the subjective deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotations omitted). A prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).

## IV. Discussion

### A. Dr. Kelly's motion to dismiss is granted.

Dr. Kelly argues that Anderson has failed to state a claim upon which relief can be granted for three reasons. First, Dr. Kelly argues that the statute of limitations as to claims against him has long run. Second, Dr. Kelly argues that the claim against him mischaracterized as one for deliberate indifference, but in actuality is a claim of professional negligence or medical malpractice claim, both of which fail. Third, Dr. Kelly argues that Anderson fails to sufficiently allege facts showing he is a state actor. For the following reasons, I find that (1) Anderson's claim is properly characterized; (2) the statute of limitations has not run; but nonetheless (3) that Anderson fails to state an Eighth Amendment violation.

#### *1. Anderson's claim is properly characterized.*

Dr. Kelly argues that the standards for a professional negligence or medical malpractice cause of action should apply when evaluating Anderson's cause of action. I disagree.

Specifically, Dr. Kelly argues that Anderson's complaint sounds in medical malpractice and generic negligence that gave rise to a personal injury, and thus, NRS 41.097 should apply.

ECF No. 82 at 11–13. Alternatively, Dr. Kelly argues that the gravamen of Anderson's complaint is professional negligence under NRS 41A.071 against Dr. Kelly. *Id.* at 13–14. Dr. Kelly next argues that the complaint does not comply with NRS 41A.071 because Anderson did not submit a required expert affidavit which supports the malpractice allegations when Anderson filed, and thus should be dismissed on that ground. *Id.*

In essence, Dr. Kelly argues that Anderson's Section 1983 claim is mischaracterized. He cites *State Farm Mut. Auto. Ins. Co. v. Wharton* for the proposition that "[w]hile a pleading party may attempt to color a claim for relief in the manner most beneficial to its litigation strategy, 'it is the object of the action, rather than the theory upon which recovery is sought, that is controlling.'" ECF No. 66 at 12 (citing 495 P.2d 359, 361 (Nev. 1972)). This argument, at base, is just an offshoot of Dr. Kelly's 12(b)(6) argument that Anderson has failed to adequately state a Section 1983 claim—which he attempts to bolster here by arguing that Anderson's allegations are one for a malpractice or negligence claim against him. While Dr. Kelly requests that the court transmute the allegations into a malpractice or negligence claim, the court is mindful of its obligation to construe pro se pleadings liberally and to afford a pro se litigant "the benefit of any doubt." *United States v. Qazi*, 975 F.3d 989, 993 (9th Cir. 2020); *see also Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985). Further, Dr. Kelly has provided no points and authorities or compelling reason to support why the court should alter Anderson's claim of action here. For those reasons, I find that Anderson's Section 1983 claim is properly characterized and will address the heart of Dr. Kelly's argument—the sufficiency of the Section 1983 claim— herein.

2.   *The statute of limitations has not tolled.*

Because I reject Dr. Kelly's argument that Anderson's claims are mischaracterized, I also reject Dr. Kelly's argument that NRS 41.097 provides the applicable statute of limitation over NRS 11.190(4)(e). *Id.* at 6. NRS 11.190(4)(e) is the applicable statute for a Section 1983 suit based on personal injury in Nevada, and thus it applies here. *Brodzki v. City of Chicago*, 2011 U.S. Dist. LEXIS 128187, *7 (D. Nev. Nov. 3, 2011).

7

The Nevada personal injury statute of limitation is two years. *See Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989) (citing NRS § 11.190(4)(c), (e)); *see Wallace v. Kato*, 549 U.S. 384, 387 (2007) (holding that federal courts borrow state statutes of limitations for personal injury actions in § 1983 suits because § 1983 contains no statute of limitations). NRS 11.190(4)(e) maintains a two-year limitations period for "an action to recover damages for injuries to a person or for the death of a person caused by the wrongful act or neglect of another." NRS 11.190(4)(e). The two-year period begins to run when the wrong occurs and a party sustains injuries for which relief could be sought. *Fausto v. Sanchez-Flores*, 482 P.3d 677, 680 (Nev. 2021) (citing *Petersen v. Bruen*, 106 Nev. 271, 274 (1990)).

Under federal law, "[a] claim accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of action." *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999) (internal citation omitted). Accrual occurs when a plaintiff has a complete and present cause of action and may therefore file suit to obtain relief. *Lukovsky v. City and Cnty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). In a suit alleging deliberate indifference, the claim accrues when the prisoner "knew or had reason to know of the [prison] employees' deliberate indifference to [the plaintiff's] medical needs." *TwoRivers v. Lewis*, 174 F.3d 987, 992 (9th Cir. 1999).

The parties disagree on the event that triggered the running of the statute here. Anderson argues that the earliest he could have discovered that Dr. Kelly was acting with deliberate indifference was May 20, 2020, which corresponds to when Anderson filed a kite specifically identifying prednisone as a medication that was no longer benefitting him. ECF No. 71 at 14. As a result, Anderson maintains that he had until May 20, 2022 to sue Dr. Kelly, and because he named Dr. Kelly in his July 30, 2021 complaint, the statute of limitations had not yet tolled. *Id.* at 14–15. Dr. Kelly argues that the statute of limitations began to accrue the day he prescribed Anderson prednisone in the summer of 2017. ECF No. 66 at 9.

Dr. Kelly, however, admits that "[w]hile a lay person can easily discern that 20mg is higher than 5mg, a lay person would not know whether 20mg was too high for this Plaintiff at

the time Dr. Kelly prescribed 20mg of prednisone." *Id.* at 13. Indeed, Anderson alleges that it was not until he regularly took this medication that he realized that it not only failed to help with his condition, but it also caused significant additional medical issues. ECF No. 71 at 14. Anderson alleges that it was not until Dr. Kelly's June 29, 2020 letter that he should have known that Dr. Kelly was acting with deliberate indifference. *Id.* I agree. As a lay person, Anderson would not have known until Dr. Kelly informed him of the basis for his medical symptoms—the too high dosage—that he may have a viable claim for deliberate indifference. Thus, the appropriate measuring stick is June 29, 2020, and given that Anderson filed his complaint on March 29, 2021 (and named Dr. Kelly as a defendant on July 30, 2021), both his complaint and claims against Dr. Kelly were timely and within the two-year statute of limitations period.

### 3. *Anderson fails to state a Section 1983 claim.*

Dr. Kelly argues that Anderson fails to state an Eighth Amendment claim because (1) the conduct alleged fails short of the deliberate indifference standard and (2) even if the conduct were sufficient, Anderson fails to sufficiently plead that Dr. Kelly acted under color of state law. ECF No. 66 at 14–24. Anderson responds that he has adequately alleged both and points out that this court has already determined that Anderson sufficiently stated a Section 1983 cause of action against Dr. Kelly in his second amended complaint. ECF No. 71 at 10 (citing ECF No. 28 at 7).[2] To succeed on a Section 1983 claim, a plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right. *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011).

To establish an Eighth Amendment deliberate indifference claim a prisoner-plaintiff must show: (1) an objectively, sufficiently serious, deprivation of his medical needs, and (2) the

---

[2] Judge Andrew P. Gordon adopted, without de novo review, the Report and Recommendation of Magistrate Judge Elayna J. Youchah (ECF No. 28), which permitted Anderson's second amended Eighth Amendment claims to proceed against Drs. Aranas, Landsman, and Kelly, and Rebeca Kozloff, in their official capacities. ECF No. 29.

9

official was, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer*, 511 U.S. at 834. A defendant is deliberately indifferent if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. The defendant must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" but he "must also draw the inference." *Id.*

          i.      *Anderson fails to prove the subjective prong.*

Dr. Kelly alleges that the complaint fails to adequately state a Section 1983 claim, arguing that he was not deliberately indifferent to Anderson because he was the medical professional who advised Anderson that his prednisone dosing should be reduced to no more than 5mg per day, which an indifferent physician would not do. ECF No. 66 at 17–18. Anderson responds that he has alleged sufficient facts to show he had a serious medical need (his Kimura disease), and that Dr. Kelly was deliberately indifferent to that medical need. ECF No. 71 at 13.

As a threshold matter, I find that the objective prong has thus been satisfied: Anderson alleges that his continued progression of Kimura disease has resulted in numerous medical issues, such as diabetes, damage to the adrenal glands, thin, fragile skin, and more. ECF No. 48 at 89; *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992) ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.").

Where Anderson's claim fails is a lack of sufficient facts demonstrating that the subjective prong has been met. First, Anderson has not alleged facts supporting an inference that Dr. Kelly engaged in a purposeful act or failure to respond to Anderson's medical treatment. Indeed, even if Dr. Kelly erred in writing a prescription for 20mg prednisone, the complaint does not demonstrate that such conduct evinces a conscious disregard of Anderson and his condition.

10

The complaint instead alleges that Anderson submitted a kite in May 2020, requesting "different medication as the drug prednisone was no longer helping decrease the swelling and inflammation" and that Dr. Kelly responded in June 2020, identifying the cause of the issue (too high of a prednisone dose) and ordering that Anderson's dose be reduced. ECF No. 48 at ¶¶ 88, 90. This demonstrates responsive action; not deliberate indifference. The complaint contains one allegation that "[o]n December 16, 2019, Anderson submitted a Medical Kite, informing medical that his intense headaches had returned, he had frequent numbness to the right side of his face, and he had greater swelling than previously." *Id.* at ¶ 87. To the extent this kite would have been sufficient to alert Dr. Kelly to an issue with Anderson's dosage created an excessive risk of medical issues for Anderson, there are no allegations that Dr. Kelly read this kite or was otherwise aware of it and chose to ignore it. *See Salgado v. Arias*, 2024 U.S. Dist. LEXIS 15515, *7–8 (S.D. Cal. Jan. 29, 2024) (finding plaintiff failed to plausibly allege subjective prong because, while his complaint alleged that "'maintenance' was 'notified of the cells leaking in building D3'", the complaint "fails to allege specific facts regarding [defendant's] individual, personal knowledge of the leak or the work order" or otherwise show how defendant was subjectively aware the leak posed a substantial risk of serious harm). In other words, Anderson has not alleged facts that support that Dr. Kelly knew of and disregarded an excessive risk to his health and safety by prescribing the original 20mg dosage of prednisone. As a result, I find that Anderson has failed to allege facts that satisfy the requirements of the subjective deliberate indifference prong and therefore grant Dr. Kelly's motion to dismiss Anderson's Section 1983 claim for failure to state a claim.

**B.   Anderson is given leave to amend the complaint.**

Because I cannot determine whether amendment would be futile, the complaint is dismissed without prejudice and with leave to amend. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (Leave to amend should be granted unless the pleading could not possibly be cured by the allegation of additional facts.). If Anderson chooses to file an amended

complaint, he must revise the complaint to include well-pleaded allegations specifically stating that Dr. Kelly acted with deliberate indifference when he purportedly failed to treat or mistreated Anderson for his Kimura disease.

V.      Conclusion

IT IS THEREFORE ORDERED that Dr. Kelly's **motion to dismiss [ECF No. 66] is granted without prejudice and with leave to amend**. Anderson has until April 15, 2024 to file an amended complaint, if he chooses to do so. The amended complaint must be titled "Third Amended Complaint."

Dated: March 31, 2024

_____
Cristina D. Silva
United States District Judge